UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————————

SECURITIES AND EXCHANGE COMMISSION,

         Plaintiff,     07-CV-11387 (Judge Cote)

     v.

BRIAN N. LINES, *et al.*,

         Defendants.
—————————————————————————

## ANSWER OF THE LOM DEFENDANTS

Defendants LOM (Holdings) Ltd. ("LOM Holdings"), Lines Overseas Management Ltd. ("LOM Limited"), LOM Capital Ltd. ("LOM Capital"), LOM Securities (Bermuda) Ltd. ("LOM Bermuda"), LOM Securities (Cayman) Ltd. ("LOM Cayman"), and LOM Securities (Bahamas) Ltd. ("LOM Bahamas") (collectively, "the LOM Defendants"), upon information and belief, respectfully state as follows in answer to the complaint ("Complaint") of the Securities and Exchange Commission ("SEC"):

## SUMMARY OF ALLEGATIONS

1.  Paragraphs 1-13 purport to summarize the allegations of the Complaint.  To the extent a response to these paragraphs is required, the responses set forth below to paragraphs 14 through 197 are incorporated as if set forth herein.  The LOM Defendants deny that any of them has committed any acts constituting a violation of the federal securities laws, and deny that the SEC is entitled to injunctive relief, disgorgement, civil penalties, or other relief.

2.      The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

3.      The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

4.      The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

5.      The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

6.      The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

7.      The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

8.      The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

9.      The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

10.     The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

11.     The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

12.     The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

13.     The LOM Defendants incorporate their response to paragraph 1 as if set forth herein.

## JURISDICTION AND VENUE

14.     The LOM Defendants deny that there is a basis for extraterritorial application of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") to the LOM Defendants and deny that they have committed any acts constituting a violation of the Securities Act, the Exchange Act, or any SEC rule or regulation. The LOM Defendants further deny that the SEC is entitled to injunctive relief, disgorgement, civil penalties, or other relief.

15.     The LOM Defendants deny that they have made use of the means and instrumentalities of interstate commerce or of the mails in connection with any acts, practices, or courses of business that constitute a violation of the Securities Act, the Exchange Act, or any SEC rule or regulation.  The LOM Defendants otherwise incorporate their response to paragraphs 1 through 147 as if set forth herein.

16.     The LOM Defendants deny that they engaged in any conduct in the Southern District of New York that constitutes a violation of the Securities Act, the Exchange Act, or any SEC rule or regulation.

## THE PARTIES

17.     The LOM Defendants admit that the plaintiff is the Securities and Exchange Commission and that it purports to bring this civil action pursuant to the provisions cited.  The

LOM Defendants deny that the SEC is entitled to injunctive relief, disgorgement, civil penalties, or other relief.

18.    Admitted, to the extent that "LOM Holdings and its defendant subsidiaries" refers to the LOM Defendants named in the Complaint.

19.    The LOM Defendants admit the allegations of the first three sentences of this paragraph, to the extent that "LOM Holdings and its defendant subsidiaries" refers to the LOM Defendants named in the Complaint and "the relevant period" is construed to mean mid-2002 though mid-2003 as stated in paragraph 31 of the Complaint.  As to the allegations of the last sentence of this paragraph, the LOM Defendants refer to the transcript of the testimony of Scott Lines before the SEC for its content and meaning.

20.    The LOM Defendants admit the allegations of the first sentence of this paragraph. The LOM Defendants admit that the stock of LOM Holdings is publicly traded on the Bermuda Stock Exchange but otherwise deny the allegations of the second sentence of this paragraph.  As to the last sentence of this paragraph the LOM Defendants generally deny that any subsidiaries of LOM Holdings other than those identified in the Complaint are parties to this lawsuit and generally deny each and every allegation in the Complaint in so far as it purports to apply to any such non-defendant subsidiary.

21.    The LOM Defendants admit that LOM Capital, LOM Bermuda, LOM Bahamas, LOM Cayman, and LOM Limited are, directly or indirectly, wholly-owned subsidiaries of LOM Holdings.

22.    The LOM Defendants admit that Anthony Wile presented himself as Renaissance's chairman and CEO, but are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

23.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

24.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

25.     The LOM Defendants admit that documents in LOM's possession appear to indicate that William Todd Peever is 48 and is a Canadian citizen residing in Vancouver.  The LOM Defendants deny that Peever is, individually, an account-holder of any LOM Defendant.

26.     The LOM Defendants admit, upon information and belief, that Phillip James Curtis is a Canadian citizen residing in Vancouver.  The LOM Defendants deny that Curtis is, individually, an account-holder of any LOM Defendant.

27.     The LOM Defendants admit that Ryan Leeds was a registered representative with a U.S. broker-dealer at which LOM Ltd. maintained an account, that it used this account to execute certain transactions in Sedona and SHEP securities for LOM customers, and that Leeds was the account representative for this account.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.


## OTHER RELEVANT ENTITIES

28.     Admitted, to the extent that "all relevant times" is construed to mean mid-2002 though mid-2003 as stated in paragraph 31 of the Complaint.

29.     Admitted, to the extent that "during the relevant period" is construed to mean mid-2002 though mid-2003 as stated in paragraph 31 of the Complaint.

30.     The LOM Defendants admit the allegations of the last sentence of this paragraph, to the extent that "during the relevant period" is construed to mean mid-2002 though mid-2003 as stated in paragraph 31 of the Complaint.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

## FACTUAL ALLEGATIONS

31.     The LOM Defendants admit that during the relevant period of mid-2002 through mid-2003, LOM Ltd. placed certain orders to buy or sell securities through U.S. brokerage firms at which it maintained accounts.  The LOM Defendants deny that these transactions constituted "extensive, regular, and continuous securities-related business in the U.S., and in the Southern District of New York."

32.     The LOM Defendants admit that for the year ending December 31, 2004, LOM Holdings and its subsidiaries had total consolidated revenues of $17,373,598, of which $12,077,306 were attributable to brokerage revenues.  After reasonable inquiry, the LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

33.     The LOM Defendants aver that since January 2001, LOM Ltd. has had a policy of not accepting U.S. customers.  The company's website, www.lom.com, contains an explicit disclaimer to this effect.  The LOM Defendants admit that after January 2001, the LOM Defendants retained at least 50 U.S. customers who were "grandfathered" when they revised their policy on the acceptance of U.S. customers.  The LOM Defendants retained these customers on the condition that they agree not to trade in U.S. securities, and to liquidate their

positions in U.S. securities.  The LOM Defendants necessarily communicated with these grandfathered U.S. customers regarding their accounts.  The LOM Defendants otherwise deny the allegations of this paragraph.

34.    The LOM Defendants admit that Renaissance Mining Corp. ("Renaissance") entered into negotiations that culminated in a letter of intent dated December 27, 2002, to acquire Central American Mine Holdings Limited ("CAMHL"), a privately-held Belize company that directly or indirectly owned three gold mining properties in Nicaragua and Panama.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

35.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

36.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

37.    The LOM Defendants admit that Renaissance and CAMHL entered into negotiations that culminated in a letter of intent dated December 27, 2002.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

38.    The LOM Defendants admit that subsequent to December 20, 2002, LOM Capital offered to use its "best efforts" to assist Renaissance in obtaining financing in a non-brokered private placement to qualified non-U.S. investors subject to numerous conditions including all necessary regulatory approvals and the completion of due diligence to the sole satisfaction of LOM Capital.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

39.    The LOM Defendants admit that on or around December 27, 2002, Renaissance entered into a letter of intent to acquire three gold-mining properties owned by companies affiliated with CAMHL.  The LOM Defendants admit that the letter of intent provided that consideration for the mining properties would include $5 million in payments to CAMHL and working capital commitments, and the issuance of a convertible debenture in the amount of $4,050,000.  The LOM Defendants otherwise deny the allegations of this paragraph.

40.    The LOM Defendants admit that the letter of intent provided that Renaissance would acquire a controlling interest in a publicly traded company prior to the acquisition of the CAMHL mining properties, and that within six months of the closing, CAMHL would have three out of the five seats on the Board of Directors of the new company.  The LOM Defendants otherwise deny the allegations of this paragraph.

41.    The LOM Defendants, on information and belief, deny that Scott Lines identified Sedona as a suitable merger partner for Renaissance or negotiated the agreement described in this paragraph, and are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph that relate to the activities of Brian Lines.

42.    The LOM Defendants admit that documents in LOM's possession appear to indicate that the account of ICH Investments Inc. "A" ("ICH 'A'") received (among other transactions) three internal cash credits in the amounts of $125,533, $128,333, and $128,333 from three different accounts between January 2 and January 8, 2003.  The LOM Defendants further admit that two of these transfers were directed by Brian Lines.  The LOM Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations regarding the purposes of these transfers.  Further answering, the LOM Defendants deny that the

ICH "A" account was jointly controlled by Scott and Brian Lines. The LOM Defendants otherwise deny the allegations of this paragraph.

43.    The LOM Defendants admit that documents in LOM's possession appear to indicate that prior to their sale in January 2003, the Chief Executive Officer of Sedona, Jack Cooper, and three other individuals owned approximately four million shares of Sedona stock, while an additional 1.34 million shares were held by seven other individuals (the "non-affiliated shareholders"). The LOM Defendants otherwise deny the allegations of this paragraph.

44.    The LOM Defendants admit that the 1.34 million Sedona shares owned by the seven non-affiliated shareholders were purchased by five separate companies: Gateway Research Management Group Ltd. ("Gateway"), Clyde Resources Ltd. ("Clyde"), Warwick Ventures Ltd. ("Warwick"), Iguana Investments Ltd. ("Iguana"), and ICH Investments Inc. ("ICH"). The LOM Defendants further aver that these five companies purchased their respective Sedona shares pursuant to separate share transfer agreements. The LOM Defendants are further without knowledge or information sufficient to form a belief as to the truth of the allegation that there was no purchase agreement with respect to the four million shares owned by Mr. Cooper. The LOM Defendants otherwise deny the allegations of this paragraph.

45.    The LOM Defendants incorporate their answer to paragraph 44 as if set forth herein, and otherwise deny the allegations of this paragraph.

46.    The LOM Defendants deny the allegations of this paragraph.

47.    The LOM Defendants admit that documents in LOM's possession appear to indicate that the closing of the sale of Sedona shares by Mr. Cooper, the affiliated shareholders, and the non-affiliated shareholders occurred on or around January 3, 2003. The LOM Defendants otherwise deny the allegations of this paragraph.

48.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations that the Sedona CEO personally hand-delivered certain share certificates, but not others, to attorneys for Brian Lines in Vancouver.  The LOM Defendants deny, on information and belief, that the attorney referred to in this paragraph was an attorney for Scott Lines.  As to the allegation of the last sentence of the paragraph, the LOM Defendants incorporate their answer to paragraph 44 as if set forth herein.

49.     The LOM Defendants admit that documents in LOM's possession appear to indicate that on or about January 6, 2003, LOM Ltd. accepted physical custody of one share certificate ("Certificate No. 153") for 245,000 Sedona shares.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

50.     The LOM Defendants admit that the LOM Bermuda client statement for the ICH "A" account reflects four transactions on January 8, 2003:  two internal cash credits of $128,333 each, an internal cash debit of $264,409, and an internal cash debit of $30,000.  The statement does not reflect the purpose of these or any other transactions.  The LOM Defendants otherwise deny the allegations of this paragraph.

51.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the allegations of the first sentence of this paragraph.  The LOM Defendants aver that to the best of their knowledge the share certificates described in this paragraph were never deposited into LOM's vault or credited to any LOM account.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that LOM Ltd. received these four million shares.

52.     The LOM Defendants admit that Depository Trust and Clearing Corporation ("DTCC") holds itself out as a provider of clearing, settlement and information services for equities, corporate and municipal bonds, government and mortgage-backed securities, money market instruments and over-the-counter derivatives.  The LOM Defendants further admit that documents in LOM's possession appear to indicate that Brian Lines directed LOM employees to credit the 245,000 Sedona shares represented by Certificate No. 153 to the ICH "A" account and to rush the certificate to DTC on or about January 14, 2003.  The LOM Defendants otherwise deny the allegations of this paragraph.

53.     The LOM Defendants admit that a facsimile dated January 14, 2003, appears to indicate that the Physical Securities Department of LOM Ltd. arranged for Certificate 153 to be couriered to CIBC Mellon Securities Trust Company ("Mellon Trust Company"), at an address at 120 Broadway, New York, New York, 10271.  The LOM Defendants deny that Mellon Trust Company performed securities settlement and transfer services for LOM and aver that LOM had a contractual arrangement with CIBC-Mellon Global Securities Services Company, a Canadian corporation, to perform those services.  As to the third and fourth sentences of this paragraph, the LOM Defendants admit that the quoted language appears on the facsimile but otherwise refer to that facsimile for its content and meaning.  Upon information and belief, Mellon Trust Company deposited these shares into DTC pursuant to these instructions.  As to the allegations in the last sentence of this paragraph, the LOM Defendants incorporate their responses to paragraphs 106 through 119 as if set forth herein.

54.     The LOM Defendants admit that documents in LOM's possession appear to indicate that on or about January 23, 2003, LOM Ltd. accepted physical custody of share certificates representing 1,095,000 shares of Sedona.  The LOM Defendants further admit that

some of these shares were credited to an LOM Bahamas account in the name of Largo Flight Limited.  The LOM Defendants admit that Scott and Brian Lines had signatory power over the Largo Flight Ltd. account but deny that it was jointly controlled in practice by Scott and Brian Lines.  The LOM Defendants otherwise deny the allegations of this paragraph.

55.     The LOM Defendants admit that documents in LOM's possession appear to indicate that on or about January 23, 2003, Brian Lines had a discussion with an LOM Ltd. employee regarding the transfer of 327,500 shares of Sedona stock to DTC.  On or about January 23, 2003, the Physical Securities Department of LOM Ltd. arranged for Sedona share certificates totaling 327,500 shares to be sent to Mellon Trust Company's offices in New York, New York and sent a facsimile to Mellon Trust Company with the instructions quoted in the penultimate sentence of this paragraph.  The LOM Defendants aver, however, that the quoted language is selective, incomplete, and misleading and therefore deny any allegation of this paragraph as to the content and meaning of the document.  Upon information and belief, LOM Ltd.'s instructions were followed.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph

56.     This paragraph pleads a bare statement of law to which no response is required.

57.     This paragraph pleads a bare statement of law to which no response is required.

58.     The LOM Defendants, upon information and belief, deny the allegations of this paragraph relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

59.     The LOM Defendants, upon information and belief, deny the allegations of this paragraph relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

60.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

61.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

62.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.  The LOM Defendants further incorporate their responses to paragraphs 69 and 74 as if set forth herein.

63.     The LOM Defendants admit that documents in LOM's possession appear to indicate that Renaissance issued a "news release" dated January 8, 2003, with the headline quoted in this paragraph.  The LOM Defendants aver, however, that the quoted language is selective, incomplete, and misleading and therefore deny any allegation of this paragraph as to the content and meaning of the document.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

64.     The LOM Defendants admit that the January 8, 2003 Renaissance news release contains the quoted language (without modifications) and attributes it to Ian Park, who is described therein as Renaissance's President.  The LOM Defendants aver, however, that the quoted language is selective, incomplete, and misleading and therefore deny any allegation of this paragraph as to the content and meaning of the document.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

65.     The LOM Defendants admit that the January 8, 2003 Renaissance news release contains the quoted language (without modifications) but aver that the quoted language is

selective, incomplete, and misleading and therefore deny any allegation of this paragraph as to the content and meaning of the document. The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

66.    The LOM Defendants admit that the January 8, 2003 Renaissance news release contains the address of Renaissance's Internet website, but are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

67.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

68.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

69.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

70.    The LOM Defendants admit that documents in LOM's possession appear to indicate that Brian Lines received an email message from Anthony Wile on January 14, 2003, in which Wile referred to a radio interview he gave that day to the *Wall Street Reporter* and provided instructions for how to listen to the interview through the *Wall Street Reporter* website. The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

71.    The LOM Defendants admit that documents in LOM's possession appear to indicate that on January 2, 2003, Anthony Wile sent Brian Lines an email attaching a draft of the January 8 Renaissance news release, but the quotation in this paragraph is selective and incomplete. The LOM Defendants therefore deny any allegation of this paragraph as to the

content and meaning of the document.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

72.     The LOM Defendants admit that LOM Capital offered to use its "best efforts" to assist Renaissance in a non-brokered private placement to qualified non-U.S. investors subject to numerous conditions including all necessary regulatory approvals and the completion of due diligence to the sole satisfaction of LOM Capital, in order to assist Renaissance in raising between approximately $2.7 million to $5.5 million for the acquisition of the CAMHL mining properties, and for working capital and general capital purposes.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

73.     The LOM Defendants admit that documents in LOM's possession appear to indicate that on January 17, 2003, Brian Lines received an email from IMG containing an announcement that Renaissance had signed a letter of intent with Sedona pursuant to which Sedona, upon fulfillment of various contingencies, would acquire all of Renaissance's issued and outstanding common shares and change its name to Renaissance Mining Holding Corporation. The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

74.     The LOM Defendants admit that publicly available Internet archives indicate that the January 17, 2003, announcement was posted on Renaissance's website at some point after that date, and that the announcement contains a reference to the January 8, 2003, news release entitled "Renaissance Acquires Major Portfolio of Gold Producing Assets in Latin America." The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

75.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

76.     The LOM Defendants admit that the January 17, 2003 email identifies LOM Capital as Renaissance's investment banker for purposes of its private placement offering.  The LOM Defendants otherwise deny the allegations of this paragraph.

77.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

78.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

79.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph that relate to Brian Lines.  The LOM Defendants otherwise deny the allegations of this paragraph.

80.     The LOM Defendants admit that documents in the possession of LOM appear to indicate that on January 21, 2003, Sedona issued a press release via Business Wire announcing its letter of intent with Renaissance.  The LOM Defendants deny the allegation that the January 21 Sedona press release was "substantially identical" to the January 17 Renaissance press release on the ground that the term "substantially identical" is vague and unintelligible, and refer to the document for its content and meaning.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

81.     The LOM Defendants admit that documents in LOM's possession include what appears to be a Renaissance private offering memorandum dated January 20, 2003, which states that the "shares are offered for investment only to qualifying recipients of this Memorandum pursuant to the exemption from registration requirements of the Act provided by Section 4(2) of

the Act and Regulation D promulgated thereunder." The remainder of this paragraph pleads a bare statement of law to which no response is required.

82.     The LOM Defendants deny the allegations of this paragraph and specifically deny that LOM Capital was responsible for the information contained in the January 17, 2003 Renaissance press release or the January 21, 2003 Sedona press release.

83.     The LOM Defendants admit that documents in LOM's possession appear to indicate that Robert Chapman and three other individuals wrote research reports regarding Renaissance on or around January 20, 2003. The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

84.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

85.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

86.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

87.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

88.     The LOM Defendants admit that documents in LOM's possession appear to indicate that Robert Chapman wrote a research report regarding Renaissance. The research report is undated and the LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the date and means of publication of the report. The LOM Defendants admit that the report contains a heading with the language quoted

in this paragraph, but aver that the quoted language is selective, incomplete, and misleading and therefore deny any allegation of this paragraph as to the content and meaning of the document. The LOM Defendants otherwise are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

89.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

90.     The LOM Defendants admit that documents in LOM's possession appear to indicate that on January 20, 2003, Anthony Wile wrote an email regarding Renaissance.  The LOM Defendants admit that documents in LOM's possession appear to indicate that Brian Lines received the email, but are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations regarding its dissemination.  The LOM Defendants admit that the quoted language in this paragraph appears in the January 20, 2003 email but aver that the quotations are selective, incomplete, and misleading and therefore deny any allegation of this paragraph as to the content and meaning of the document.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

91.     The LOM Defendants admit that documents in LOM's possession appear to indicate that Brian Lines received Anthony Wile's January 20, 2003 email on or about that same day.  The LOM Defendants further admit that documents in LOM's possession appear to indicate that Brian Lines forwarded the email to an email distribution list of LOM brokers, on which Scott Lines was included, on or about January 21, 2003.  The LOM Defendants otherwise are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

92. The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

93. The LOM Defendants admit that documents in LOM's possession appear to indicate that on January 21, 2003, Anthony Wile sent an email to Brian Lines attaching copies of certain other Renaissance research reports and containing the quoted language. The LOM Defendants aver, however, that the quotation is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content or meaning of the document. The LOM Defendants otherwise are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

94. The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

95. The LOM Defendants admit that LOM Capital offered to use its "best efforts" to assist Renaissance in obtaining financing in a non-brokered private placement of approximately two million restricted shares at $3 per share to qualified non-U.S. investors subject to numerous conditions including all necessary regulatory approvals and the completion of due diligence to the sole satisfaction of LOM Capital. The LOM Defendants further admit that LOM Capital was to receive a seven percent fee, but aver that LOM Capital never in fact received any such fee before it terminated its involvement in the offering.

96. The LOM Defendants admit that documents in LOM's possession include what appears to be a Renaissance private offering memorandum dated January 20, 2003. The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

97.     The LOM Defendants aver that the description of the Renaissance offering memorandum contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content or meaning of the document.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that the Renaissance offering memorandum contained material misrepresentations or omissions.

98.     The LOM Defendants deny the allegations of this paragraph and specifically deny that they failed to correct material omissions in the Renaissance offering memorandum.

99.     The LOM Defendants deny that any of them engaged in the conduct described in the second and third sentences of this paragraph and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

100.     The LOM Defendants admit documents in LOM's possession appear to indicate that during the week prior to January 21, 2003 and on January 21, 2003, Scott Lines made certain telephone calls to authorized representatives of existing LOM customers informing them of the Renaissance offering for purposes of obtaining indications of interest.  The LOM Defendants refer to the records of these telephone calls for the content and meaning of these conversations and aver that Scott Lines described Renaissance and its expected gold production profiles and cash flow, stressed that the investment would be "stiff" (*i.e.*, could not be sold) for a year, and told those who gave an indication of interest that he would subscribe on their behalf only after LOM Capital had completed its due diligence on the offering.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that LOM Capital or its employees failed to conduct reasonable due diligence concerning Renaissance or any other aspect of the Renaissance private placement prior to participating in the offering.

101.    The LOM Defendants aver that the description of the telephone calls between Scott Lines and LOM customer representatives contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content or meaning of those conversations.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that Scott Lines knowingly or recklessly provided false or misleading information about Renaissance or Sedona to LOM customers, or that he failed to disclose material information in these telephone calls.

102.    The LOM Defendants aver that the description of the telephone calls between Scott Lines and LOM customer representatives contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content or meaning of those conversations.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that Scott Lines or LOM Capital failed to conduct reasonable due diligence concerning Renaissance.

103.    The LOM Defendants admit that by January 23, 2003, Scott Lines had obtained indications of interest totaling approximately $3.5 million, but aver that the offering was cancelled before any commitment was made by any investor and before any shares were transferred.  The LOM Defendants further admit that SEC counsel called Scott Lines on January 23, 2003, but aver that the description of the telephone call contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content or meaning of that conversation.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that LOM Capital received any commission for its role in the Renaissance offering.

104. The LOM Defendants deny the allegations of this paragraph and specifically deny that any LOM customer that Scott Lines solicited, including the customer purportedly described in this paragraph, resided in the United States.

105. The LOM Defendants deny the allegations of this paragraph in so far as "Renaissance and its agents" may be read to refer to or include the LOM Defendants, and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

106. The LOM Defendants, upon information and belief, deny the allegations of this paragraph relating to Scott Lines, and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

107. Because the Complaint does not identify "Broker-Dealer A", the LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

108. The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

109. The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

110. The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

111. The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

112. The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

113.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

114.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

115.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

116.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

117.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

118.    The LOM Defendants deny the allegations of this paragraph in so far as the word "others" could be read to include any of the LOM Defendants.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

119.    The LOM Defendants deny that the ICH "A" account was jointly controlled by Brian and Scott Lines.  The LOM Defendants admit that documents in LOM's possession indicate that the ICH "A" account sold approximately 92,000 shares of Sedona on January 21, 2003, at prices ranging from $8.95 to $9.45 per share, but also aver that the same account also sold approximately 16,300 Sedona shares on that same day at approximately $4.00 per share. The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

120.    The LOM Defendants admit that between January 22 and January 27, 2003, the ICH "A" account sold approximately 51,000 shares of Sedona stock.  The  LOM Defendants are

otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

121.    The LOM Defendants deny the allegations of this paragraph.

122.    The LOM Defendants admit that documents in LOM's possession appear to indicate that Ryan Leeds executed certain sales of Sedona stock on behalf of LOM Ltd. customers.  The LOM Defendants deny that any of them, including specifically LOM Ltd., engaged in an illegal distribution of Sedona securities.  The LOM Defendants further deny that LOM Ltd. effected transactions in Sedona securities for its own account.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

123.    The LOM Defendants admit that Scott Lines spoke by telephone with Ryan Leeds on or about January 21, 2003.  The LOM Defendants aver that the description of the telephone call contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content and meaning of the conversation.

124.    The LOM Defendants admit that documents in LOM's possession appear to indicate that during this period in January 2003, LOM Ltd. used more than one U.S. broker-dealer to sell Sedona shares over the OTCBB on behalf of LOM Ltd. customers.  The LOM Defendants deny that LOM Ltd. ever sold Sedona shares for its own account.  Because the Complaint does not identify "Broker-Dealer A," the LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that LOM Ltd. used "other" U.S. broker-dealers.  The LOM Defendants otherwise deny the allegations of this paragraph.

125.     The LOM Defendants admit that documents in LOM's possession appear to indicate that the LOM Ltd. trading desk communicated with at least one U.S. brokerage firm regarding transactions in Sedona.  The LOM Defendants deny that LOM Ltd. ever sold Sedona shares for its own account.  Because the Complaint does not identify "Broker-Dealer A," the LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that LOM Ltd. used that brokerage firm as well as "other" U.S. broker-dealers.  The LOM Defendants admit that when the LOM Ltd. trading desk communicated U.S. brokerage orders, they did so through various means, including telephone and the Bloomberg Finance L.P. trading system.  The LOM Defendants otherwise deny the allegations of this paragraph.

126.     The LOM Defendants admit that documents in LOM's possession appear to indicate that LOM Ltd. transmitted certain sell orders from the ICH "A" account to at least one U.S. broker dealer between January 21, 2003, and January 27, 2003.  Because the Complaint does not identify "Broker-Dealer A," the LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that LOM Ltd. used that brokerage firm as well as "other" U.S. broker-dealers.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that LOM Ltd. or LOM Bermuda failed to conduct a reasonable inquiry into their customers' transactions in Sedona securities.

127.     The LOM Defendants admit that on January 21, 2003, email correspondence in LOM's possession appears to indicate that Brian and Scott Lines discussed the possibility of transferring 100,000 Sedona shares to certain LOM customers and employees at $4.00 per share at a time when Sedona shares were publicly trading at approximately $9.00 per share.  The LOM Defendants deny that Brian and Scott Lines made a profit of $393,000 from these sales and aver that most of these sales were later rescinded after the SEC's trading suspension.  The LOM

Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

128.    The LOM Defendants admit that documents in LOM's possession appear to indicate that during the week following January 21, 2003, certain LOM customers sold approximately 16,300 Sedona shares over the OTCBB.  The LOM Defendants admit that these sell orders were placed by LOM Ltd. through U.S. broker-dealers with which it had accounts.

129.    The LOM Defendants admit that the SEC suspended trading in Sedona stock on January 29, 2003, but are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

130.    The LOM Defendants aver that the description of the two telephone calls contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content and meaning of the conversations.  The LOM Defendants otherwise deny the allegations of this paragraph.

131.    The LOM Defendants admit that documents in LOM's possession appear to indicate that on or about January 28, 2003, Brian Lines sent an email to an LOM employee instructing her to backdate a Sedona share transfer agreement to "January 5 or so," but are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

132.    The LOM Defendants admit that Brian Lines had a telephone conversation with SEC lawyers on or about February 3, 2003, but aver that the description of the conversation contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content and meaning of the conversation.  The LOM Defendants otherwise deny the allegations of this paragraph.

133.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph relating to Brian Lines.  The LOM Defendants admit that documents in their possession appear to indicate that certain administrative steps were taken to allocate Sedona shares to proper accounts, and deny that any such steps were done for purposes of concealing the true beneficial ownership or control of Sedona.  The LOM Defendants otherwise deny the allegations of this paragraph.

134.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph relating to Brian Lines.  The LOM Defendants admit that documents in their possession appear to indicate that certain administrative steps were taken to allocate Sedona shares to proper accounts, and deny that any such steps were done for purposes of concealing the true beneficial ownership or control of Sedona.  The LOM Defendants otherwise deny the allegations of this paragraph.

135.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph relating to Brian Lines.  The LOM Defendants admit that documents in their possession appear to indicate that certain administrative steps were taken to allocate Sedona shares to proper accounts, and deny that any such steps were done for purposes of concealing the true beneficial ownership or control of Sedona.  The LOM Defendants otherwise deny the allegations of this paragraph.

136.    The LOM Defendants admit that the SEC suddenly and unexpectedly suspended trading in Sedona securities on January 29, 2003, as a result of which the merger of Sedona and Renaissance did not occur, and, had the purchases not been rescinded, customers at LOM would have lost substantially all of the value of their investment.

137.    The LOM Defendants admit that documents in LOM's possession appear to indicate that on or about February 4, 2003, LOM Capital sent a letter to Renaissance stating that it was withdrawing its offer to assist Renaissance with its private offering and terminating all involvement with Renaissance.  The LOM Defendants specifically deny that the letter was sent to Renaissance's U.S. mailing address in Denver, Colorado.  The LOM Defendants aver, moreover, that the quoted language is selective, incomplete, and misleading and therefore deny any allegation of this paragraph as to the content and meaning of the document.  The LOM Defendants otherwise deny the allegations of this paragraph.

138.    The LOM Defendants admit that during the relevant period from mid-2002 to mid-2003, Brian and Scott Lines were senior officers of the LOM Defendants.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that any of the LOM Defendants engaged in any unlawful manipulative or fraudulent scheme.  The LOM Defendants further deny that Brian or Scott Lines acted as agents of any LOM Defendant in any unlawful or manipulative or fraudulent scheme.

139.    The LOM Defendants aver that LOM Ltd. performed certain routine back-office and administrative functions, including the receipt and transfer of share certificates to DTC and the execution of cash transfers between LOM customer accounts, related to the sale of Sedona shares by LOM customers in January 2003.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that any of the LOM Defendants, including LOM Ltd., engaged in any unlawful manipulative or fraudulent scheme.

140.    The LOM Defendants incorporate their response to paragraph 126 as if set forth herein.  The LOM Defendants further deny the allegations of this paragraph and specifically

deny that any of the LOM Defendants engaged in any unlawful manipulative or fraudulent scheme.

141.    The LOM Defendants admit that during the relevant period from mid-2002 to mid-2003, Brian and Scott Lines held the position of President and Managing Director, respectively, of LOM Capital.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that any of the LOM Defendants engaged in any unlawful manipulative or fraudulent scheme.  The LOM Defendants further deny that Brian or Scott Lines acted as agents of any LOM Defendant in any unlawful or manipulative or fraudulent scheme.

142.    The LOM Defendants admit that the agreement between LOM Capital and Renaissance provided for a seven percent "placement fee" to be paid to LOM Ltd. on any funds received by Renaissance.  The LOM Defendants aver, however, that LOM Capital terminated its involvement in the offering without receiving any commission.  The LOM Defendants also admit that LOM Ltd. charges commissions for the execution of purchases and sales of securities by LOM customers.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that any of the LOM Defendants engaged in any unlawful manipulative or fraudulent scheme.

143.    The LOM Defendants admit that, during the period from mid-2002 to mid-2003, LOM Capital, LOM Ltd., LOM Bermuda, LOM Bahamas, and LOM Cayman were, directly or indirectly, wholly owned subsidiaries of LOM Holdings and Brian and Scott Lines were senior officers of LOM Holdings.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that any of the LOM Defendants engaged in any unlawful manipulative or fraudulent scheme.  The LOM Defendants further deny that Brian or Scott Lines acted as agents of any LOM Defendant in any unlawful or manipulative or fraudulent scheme.

144.     The LOM Defendants deny the allegations of this paragraph as they relate to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

145.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

146.     The LOM Defendants deny that any one of them served as "attorney in fact" on behalf of purchasers of shares of Inside Holdings, Inc. ("IHI").  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

147.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

148.     The LOM Defendants deny that Gateway and Warwick were "used by Brian and Scott Lines in the Sedona transaction."  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

149.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

150.     The LOM Defendants admit that documents in LOM's possession appear to indicate that in January 2002, two accounts – one named "Golden Accumulator" and the other named "Nomad" – were credited with approximately 5.6 million shares of IHI.  The LOM Defendants admit that documents in LOM's possession appear to indicate that Brian Lines, in an email message dated January 29, 2002, instructed that certain shares of IHI be divided equally between Nomad and Golden Accumulator.  The LOM Defendants are otherwise without

knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

151.    The LOM Defendants admit, on information and belief, that Todd Peever was the beneficial owner of the Golden Accumulator account, and Phillip Curtis was the beneficial owner of the Nomad account, and that the Nomad account was transferred from LOM Cayman to LOM Bahamas in or around November 2002. The LOM Defendants further admit that Brian and Scott Lines were listed as co-brokers of the Nomad and Golden Accumulator accounts but deny that the fact that they were listed for administrative purposes as co-brokers necessarily means that they jointly acted as brokers for the accounts in practice. The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

152.    The LOM Defendants admit that documents in LOM's possession appear to indicate that Brian Lines instructed an LOM Ltd. employee to charge the Golden Accumulator and Nomad accounts $500 each for the involvement of Warwick, Consensus, SKN, and Aberdeen, but deny the allegation as it relates to Nottinghill.

153.    The LOM Defendants admit that documents in LOM's possession appear to indicate that on or about February 6, 2002, LOM Ltd. delivered five stock certificates representing approximately 3,150,000 shares of IHI to CIBC Mellon Global Securities Services in Toronto with instructions to deposit those shares into CDS Clearing and Depository Services, Inc. The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

154.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

155.    The LOM Defendants deny the allegations of this paragraph and specifically deny that any of them helped conceal Peever and Curtis's control over IHI.

156.    The LOM Defendants admit that SHEP Ltd. was a private company that owned certain automobile-related intellectual property, and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

157.    The LOM Defendants deny the allegations in this paragraph in so far as they may be read to allege that any of them helped conceal Peever and Curtis's control over IHI.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

158.    The LOM Defendants admit that on September 17, 2002, IHI announced in a press release that it had completed the acquisition of all of SHEP's issued and outstanding shares in accordance with a letter agreement dated May 22, 2002.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

159.    The LOM Defendants deny the allegations of this paragraph and specifically deny that any of them insisted or even suggested that the merged IHI/SHEP entity use the services of newsletter writers recommended by any LOM Defendant to tout the IHI/SHEP stock after the merger, or that any of them agreed to share in the cost of such touters.

160.    The LOM Defendants deny the allegations of this paragraph and specifically deny that any of them refused to help IHI/SHEP raise funds unless the company used paid touters, or agreed to provide funds to pay those touters.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

161.    The LOM Defendants deny the allegations of the first sentence of this paragraph and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

162.    The LOM Defendants admit that on September 17, 2002, IHI announced in a press release that it had completed the acquisition of all of SHEP's issued and outstanding shares in accordance with a letter agreement dated May 22, 2002.  The press release also indicated that the company was seeking to change its name to SHEP Technology Inc. or a similar name reflecting the new SHEP operating focus.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

163.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

164.    The LOM Defendants aver that LOM Ltd. records appear to indicate that from December 4 through December 6, 2002, the Golden Accumulator and Nomad accounts transferred a total of 600,000 shares of SHEP to the Largo Flight Ltd. account at LOM Cayman and the Monashee Ltd. account at LOM Bermuda.  The LOM Defendants admit that Brian and Scott Lines had signatory power over the Largo Flight Ltd. account but deny that either the Largo Flight Ltd. or Monashee accounts was jointly owned and controlled by Brian and Scott Lines.  The LOM Defendants otherwise deny the allegations of this paragraph.

165.    The LOM Defendants, upon information and belief, deny the allegations of this paragraph relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

166.     The LOM Defendants, upon information and belief, deny the allegations of this paragraph relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

167.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

168.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

169.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

170.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

171.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

172.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

173.     The LOM Defendants, upon information and belief, deny the allegations of this paragraph relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

174.     The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of this paragraph.  The LOM Defendants aver that the description of the telephone calls between Scott Lines and Peever contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content and meaning of those conversations.

175.    The LOM Defendants aver that the excerpt of the telephone call between Scott Lines and Peever on February 24, 2003, contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content and meaning of those conversations.

176.    The LOM Defendants aver that the excerpt of the telephone call between Scott Lines and Peever on February 25, 2003, contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content and meaning of those conversations.

177.    The LOM Defendants aver that the excerpt of the telephone call between Scott Lines and Peever on February 26, 2003, contained in this paragraph is selective, incomplete, and misleading, and therefore deny any allegation of this paragraph as to the content and meaning of those conversations.

178.    The LOM Defendants admit that LOM Ltd. records indicate that from late February through June 2003, sales of approximately 2.8 million shares of SHEP securities were made from the Golden Accumulator, Nomad, Largo Flight Ltd., and Monashee accounts.  The LOM Defendants deny that any of them received any illegal proceeds and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

179.    Because the Complaint does not identify "Broker-Dealer A," the LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

180.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

181.    The LOM Defendants admit that, during the period mid-2002 to mid-2003, LOM Ltd. maintained an account at Paragon Capital Markets, Inc., which had an office at 7 Hanover Square, New York, New York 10004.  The LOM Defendants further admit that Brian and Scott Lines were both authorized to place trades and direct transactions in LOM Ltd.'s account at Paragon, but are without knowledge or information sufficient to form a belief as to whether both were signatories to the opening documents for that account.  On information and belief, the LOM Defendants deny that Scott Lines placed trades through LOM Ltd.'s account at Paragon and are without knowledge or information sufficient to form a belief as to whether Brian Lines did so.

182.    The LOM Defendants aver that LOM Ltd. records appear to indicate that between March 2003 and June 2003, shares of SHEP stock were transferred from the Golden Accumulator and Nomad accounts to other LOM accounts, which then sold those shares over the OTCBB.  The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

183.    The LOM Defendants admit that LOM Ltd. transmitted SHEP sell orders from the Golden Accumulator, Nomad, Monashee, and Largo Flight Ltd. accounts to more than one U.S. broker-dealer, including Paragon, between September 2002 and June 2003.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that any of the LOM Defendants failed to conduct a reasonable inquiry to determine whether Peever, Curtis, or Brian or Scott Lines was engaged in an illegal distribution of SHEP securities.

184.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

185.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

186.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

187.    The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

188.    The LOM Defendants, upon information and belief, deny the allegations of this paragraph relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

189.    The LOM Defendants, upon information and belief, deny the allegations of this paragraph relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

190.    The LOM Defendants admit that the documents described in the second sentence of this paragraph were filed with the SEC on or about the dates indicated and admit that there were communications between Brian Lines and a U.S. lawyer that appear to relate to these filings but are without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of this paragraph, relating to the exact circumstances of their filing, and of the last two sentences of this paragraph, regarding their truth or falsity.

191.    The LOM Defendants deny the allegations of this paragraph and specifically deny that any of them provided SHEP with false information regarding the stock positions of Gateway, Consensus, or Nottinghill (or their respective directors).

192.    The LOM Defendants deny the allegations of this paragraph and specifically deny that any of the LOM Defendants engaged or were used in any unlawful manipulative or fraudulent scheme.  The LOM Defendants further deny that Brian or Scott Lines acted as agents of any LOM Defendant in any unlawful or manipulative or fraudulent scheme.

193.    The LOM Defendants deny that any one of them served as "representative and attorney-in-fact" on behalf of Peever or Curtis in the purchase of IHI shares and further deny that Brian Lines, if he did so, was acting in his capacity as President of any of the LOM Defendants. The LOM Defendants further deny the allegations in this paragraph in so far as they may be read to allege that any of them helped conceal Peever and Curtis's control over IHI. The LOM Defendants specifically deny that any of the LOM Defendants, including LOM Ltd., engaged in any unlawful manipulative or fraudulent scheme. The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

194.    The LOM Defendants aver that LOM Ltd. performed certain routine back-office and administrative functions, including authorized wire transfers from LOM accounts such as Golden Accumulator and Nomad. The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that any of the LOM Defendants, including LOM Ltd., engaged in any unlawful manipulative or fraudulent scheme.

195.    The LOM Defendants admit that LOM Ltd. executed trades on behalf of the Golden Accumulator and Nomad accounts through accounts at Paragon, a U.S. broker-dealer. Because the Complaint does not identify "Broker-Dealer A", the LOM Defendants are also without knowledge or information sufficient to form a belief as to the truth of the allegations as to the use of that brokerage firm. The LOM Defendants specifically deny that any of the LOM Defendants, including LOM Ltd., engaged in any unlawful manipulative or fraudulent scheme. The LOM Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

196.    The LOM Defendants deny the allegations of this paragraph and specifically deny that any of the LOM Defendants engaged in any unlawful manipulative or fraudulent scheme.

197.    The LOM Defendants admit that, during the period from mid-2002 to mid-2003, LOM Capital, LOM Ltd., LOM Bermuda, LOM Bahamas, and LOM Cayman were, directly or indirectly, wholly owned subsidiaries of LOM Holdings and Brian and Scott Lines were senior officers of LOM Holdings.  The LOM Defendants otherwise deny the allegations of this paragraph and specifically deny that any of the LOM Defendants engaged in any unlawful manipulative or fraudulent scheme.  The LOM Defendants further deny that Brian or Scott Lines acted as agents of any LOM Defendant in any unlawful or manipulative or fraudulent scheme.


## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

198.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

199.    Denied.

200.    Denied.

201.    Denied.

### SECOND CLAIM FOR RELIEF

202.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

203.    The allegations in this paragraph do not relate to any of the LOM Defendants, and therefore no response thereto is required.  To the extent a response is required, the LOM

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

204.    The allegations in this paragraph do not relate to any of the LOM Defendants, and therefore no response thereto is required. To the extent a response is required, the LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

### THIRD CLAIM FOR RELIEF

205.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

206.    Denied.

207.    Denied.

### FOURTH CLAIM FOR RELIEF

208.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

209.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph relating to Anthony Wile but deny any allegation that any LOM Defendant violated Section 10(b) and Rule 10b-5 thereunder.

210.    This paragraph pleads a bare statement of law to which no response is required.

211.    Denied.

212.    Denied.

### FIFTH CLAIM FOR RELIEF

213.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

214.    Denied.

215.    Denied.

216.    Denied.

## SIXTH CLAIM FOR RELIEF

217.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

218.    Denied.

219.    Denied.

220.    Denied.

## SEVENTH CLAIM FOR RELIEF

221.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

222.    This paragraph pleads a bare statement of law to which no response is required.

223.    The allegations in this paragraph do not relate to any of the LOM Defendants, and therefore no response thereto is required.  To the extent a response is required, the LOM Defendants, upon information and belief, deny the allegations relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

## EIGHTH CLAIM FOR RELIEF

224.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

225.    This paragraph pleads a bare statement of law to which no response is required.

226.    The allegations in this paragraph do not relate to any of the LOM Defendants, and therefore no response thereto is required.  To the extent a response is required, the LOM Defendants, upon information and belief, deny the allegations relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

### NINTH CLAIM FOR RELIEF

227.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

228.    Denied.

229.    Denied.

### TENTH CLAIM FOR RELIEF

230.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

231.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

232.    This paragraph pleads a bare statement of law to which no response is required.

233.    The allegations in this paragraph do not relate to any of the LOM Defendants, and therefore no response thereto is required.  To the extent a response is required, the LOM Defendants, upon information and belief, deny the allegations relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

234.    The allegations in this paragraph do not relate to any of the LOM Defendants, and therefore no response thereto is required.  To the extent a response is required, the LOM

Defendants, upon information and belief, deny the allegations relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

## ELEVENTH CLAIM FOR RELIEF

235.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

236.    Denied.

237.    Denied.

238.    Denied.

## TWELFTH CLAIM FOR RELIEF

239.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

240.    Denied.

241.    Denied.

## THIRTEENTH CLAIM FOR RELIEF

242.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

243.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

244.    This paragraph pleads a bare statement of law to which no response is required.

245.    Denied.

246.    Denied.

## FOURTEENTH CLAIM FOR RELIEF

247.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

248.    Denied.

249.    Denied.

250.    Denied.

## FIFTEENTH CLAIM FOR RELIEF

251.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

252.    This paragraph pleads a bare statement of law to which no response is required.

253.    The allegations in this paragraph do not relate to any of the LOM Defendants, and therefore no response thereto is required.  To the extent a response is required, the LOM Defendants, upon information and belief, deny the allegations relating to Scott Lines and are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

## SIXTEENTH CLAIM FOR RELIEF

254.    The LOM Defendants incorporate their responses to paragraphs 1 through 197 as if set forth herein.

255.    The LOM Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

256.    This paragraph pleads a bare statement of law to which no response is required.

257.    Denied.

258.    Denied.

## PRAYER FOR RELIEF

The LOM Defendants deny that the SEC is entitled to injunctive relief, disgorgement, civil penalties, or other relief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against the LOM Defendants upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the five-year statute of limitations contained in 28 U.S.C. § 2462.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the doctrine of laches.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part in so far as the Complaint is based, in whole or in part, on documents unlawfully obtained by the SEC pursuant to an invalid subpoena and an order issued by a court that lacked subject matter jurisdiction to enforce the subpoena.

## FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred by the doctrine of unclean hands as a result of serious misconduct by the SEC that has and continues to have serious prejudicial effects on the LOM Defendants, including, without limitation: (1) the making of and refusal to correct false and misleading representations in a Status Report to the United States District Court for the District of Columbia during the SEC's action to enforce administrative subpoenas against the LOM Defendants and Scott Lines; and (2) infringement of the right to counsel of Brian Lines, Scott Lines, and the LOM Defendants through improper communications by attorneys with represented parties.

## SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the doctrine of international comity in so far as the requirements of United States law conflict with the domestic law of the LOM Defendants' respective home jurisdictions.

## SEVENTH AFFIRMATIVE DEFENSE

The LOM Defendants were exempt from any requirement of registration under Exchange Act Rule 15a-6.

## EIGHTH AFFIRMATIVE DEFENSE

The LOM Defendants were exempt from Section 5 of the Securities Act under Section 4(1), Section 4(2), and Regulation D promulgated thereunder.

## NINTH AFFIRMATIVE DEFENSE

LOM Holdings is not liable as a control person under Section 20(a) of the Exchange Act because it acted in good faith and did not directly or indirectly induce the act or acts constituting any violation or cause of action.


## TENTH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over the LOM Defendants.


/s/ Reid M. Figel_____
Reid M. Figel (RF-8663)
Derek T. Ho
**KELLOGG, HUBER, HANSEN, TODD,
        EVANS & FIGEL, PLLC**
Sumner Square
1615 M Street, N.W.
Suite 400
Washington, DC 20036


Date:   May 16, 2008