**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

                              **Plaintiff,**

            **v.**

**BRIAN N. LINES, ET AL.,**

                              **Defendants.**

---

**C.A. No. 07-CV-11387  (DLC)(DF)**

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR ISSUANCE OF LETTERS ROGATORY**

Pursuant to Fed. R. Civ. P. 28(b)(3), Plaintiff Securities and Exchange Commission
("Commission") respectfully moves the Court to issue Requests for International Judicial
Assistance to the Ontario Superior Court of Justice in the Province of Ontario and the British
Columbia Supreme Court in the Province of British Columbia, of Canada and the appropriate
judicial authority for Bermuda, requesting the assistance of those Courts to compel the
attendance of witnesses at oral depositions in Ontario and British Columbia in Canada, and
Bermuda, and the production of documents located in Bermuda.  The Requests are needed to
obtain evidence necessary for the prosecution and trial of this case.  The Commission is filing
herewith proposed Requests for International Assistance.

**I.        Summary of Action**

 The Commission filed this action on December 18, 2007, in the United States District
Court for the Southern District of New York against LOM (Holdings) Ltd., Lines Overseas
Management Ltd., LOM Capital Ltd., LOM Securities (Bermuda) Ltd., all Bermuda
corporations, LOM Securities (Cayman) Ltd., LOM Securities (Bahamas) Ltd., Brian N. Lines, a
Bermuda resident, Scott G.S. Lines, a Bermuda resident, Anthony W. Wile, a British Columbian

resident, Wayne E. Wile, Robert J. Chapman, William Todd Peever, a British Columbian

resident, Phillip James Curtis, a British Columbian resident, and Ryan G. Leeds.

The Commission's Complaint alleges involves two separate, but similar, fraudulent

schemes to manipulate the stock prices of publicly-traded shell companies quoted on the OTC

Bulletin Board: Sedona Software Solutions, Inc. ("Sedona") and SHEP Technologies, Inc.

("SHEP").  Both schemes took place from 2002 through mid-2003 and involved the

substantial participation of a Bermuda-based securities firm, defendant LOM (Holdings) Ltd.

and several of its subsidiaries (collectively, "LOM" or the "LOM Entities"), and two of

LOM's then managing principals, defendants (and brothers) Brian Lines and Scott Lines

("Lines Brothers").[1]

In the Sedona scheme, the Complaint alleges that defendant Anthony Wile and Ian

Park created Renaissance Mining Corporation ("Renaissance"), a private company that

engaged in substantial promotional activities to create the misimpression that it had already

acquired three Central American gold mines.  In fact, Renaissance did not own these mines.

The Complaint alleges the Lines Brothers collaborated with Anthony Wile by acquiring the

publicly-traded Sedona shell company through LOM nominees.  By controlling Sedona's

outstanding shares, the Lines Brothers, and the LOM Entities, played a critical role in

facilitating this market manipulation.  The Lines Brothers, using one of the LOM Entities, also

agreed to assist Renaissance in a private placement to raise the money it needed to acquire the

gold mines that Renaissance already publicly claimed it owned.

During this period, the Complaint alleges that Anthony Wile primed the market for

Renaissance/Sedona shares with materially false and misleading information.  The Lines

---

[1]    The LOM Entities and the Lines Brothers will collectively be referred to as the "Lines Defendants."

Brothers knew, or were reckless in not knowing, that materially false and misleading information was being disseminated to U.S. investors to prime the market for shares of Renaissance and Sedona. Indeed, in calls to LOM customers to solicit investors for the Renaissance private placement, Scott Lines made materially false and misleading statements about Renaissance and Sedona, and failed to disclose that he and his brother had acquired control of Sedona.

According to the Complaint, in the early morning of January 21, Sedona issued a press release announcing a letter of intent to merge with Renaissance. Later that day, before the market opened, defendants Tony Wile and his uncle Wayne Wile, along with the Lines Brothers, orchestrated a manipulative trade to help create an artificial market for Sedona's stock at over $9 per share, when Sedona stock had previously closed at only $0.03 per share. Between January 21 and January 29, 2003, the Complaint alleges the Lines Brothers sold or caused the sale of 159,300 shares of Sedona stock to investors at highly inflated prices (mostly, at above $9 per share), yielding approximately $1.45 million in illegal profits. On January 29, 2003, the Commission suspended trading in Sedona's stock due to concerns regarding the accuracy of public information regarding Renaissance and Sedona.

The Complaint also alleges that previously, from early 2002 through mid 2003, LOM participated in a similar manipulation scheme involving SHEP stock. In early 2002, the Complaint states that the Lines Brothers assisted two LOM customers, defendants Todd Peever and James Curtis, in secretly acquiring a publicly-traded shell company known as Inside Holdings, Inc. ("IHI") through the use of LOM nominees. Peever and Curtis then arranged for a reverse merger of IHI with SHEP Ltd., a private company that purportedly owned certain intellectual property. Peever and Curtis then paid Lawrence Isen and two other

3

touters to publish a series of glowing reports about the newly-merged entity, SHEP Technologies, Inc.

By assisting Curtis and Peever in secretly gaining control over IHI's outstanding shares, the Lines Brothers and LOM played a critical role in this manipulation. Throughout the first half of 2003, the Complaint alleges that Peever, Curtis, and the Lines Brothers collectively sold nearly three million shares of SHEP into the demand created by the paid touters, generating approximately $4.3 million in illegal profits. The Complaint also alleges that Peever, Curtis, and the Lines Brothers failed to make required filings with the Commission reporting their SHEP purchases and sales, and Brian Lines, after learning about this investigation, arranged for the filing of several false and misleading reports in an attempt to conceal that he, his brother, Peever, and Curtis owned and had been selling SHEP stock.

The Commission filed the present action against the defendants, alleging that they violated, inter alia, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5, and Section 17(a) of the Securities Act of 1933 ("Securities Act") by participating in these two fraudulent schemes. Among other violations, the Commission also alleged that: (1) they violated Section 5 of the Securities Act by selling or offering shares in unregistered transactions; (2) they violated, or aided and abetted violations, of the stock ownership reporting provisions; (3) the Lines Brothers and certain of the LOM Entities provided substantial assistance to the securities violations of other defendants or entities; and (4) Scott Lines and one of the LOM Entities violated Section 15(a) of the Exchange Act, by acting as unregistered brokers in the United States. The Commission seeks injunctive relief against all of the defendants, as well as disgorgement, plus prejudgment interest, civil

monetary penalties pursuant to the Securities Act and the Exchange Act, officer and director bars and permanent penny stock bars.

The Lines Defendants have filed Answers in which they have denied the allegations of the Commission's Complaint and have denied any wrongdoing or violations of law. At issue in the case is whether the Commission can establish its allegations of improper conduct by the defendants under the securities laws.

The Commission brought this action pursuant to authority conferred upon it by Sections 21(d), 21(e) and 21A of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1]. This Court has jurisdiction over this action pursuant to Sections 21(e), 21A and 27 of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(e), 78u-1 and 78aa].

## II. <u>Assistance Required</u>

Many of the acts and communications alleged in the Complaint took place in Canada and Bermuda.

This Court has jurisdiction under the Federal Rules of Civil Procedure to order discovery, including depositions of witnesses upon oral examination and production of documents from any person regarding any matter which is relevant to the subject matter of the pending action. The testimony and documents the SEC is seeking from witnesses who reside in the Provinces of Ontario and British Columbia, Canada, and Bermuda are not only relevant to discovery, but are also necessary for the trial of this case and are not otherwise obtainable by this Court at trial through this Court's compulsory process. The detailed knowledge and unique perspective of the witnesses who the SEC is seeking to depose in these three countries may not be reflected in document production and require oral testimony. Similarly, the documents sought in the proposed Letters Rogatory are

highly relevant to this case and not available from other sources.  In sum, the evidence sought in

Canada and Bermuda through the proposed Letters Rogatory is necessary in order for this Court to

do justice in this case.  Therefore, the SEC respectfully requests that this Court issue the Requests

for International Judicial Assistance addressed to the Ontario and British Columbia courts in

Canada and the appropriate judicial authority of Bermuda, filed herewith to compel the

attendance of witnesses for oral depositions in Canada and Bermuda and the production of

documents listed below in Bermuda.

  Neither of these countries are parties to any multilateral treaty on obtaining evidence,

such as the 1970 Hague Convention on the Taking of Evidence Abroad in Civil or Commercial

Matters.  However, pursuant to Section 46 of the *Canada Evidence Act*, Section 60 of the

*Evidence Act of Ontario*, Section 56 of the *Alberta Evidence Act*, and Section 53 of the British

Columbia *Evidence Act* upon application by Canadian counsel based on Letters Rogatory issued

by a foreign court, a Canadian court will issue an appropriate order compelling a witness to

appear, to testify at deposition, and to produce documents.  The same process holds true for

Bermuda.

  Federal courts are authorized to issue such Letters of Request by Fed. R. Civ. P. 28(b)

and 28 U.S.C. § 1781, and also have inherent authority to do so.  *See United States v. Reagan*,

453 F.2d 165, 171-173 (6th Cir. 1971), *cert. denied*, 406 U.S. 946 (1972).[2]

  Enforcement of these Letters Rogatory will not be unduly burdensome to the Canadian or

Bermudian witnesses.  Moreover, the documents sought by the Commission are limited in scope

and not available from other sources.  The witnesses and documents requested are set forth

---

[2]  If the Court issues the Letters of Request, plaintiff will transmit the Letters to
Canadian counsel who will present them to the Ontario, British Columbia and Alberta
Courts, and to the appropriate judicial authority in Bermuda.

below and included in the proposed Requests for International Judicial Assistance. A short

description of the subject matter of the witness's information or testimony is included below.

### 1.     ONTARIO WITNESS

a.     Witness – David Skarica
119 Grant Boulevard
Dundas, Ontario L9H 4L9

Mr. Skarica was a stock analyst who was touting the purchase of Renaissance and Sedona

shares at the time of the market manipulations in 2002 and 2003.  Mr. Skarica had numerous

communications with Mr. Wile and Mr. Chapman about Renaissance and Sedona.  Mr. Skarica also

spoke to Mr. Wile after the trading suspension of the Sedona shares.  Mr. Skarica received shares in

Renaissance from Anthony Wile.  Mr. Skarica has knowledge about defendants Anthony Wile,

Wayne Wile and Robert Chapman, and the value of the Renaissance and Sedona shares.

### 2.     BRITISH COLUMBIA WITNESSES

a.     Witness – Malcolm Burke
215 14th St., Apt. 304
West Vancouver, B.C. V7T 2P9

Mr. Burke was the former CEO of SHEP.  He had direct communications with defendants

Brian Lines, Todd Peever, and James Curtis regarding: (1) the merger of a shell company, IHI, with

SHEP; (2) the use of certain stock newsletter writers to tout the SHEP stock; and (3) the nominee

entities that purportedly owned IHI.  All of this information is relevant to the case.

b.     Witness – Lawrence Roulston
3389 Radcliff Ave.
West Vancouver, B.C.

Mr. Roulston was a stock newsletter writer who was asked by defendant Anthony Wile to

tout the shares of Renaissance Mining and Sedona at the time of the market manipulations in

2003.  He had numerous conversations with Mr. Wile and others about Renaissance and its proposed merger with Sedona.  Mr. Roulston purchased Renaissance shares prior to the proposed merger transaction.  Mr. Roulston also has information about the value of the Sedona shares at the time when they first began active trading in January 2003.

### 3.     BERMUDA WITNESSES

    a.      Witness – Michael Heslop
               "Fidelwoods"
               12 Middle Road
               Devonshire DV 06
               Bermuda

Mr. Heslop is an acquaintance of the Lines Brothers and served as a director/nominee for Aberdeen Holdings Ltd. ("Aberdeen"), which was involved in the alleged SHEP manipulation.  The Commission would like to question Mr. Heslop about whether Aberdeen was the actual owner of the SHEP shares and about how the nominee accounts were handled at LOM.  In addition, the Commission would like to question Mr. Heslop about the Lines Brothers and LOM.

    b.      Witness – Kevin Gunther
               "Scupentania"
               5 Shaw Wood Road
               Pembroke HM 01
               Bermuda

Mr. Gunther is an employee of an LOM affiliate who was involved in opening and approving new customer accounts.  Mr. Gunther had numerous communications with the Lines Brothers and others regarding trading in the Sedona and SHEP securities.  The Commission would like to question Mr. Gunther about the manner and procedures that LOM uses regarding opening

and reviewing new customer accounts, trading on behalf of LOM customers, the SHEP and Sedona

transactions, and whether any modifications or changes to LOM's standard business procedures for

new customers were requested by or completed for Brian Lines or Scott Lines.  The Commission

would also like to question Mr. Gunther about the nominee accounts used by LOM to complete

trading in Sedona and SHEP, including his own actions as a nominee director of Iguana Investments

Ltd.  Finally, the Commission would like to question Mr. Gunther about his communications with

Brian Lines and Scott Lines regarding the Sedona and SHEP securities.

c.      Witness – Cueva Holder
22 Wilderness Lane
Smith's FL 06
Bermuda

Mr. Holder is a former LOM employee who was involved in the handling and

processing of the Sedona and SHEP securities at LOM.  Mr. Holder had numerous communications

with the Lines Brothers and others regarding trading in the Sedona and SHEP securities.  The

Commission would like to question Mr. Holder about the manner and procedures that LOM uses

regarding securities in its accounts, trading on behalf of LOM customers, the SHEP and Sedona

transactions, and whether any modifications or changes to LOM's standard business procedures

were requested by or completed for Brian Lines or Scott Lines.  The Commission would also like to

question Mr. Holder about the nominee accounts used by LOM to complete trading in Sedona and

SHEP, as well as his communications with Brian Lines and Scott Lines regarding the Sedona and

SHEP securities.

d.      Witness – Richard King
13 Pine Tree Lane
Somerset MA 02
Bermuda

9

Mr. King is an acquaintance of the Lines Brothers and served as a director/nominee for both: (1) Nottinghill Resources Ltd. ("Nottinghill"), which was involved in the alleged SHEP manipulation; and (2) Iguana Investments Ltd. ("Iguana"), which was involved in the alleged Sedona manipulation. The Commission would like to question Mr. King about whether Nottinghill and Iguana were the actual owners of the SHEP and Sedona shares and about how the nominee accounts were handled at LOM. In addition, the Commission would like to question Mr. King about the Lines Brothers and LOM.

> e.   Witness – Graham Redford
>      "Moytura"
>      10 Manor Hill
>      Cobbs Hill Rd.
>      Warwick PG 01
>      Bermuda

Mr. Redford is an acquaintance of the Lines Brothers and served as a director/nominee for Clyde Resources Ltd. ("Clyde"), which was involved in the alleged Sedona manipulation. The Commission would like to question Mr. Redford about whether Clyde was the actual owner of the Sedona shares and about how the nominee accounts were handled at LOM. In addition, the Commission would like to question Mr. Redford about the Lines Brothers and LOM.

> f.   Witness – Stuart Smith
>      145 Middle Road
>      South Hampton SN 01
>      Bermuda

Mr. Smith is an acquaintance of the Lines Brothers and served as a director/nominee for Warwick Ventures Ltd. ("Warwick"), which was involved in the alleged Sedona and SHEP manipulations. The Commission would like to question Mr. Smith about whether Warwick was the actual owner of the Sedona shares and about how the nominee accounts were handled at LOM. In addition, the Commission would like to question Mr. Smith about the Lines Brothers and LOM.

g.      Witness – Kenneth Taves
            South Apartment
            33 Cottage Hill
            Hamilton
            Bermuda

Mr. Taves is a Canadian lawyer residing in Bermuda.  He was involved in the transfer of

funds when the Sedona shell company was sold to the Lines Brothers by Jack Cooper.  In addition,

Mr. Taves handled a number of business matters for defendant James Curtis, many of which involve

Nomad Trading – one of the nominee entities involved in the alleged SHEP manipulation.  The

Commission would like to question Mr. Taves about his business dealings with Mr. Curtis and

Nomad Trading.  In addition, the Commission would like to question Mr. Taves about his dealings

with the Lines Brothers and LOM.

h.      Witness – Susan Wilson
            Bulls Head
            Dundonald St.
            Hamilton
            Bermuda

Ms. Wilson is a former board director at LOM, the sister of its chairman, Donald

Lines, and the aunt of the Lines Brothers.  The Commission would like to question Ms. Wilson

about her knowledge of LOM's trading in the SHEP and Sedona securities, the subsequent

investigation by the Bermuda Monetary Authority, and the reasons why she and Brian Lines

subsequently resigned from LOM.  The Commission would also like to question Ms. Wilson about

her own trading in Sedona and SHEP, as well as her participation in the Renaissance private

placement.  In addition, the Commission would like to question Ms. Wilson about her

communications with Donald Lines, Brian Lines, Scott Lines, and/or Scott Hill regarding the

Sedona/Renaissance/SHEP securities and trading.  Finally, the Commission would like to question

Ms. Wilson about the nature of LOM's business and types of customers it solicits and deals with.

> i.    Witness – Kevin Winter
> 38 Jubilee Rd
> Devonshire DV 06
> Bermuda

Mr. Winter is an acquaintance of the Lines Brothers and served as a director/nominee for

Gateway Research Management Group Ltd. ("Gateway"), which was involved in the alleged SHEP

and Sedona manipulations.  The Commission would like to question Mr. Winter about whether

Gateway was the actual owner of the SHEP and Sedona shares and about how the nominee accounts

were handled at LOM.  In addition, the Commission would like to question Mr. Winter about the

Lines Brothers and LOM.

### 4.    DOCUMENTS REQUESTED FROM MICHAEL HESLOP

1.  All documents (including electronic mail messages) concerning LOM from January 1, 2002 to present;
2.  All documents (including electronic mail messages) concerning Renaissance from January 1, 2002 to present;
3.  All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;
4.  All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present
5.  All documents (including electronic mail messages) concerning Aberdeen Holdings Ltd.;
6.  All documents (including electronic mail messages) concerning any entity(ies) for which you serve (or served) as an officer, director, or controlling shareholder on behalf of LOM, Brian Lines, and/or Scott Lines;
7.  Documents sufficient to identify all securities brokerage accounts in your name (jointly or otherwise), or in which you have or had a direct or indirect beneficial interest or over which you exercise or exercised control from January 1, 2002 to present;

12

8.    All documents concerning the accounts identified pursuant to Item 7 above, including account statements, account opening documents, confirmations for all transactions in the securities of SHEP from January 1, 2002 to present;

9.    All documents concerning your trading in the securities of SHEP, including trading in the securities of SHEP by any entity or person on your behalf, or by any entity over which you exercise or exercised authority or control;

10.    All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

11.    All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.

## 5.    DOCUMENTS REQUESTED FROM KEVIN GUNTHER

1.    All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

2.    All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

3.    All documents (including electronic mail messages) concerning any of the Nominees or the Nominee Accounts, including Iguana Investments Ltd.;

4.    All documents concerning trading in the securities of Sedona;

5.    All documents concerning trading in the securities of SHEP;

6.    All documents (including electronic mail messages) concerning LOM's policies and procedures for handling new customer accounts;

7.    All documents (including electronic mail messages) regarding communications with Scott Hill or any other person responsible for compliance issues at LOM regarding the Sedona, SHEP or Renaissance securities;

8.    All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

9.    All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.

## 6.    DOCUMENTS REQUESTED FROM CUEVA HOLDER

1.    All documents (including electronic mail messages) concerning Renaissance from January 1, 2002 to present;

2.    All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

3.   All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

4.   All documents (including electronic mail messages) concerning any of the Nominees or the Nominee Accounts;

5.   All documents concerning trading in the securities of Sedona;

6.   All documents concerning trading in the securities of SHEP;

7.   All documents (including electronic mail messages) concerning LOM's policies and procedures for handling and controlling securities for its customer accounts;

8.   All documents (including electronic mail messages) regarding communications with Scott Hill or any other person responsible for compliance issues at LOM regarding the Sedona, SHEP or Renaissance securities;

9.   All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

10.  All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.

11.  All documents (including electronic mail messages) concerning Dave McNay from January 1, 2002 to present;

**7.   DOCUMENTS REQUESTED FROM RICHARD KING**

1.   All documents (including electronic mail messages) concerning LOM from January 1, 2002 to present;

2.   All documents (including electronic mail messages) concerning Renaissance from January 1, 2002 to present;

3.   All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

4.   All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

5.   All documents (including electronic mail messages) concerning Nottinghill Resources Ltd. and Iguana Investments Ltd.;

6.   All documents (including electronic mail messages) concerning any entity(ies) for which you serve (or served) as an officer, director, or controlling shareholder on behalf of LOM, Brian Lines, and/or Scott Lines;

7.   Documents sufficient to identify all securities brokerage accounts in your name (jointly or otherwise), or in which you have or had a direct or indirect beneficial interest or over which you exercise or exercised control from January 1, 2002 to present;

8.   All documents concerning the accounts identified pursuant to Item 7 above, including account statements, account opening

14

documents, confirmations for all transactions in the securities of SHEP or Sedona from January 1, 2002 to present;

9.     All documents concerning your trading in the securities of SHEP or Sedona, including trading in the securities of SHEP or Sedona by any entity or person on your behalf, or by any entity over which you exercise or exercised authority or control;

10.    All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

11.    All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.

## 8.    DOCUMENTS REQUESTED FROM GRAHAM REDFORD

1.     All documents (including electronic mail messages) concerning LOM from December 1, 2002 to present;

2.     All documents (including electronic mail messages) concerning Renaissance from December 1, 2002 to present;

3.     All documents (including electronic mail messages) concerning Sedona from December 1, 2002 to present;

4.     All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

5.     All documents (including electronic mail messages) concerning Clyde Resources Ltd.;

6.     All documents (including electronic mail messages) concerning any entity(ies) for which you serve (or served) as an officer, director, or controlling shareholder on behalf of LOM, Brian Lines, and/or Scott Lines;

7.     Documents sufficient to identify all securities brokerage accounts in your name (jointly or otherwise), or in which you have or had a direct or indirect beneficial interest or over which you exercise or exercised control from December 1, 2002 to present;

8.     All documents concerning the accounts identified pursuant to Item 7 above, including account statements, account opening documents, confirmations for all transactions in the securities of Sedona from December 1, 2002 to present;

9.     All documents concerning your trading in the securities of Sedona, including trading in the securities of Sedona by any entity or person on your behalf, or by any entity over which you exercise or exercised authority or control;

10.    All documents (including electronic mail messages) concerning Brian Lines from December 1, 2002 to present;

11.    All documents (including electronic mail messages) concerning Scott Lines from December 1, 2002 to present.

## 9.    DOCUMENTS REQUESTED FROM SUSAN WILSON

1.    All documents (including electronic mail messages) concerning LOM from January 1, 2002 to present;

2.    All documents (including electronic mail messages) concerning Renaissance from January 1, 2002 to present;

3.    All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

4.    All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

5.    All documents (including electronic mail messages) concerning any of the Nominees or the Nominee Accounts;

6.    All documents concerning trading in the securities of Sedona;

7.    All documents concerning the Renaissance private placement;

8.    All documents concerning trading in the securities of SHEP;

9.    All documents (including electronic mail messages) concerning LOM's policies and procedures for handling and controlling securities for its customer accounts;

10.    All documents (including electronic mail messages) regarding communications with Scott Hill or any other person responsible for compliance issues at LOM regarding the Sedona, SHEP or Renaissance securities;

11.    All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

12.    All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present;

13.    All documents (including electronic mail messages) concerning Donald Lines from January 1, 2002 to present;

14.    All documents (including electronic mail messages) concerning the Bermuda Monetary Authority's investigation of LOM;

15.    All documents (including electronic mail messages) concerning audits of LOM and/or communications with the accounting firm of Marcum and Kliegman.

## 10.    DOCUMENTS REQUESTED FROM KEVIN WINTER

1.    All documents (including electronic mail messages) concerning LOM from January 1, 2002 to present;

2.    All documents (including electronic mail messages) concerning Renaissance from January 1, 2002 to present;

3.    All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

4.  All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

5.  All documents (including electronic mail messages) concerning Gateway Research Management Group Ltd.;

6.  All documents (including electronic mail messages) concerning any entity(ies) for which you serve (or served) as an officer, director, or controlling shareholder on behalf of LOM, Brian Lines, and/or Scott Lines;

7.  Documents sufficient to identify all securities brokerage accounts in your name (jointly or otherwise), or in which you have or had a direct or indirect beneficial interest or over which you exercise or exercised control from January 1, 2002 to present;

8.  All documents concerning the accounts identified pursuant to Item 7 above, including account statements, account opening documents, confirmations for all transactions in the securities of SHEP or Sedona from January 1, 2002 to present;

9.  All documents concerning your trading in the securities of SHEP or Sedona, including trading in the securities of SHEP or Sedona by any entity or person on your behalf, or by any entity over which you exercise or exercised authority or control;

10. All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

11. All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.

## III.  Conclusion

The Commission has submitted proposed Letters Rogatory for the Ontario and British Columbia courts, in Canada and the appropriate judicial authority in Bermuda, which are attached hereto as Exhibits A-C.  With the Court's approval, these Letters Rogatory will be presented to the courts of the respective jurisdictions by appropriate counsel retained by the Commission.  Those foreign counsel will seek issuance of orders by the Courts in the respective jurisdictions compelling the witnesses listed above to appear and testify at deposition and the production of the documents listed above.  The Commission respectfully requests that this Court

17

issue the proposed Letters Rogatory for submission to the appropriate courts in Ontario and

British Columbia, Canada, and Bermuda.

Dated: August 20, 2008
        Washington, DC

                                Respectfully submitted,

                                /s/   David Williams
                                A. David Williams, Esq.
                                Securities and Exchange Commission
                                100 F Street, N.E.
                                Washington, D.C. 20549-4010
                                Phone:  (202) 551-4548  (Williams)
                                Fax:      (202) 772-9246
                                williamsdav@sec.gov

<u>Certificate of Service</u>

I HERBY CERTIFY that on August 20, 2008, I transmitted via e-mail, pursuant to agreement between counsel, *Memorandum in Support of Motion for Issuance of Letters Rogatory* to::

Mr. Reid M. Figel, Esq.
Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC
1615 M St, NW, Suite 400
Washington, D.C.   20036
Counsel for LOM (Holdings) Ltd., Lines Overseas Management Ltd., LOM Capital Ltd.,
LOM Securities (Bermuda) Ltd., LOM Securities (Cayman) Ltd, LOM Securities (Bahamas) Ltd.

Mr. Philip M. Smith, Esq.
Patton Boggs LLP
1185 Avenue of the Americas, 30th Floor
New York, NY  10036
United States of America
Counsel for Defendant Brian Lines

Mr. Steve Crimmins, Esq.
Mayer Brown
1907 K Street, NW
Washington, D.C. 20006
Counsel for Defendant Scott Lines

s/ David Williams_____
David Williams

19

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE**
**COMMISSION,**

                                          **Plaintiff,**

                    **v.**                                    **C.A. No. 07-CV-11387  (DC)**

**BRIAN N. LINES, ET AL.,**

                                          **Defendants.**

---

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
## (LETTER ROGATORY)

The United States District Court for the Southern District of New York presents its compliments to the Ontario Superior Court of Justice in the Province of Ontario, Canada, and requests judicial assistance to compel the attendance of witnesses at an oral deposition to be used in a civil proceeding before this Court in the above-captioned matter.  This Court requests the assistance described herein as necessary in the interests of justice.

   I.      Summary of Action

The Commission filed this action on December 18, 2007, in the United States District Court for the Southern District of New York against LOM (Holdings) Ltd., Lines Overseas Management Ltd., LOM Capital Ltd., LOM Securities (Bermuda) Ltd., all Bermuda corporations, LOM Securities (Cayman) Ltd., LOM Securities (Bahamas) Ltd., Brian N. Lines, a Bermuda resident, Scott G.S. Lines, a Bermuda resident, Anthony W. Wile, a British Columbian resident, Wayne E. Wile, Robert J. Chapman, William Todd Peever, a British Columbian resident, Phillip James Curtis, a British Columbian resident, and Ryan G. Leeds.

The Commission's Complaint alleges involves two separate, but similar, fraudulent schemes to manipulate the stock prices of publicly-traded shell companies quoted on the OTC

Bulletin Board: Sedona Software Solutions, Inc. ("Sedona") and SHEP Technologies, Inc.

("SHEP").  Both schemes took place from 2002 through mid-2003 and involved the

substantial participation of a Bermuda-based securities firm, defendant LOM (Holdings) Ltd.

and several of its subsidiaries (collectively, "LOM" or the "LOM Entities"), and two of

LOM's then managing principals, defendants (and brothers) Brian Lines and Scott Lines

("Lines Brothers").[3]

In the Sedona scheme, the Complaint alleges that defendant Anthony Wile and Ian

Park created Renaissance Mining Corporation ("Renaissance"), a private company that

engaged in substantial promotional activities to create the misimpression that it had already

acquired three Central American gold mines.  In fact, Renaissance did not own these mines.

The Complaint alleges the Lines Brothers collaborated with Anthony Wile by acquiring the

publicly-traded Sedona shell company through LOM nominees.  By controlling Sedona's

outstanding shares, the Lines Brothers, and the LOM Entities, played a critical role in

facilitating this market manipulation.  The Lines Brothers, using one of the LOM Entities, also

agreed to assist Renaissance in a private placement to raise the money it needed to acquire the

gold mines that Renaissance already publicly claimed it owned.

During this period, the Complaint alleges that Anthony Wile primed the market for

Renaissance/Sedona shares with materially false and misleading information.  The Lines

Brothers knew, or were reckless in not knowing, that materially false and misleading

information was being disseminated to U.S. investors to prime the market for shares of

Renaissance and Sedona.  Indeed, in calls to LOM customers to solicit investors for the

Renaissance private placement, Scott Lines made materially false and misleading statements

---

[3]      The LOM Entities and the Lines Brothers will collectively be referred to as the "Lines Defendants."

2

about Renaissance and Sedona, and failed to disclose that he and his brother had acquired control of Sedona.

According to the Complaint, in the early morning of January 21, Sedona issued a press release announcing a letter of intent to merge with Renaissance. Later that day, before the market opened, defendants Tony Wile and his uncle Wayne Wile, along with the Lines Brothers, orchestrated a manipulative trade to help create an artificial market for Sedona's stock at over $9 per share, when Sedona stock had previously closed at only $0.03 per share. Between January 21 and January 29, 2003, the Complaint alleges the Lines Brothers sold or caused the sale of 159,300 shares of Sedona stock to investors at highly inflated prices (mostly, at above $9 per share), yielding approximately $1.45 million in illegal profits. On January 29, 2003, the Commission suspended trading in Sedona's stock due to concerns regarding the accuracy of public information regarding Renaissance and Sedona.

The Complaint also alleges that previously, from early 2002 through mid 2003, LOM participated in a similar manipulation scheme involving SHEP stock. In early 2002, the Complaint states that the Lines Brothers assisted two LOM customers, defendants Todd Peever and James Curtis, in secretly acquiring a publicly-traded shell company known as Inside Holdings, Inc. ("IHI") through the use of LOM nominees. Peever and Curtis then arranged for a reverse merger of IHI with SHEP Ltd., a private company that purportedly owned certain intellectual property. Peever and Curtis then paid Lawrence Isen and two other touters to publish a series of glowing reports about the newly-merged entity, SHEP Technologies, Inc.

By assisting Curtis and Peever in secretly gaining control over IHI's outstanding shares, the Lines Brothers and LOM played a critical role in this manipulation. Throughout

3

the first half of 2003, the Complaint alleges that Peever, Curtis, and the Lines Brothers collectively sold nearly three million shares of SHEP into the demand created by the paid touters, generating approximately $4.3 million in illegal profits.  The Complaint also alleges that Peever, Curtis, and the Lines Brothers failed to make required filings with the Commission reporting their SHEP purchases and sales, and Brian Lines, after learning about this investigation, arranged for the filing of several false and misleading reports in an attempt to conceal that he, his brother, Peever, and Curtis owned and had been selling SHEP stock.

The Commission filed the present action against the defendants, alleging that they violated, inter alia, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5, and Section 17(a) of the Securities Act of 1933 ("Securities Act") by participating in these two fraudulent schemes.  Among other violations, the Commission also alleged that: (1) they violated Section 5 of the Securities Act by selling or offering shares in unregistered transactions; (2) they violated, or aided and abetted violations, of the stock ownership reporting provisions; (3) the Lines Brothers and certain of the LOM Entities provided substantial assistance to the securities violations of other defendants or entities; and (4) Scott Lines and one of the LOM Entities violated Section 15(a) of the Exchange Act, by acting as unregistered brokers in the United States.  The Commission seeks injunctive relief against all of the defendants, as well as disgorgement, plus prejudgment interest, civil monetary penalties pursuant to the Securities Act and the Exchange Act, officer and director bars and permanent penny stock bars.

The Lines Defendants have filed Answers in which they have denied the allegations of the Commission's Complaint and have denied any wrongdoing or violations of law.  At issue in

the case is whether the Commission can establish its allegations of improper conduct by the defendants under the securities laws.

The Commission brought this action pursuant to authority conferred upon it by Sections 21(d), 21(e) and 21A of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1]. This Court has jurisdiction over this action pursuant to Sections 21(e),

II.    <u>Assistance Required</u>

One of the witnesses with knowledge of facts relevant to this action, David Skarica, resides in Ontario.

This Court has jurisdiction under the Federal Rules of Civil Procedure to order discovery, including depositions of witnesses within the United States upon oral examination and production of documents from any person regarding any matter which is relevant to the subject matter of the pending action.

The evidence sought from the witness in this case who resides in Ontario is relevant not only to discovery in this case, but also is necessary for use at the trial, and is not otherwise obtainable by this Court at the trial through this Court's compulsory process.  Thus, the evidence so obtained will be used by the parties at the trial itself.  The evidence sought in Ontario by this Request is necessary in order for this Court to do justice in this case. Therefore, this Court respectfully requests that, in the interest of justice, you issue appropriate orders, subpoenas or other compulsory process necessary to compel the attendance of the witness listed below for oral depositions concerning any matter relevant to this case.

This Court further requests that the proper judicial authorities of Ontario cause the depositions to be recorded in writing by a qualified court reporter, to cause the recordings of the depositions to be authenticated, to allow the depositions to be videotaped and to cause the

authenticated records to be delivered to Plaintiff's and Defendant's counsel.  It is hereby requested that Plaintiff's representatives be granted the option to have the testimony videotaped by a qualified videographer.  The original transcripts of the testimony, and if the testimony is videotaped, the videotapes, should be returned to Plaintiff's representatives for retention and production at the time of trial.

Pursuant to 28 U.S.C. § 1782, this Court stands ready to extend similar assistance to the Courts of Canada in like cases.

I.       WITNESS

B.       Witness – David Skarica
              119 Grant Boulevard
              Dundas, Ontario L9H 4L9

Mr. Skarica was a stock analyst who was touting the purchase of Renaissance and Sedona shares at the time of the market manipulations in 2002 and 2003.  Mr. Skarica had numerous communications with Mr. Wile and Mr. Chapman about Renaissance and Sedona.  Mr. Skarica also spoke to Mr. Wile after the trading suspension of the Sedona shares.  Mr. Skarica received shares in Renaissance from Anthony Wile.  Mr. Skarica has knowledge about defendants Anthony Wile, Wayne Wile and Robert Chapman, and the value of the Renaissance and Sedona shares.

_____ _
HONORABLE DENISE COTE
UNITED STATES DISTRICT JUDGE


DATE:_____

6

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE**
**COMMISSION,**

                                          **Plaintiff,**

                         **v.**                              **C.A. No. 07-CV-11387  (DC)**

**BRIAN N. LINES, ET AL.,**

                                          **Defendants.**

---

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
## (LETTER ROGATORY)

The United States District Court for the Southern District of New York presents its

compliments to the British Columbia Superior Court of Justice in the Province of British

Columbia, Canada, and requests judicial assistance to compel the attendance of witnesses at

oral depositions and the production of documents to be used in a civil proceeding before this

Court in the above-captioned matter.  This Court requests the assistance described herein as

necessary in the interests of justice.

   I.    <u>Summary of Action</u>

The Commission filed this action on December 18, 2007, in the United States District

Court for the Southern District of New York against LOM (Holdings) Ltd., Lines Overseas

Management Ltd., LOM Capital Ltd., LOM Securities (Bermuda) Ltd., all Bermuda

corporations, LOM Securities (Cayman) Ltd., LOM Securities (Bahamas) Ltd., Brian N. Lines, a

Bermuda resident, Scott G.S. Lines, a Bermuda resident, Anthony W. Wile, a British Columbian

resident, Wayne E. Wile, Robert J. Chapman, William Todd Peever, a British Columbian

resident, Phillip James Curtis, a British Columbian resident, and Ryan G. Leeds.

The Commission's Complaint alleges involves two separate, but similar, fraudulent schemes to manipulate the stock prices of publicly-traded shell companies quoted on the OTC Bulletin Board: Sedona Software Solutions, Inc. ("Sedona") and SHEP Technologies, Inc. ("SHEP"). Both schemes took place from 2002 through mid-2003 and involved the substantial participation of a Bermuda-based securities firm, defendant LOM (Holdings) Ltd. and several of its subsidiaries (collectively, "LOM" or the "LOM Entities"), and two of LOM's then managing principals, defendants (and brothers) Brian Lines and Scott Lines ("Lines Brothers").[4]

In the Sedona scheme, the Complaint alleges that defendant Anthony Wile and Ian Park created Renaissance Mining Corporation ("Renaissance"), a private company that engaged in substantial promotional activities to create the misimpression that it had already acquired three Central American gold mines. In fact, Renaissance did not own these mines. The Complaint alleges the Lines Brothers collaborated with Anthony Wile by acquiring the publicly-traded Sedona shell company through LOM nominees. By controlling Sedona's outstanding shares, the Lines Brothers, and the LOM Entities, played a critical role in facilitating this market manipulation. The Lines Brothers, using one of the LOM Entities, also agreed to assist Renaissance in a private placement to raise the money it needed to acquire the gold mines that Renaissance already publicly claimed it owned.

During this period, the Complaint alleges that Anthony Wile primed the market for Renaissance/Sedona shares with materially false and misleading information. The Lines Brothers knew, or were reckless in not knowing, that materially false and misleading information was being disseminated to U.S. investors to prime the market for shares of

---

[4]     The LOM Entities and the Lines Brothers will collectively be referred to as the "Lines Defendants."

2

Renaissance and Sedona.  Indeed, in calls to LOM customers to solicit investors for the Renaissance private placement, Scott Lines made materially false and misleading statements about Renaissance and Sedona, and failed to disclose that he and his brother had acquired control of Sedona.

According to the Complaint, in the early morning of January 21, Sedona issued a press release announcing a letter of intent to merge with Renaissance.  Later that day, before the market opened, defendants Tony Wile and his uncle Wayne Wile, along with the Lines Brothers, orchestrated a manipulative trade to help create an artificial market for Sedona's stock at over $9 per share, when Sedona stock had previously closed at only $0.03 per share. Between January 21 and January 29, 2003, the Complaint alleges the Lines Brothers sold or caused the sale of 159,300 shares of Sedona stock to investors at highly inflated prices (mostly, at above $9 per share), yielding approximately $1.45 million in illegal profits.  On January 29, 2003, the Commission suspended trading in Sedona's stock due to concerns regarding the accuracy of public information regarding Renaissance and Sedona.

The Complaint also alleges that previously, from early 2002 through mid 2003, LOM participated in a similar manipulation scheme involving SHEP stock.  In early 2002, the Complaint states that the Lines Brothers assisted two LOM customers, defendants Todd Peever and James Curtis, in secretly acquiring a publicly-traded shell company known as Inside Holdings, Inc. ("IHI") through the use of LOM nominees.  Peever and Curtis then arranged for a reverse merger of IHI with SHEP Ltd., a private company that purportedly owned certain intellectual property.  Peever and Curtis then paid Lawrence Isen and two other touters to publish a series of glowing reports about the newly-merged entity, SHEP Technologies, Inc.

3

By assisting Curtis and Peever in secretly gaining control over IHI's outstanding shares, the Lines Brothers and LOM played a critical role in this manipulation. Throughout the first half of 2003, the Complaint alleges that Peever, Curtis, and the Lines Brothers collectively sold nearly three million shares of SHEP into the demand created by the paid touters, generating approximately $4.3 million in illegal profits. The Complaint also alleges that Peever, Curtis, and the Lines Brothers failed to make required filings with the Commission reporting their SHEP purchases and sales, and Brian Lines, after learning about this investigation, arranged for the filing of several false and misleading reports in an attempt to conceal that he, his brother, Peever, and Curtis owned and had been selling SHEP stock.

The Commission filed the present action against the defendants, alleging that they violated, inter alia, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5, and Section 17(a) of the Securities Act of 1933 ("Securities Act") by participating in these two fraudulent schemes. Among other violations, the Commission also alleged that: (1) they violated Section 5 of the Securities Act by selling or offering shares in unregistered transactions; (2) they violated, or aided and abetted violations, of the stock ownership reporting provisions; (3) the Lines Brothers and certain of the LOM Entities provided substantial assistance to the securities violations of other defendants or entities; and (4) Scott Lines and one of the LOM Entities violated Section 15(a) of the Exchange Act, by acting as unregistered brokers in the United States. The Commission seeks injunctive relief against all of the defendants, as well as disgorgement, plus prejudgment interest, civil monetary penalties pursuant to the Securities Act and the Exchange Act, officer and director bars and permanent penny stock bars.

4

The Lines Defendants have filed Answers in which they have denied the allegations of the Commission's Complaint and have denied any wrongdoing or violations of law. At issue in the case is whether the Commission can establish its allegations of improper conduct by the defendants under the securities laws.

The Commission brought this action pursuant to authority conferred upon it by Sections 21(d), 21(e) and 21A of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1]. This Court has jurisdiction over this action pursuant to Sections 21(e),

II.    Assistance Required

Many of the acts and practices alleged in the Complaint took place in British Columbia, Canada. Messrs. Anthony Wile, Curtis and Peever live in Vancouver, British Columbia, and a number of witnesses with knowledge of facts relevant to this action, including, but not limited to, Malcolm Burke and Lawrence Roulston also reside in British Columbia.

This Court has jurisdiction under the Federal Rules of Civil Procedure to order discovery, including depositions of witnesses within the United States upon oral examination and production of documents from any person regarding any matter which is relevant to the subject matter of the pending action.

The evidence sought from witnesses in this case who reside in British Columbia is relevant not only to discovery in this case, but is also necessary for use at the trial, and would not otherwise be obtainable by this Court at the trial through this Court's compulsory process. Thus, the evidence so obtained will be used by the parties at the trial itself. The evidence sought in British Columbia by this Request is necessary in order for this Court to do justice in this case. Therefore, this Court respectfully requests that, in the interest of justice, you issue

5

appropriate orders, subpoenas or other compulsory process necessary to compel the attendance of witnesses listed below for oral depositions concerning any matter relevant to this case.

This Court further requests that the proper judicial authorities of British Columbia cause the depositions to be recorded in writing by a qualified court reporter, to cause the recordings of the depositions to be authenticated, to allow the depositions to be videotaped and to cause the authenticated records to be delivered to Plaintiff's and Defendant's counsel. It is hereby requested that Plaintiff's representatives be granted the option to have the testimony videotaped by a qualified videographer. The original transcripts of the testimony, and if the testimony is videotaped, the videotapes, should be returned to Plaintiff's representatives for retention and production at the time of trial.

Pursuant to 28 U.S.C. § 1782, this Court stands ready to extend similar assistance to the Courts of Canada in like cases.

<u>WITNESSES REQUESTED</u>

II.    <u>WITNESSES</u>

    C.      Witness – Malcolm Burke
                  215 14th St., Apt. 304
                  West Vancouver, B.C. V7T 2P9

Mr. Burke was the former CEO of SHEP. He had direct communications with defendants Brian Lines, Todd Peever, and James Curtis regarding: (1) the merger of a shell company, IHI, with SHEP; (2) the use of certain stock newsletter writers to tout the SHEP stock; and (3) the nominee entities that purportedly owned IHI. All of this information is relevant to the case.

    D.      Witness – Lawrence Roulston

3389 Radcliff Ave.
West Vancouver, B.C.

Mr. Roulston was a stock newsletter writer who was asked by defendant Anthony Wile to tout the shares of Renaissance Mining and Sedona at the time of the market manipulations in 2003. He had numerous conversations with Mr. Wile and others about Renaissance and its proposed merger with Sedona. Mr. Roulston purchased Renaissance shares prior to the proposed merger transaction. Mr. Roulston also has information about the value of the Sedona shares at the time when they first began active trading in January 2003.

_____  
HONORABLE DENISE COTE  
UNITED STATES DISTRICT JUDGE

DATE:_____

7

**EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

                    v.                              C.A. No. 07-CV-11387  (DC)

BRIAN N. LINES, ET AL.,

                              Defendants.

---

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
## (LETTER ROGATORY)

The United States District Court for the Southern District of New York presents its

compliments to the appropriate judicial authority for Bermuda and requests judicial assistance

to compel the attendance of witnesses at oral depositions and the production of documents to

be used in a civil proceeding before this Court in the above-captioned matter.  This Court

requests the assistance described herein as necessary in the interests of justice.

I.      Summary of Action

The Commission filed this action on December 18, 2007, in the United States District Court for

the Southern District of New York against LOM (Holdings) Ltd., Lines Overseas Management

Ltd., LOM Capital Ltd., LOM Securities (Bermuda) Ltd., all Bermuda corporations, LOM

Securities (Cayman) Ltd., LOM Securities (Bahamas) Ltd., Brian N. Lines, a Bermuda resident,

Scott G.S. Lines, a Bermuda resident, Anthony W. Wile, a British Columbian resident, Wayne E.

Wile, Robert J. Chapman, William Todd Peever, a British Columbian resident, Phillip James

Curtis, a British Columbian resident, and Ryan G. Leeds.

The Commission's Complaint alleges involves two separate, but similar, fraudulent

schemes to manipulate the stock prices of publicly-traded shell companies quoted on the OTC

Bulletin Board: Sedona Software Solutions, Inc. ("Sedona") and SHEP Technologies, Inc. ("SHEP"). Both schemes took place from 2002 through mid-2003 and involved the substantial participation of a Bermuda-based securities firm, defendant LOM (Holdings) Ltd. and several of its subsidiaries (collectively, "LOM" or the "LOM Entities"), and two of LOM's then managing principals, defendants (and brothers) Brian Lines and Scott Lines ("Lines Brothers").[5]

In the Sedona scheme, the Complaint alleges that defendant Anthony Wile and Ian Park created Renaissance Mining Corporation ("Renaissance"), a private company that engaged in substantial promotional activities to create the misimpression that it had already acquired three Central American gold mines. In fact, Renaissance did not own these mines. The Complaint alleges the Lines Brothers collaborated with Anthony Wile by acquiring the publicly-traded Sedona shell company through LOM nominees. By controlling Sedona's outstanding shares, the Lines Brothers, and the LOM Entities, played a critical role in facilitating this market manipulation. The Lines Brothers, using one of the LOM Entities, also agreed to assist Renaissance in a private placement to raise the money it needed to acquire the gold mines that Renaissance already publicly claimed it owned.

During this period, the Complaint alleges that Anthony Wile primed the market for Renaissance/Sedona shares with materially false and misleading information. The Lines Brothers knew, or were reckless in not knowing, that materially false and misleading information was being disseminated to U.S. investors to prime the market for shares of Renaissance and Sedona. Indeed, in calls to LOM customers to solicit investors for the Renaissance private placement, Scott Lines made materially false and misleading statements

---

[5]       The LOM Entities and the Lines Brothers will collectively be referred to as the "Lines Defendants."

about Renaissance and Sedona, and failed to disclose that he and his brother had acquired control of Sedona.

According to the Complaint, in the early morning of January 21, Sedona issued a press release announcing a letter of intent to merge with Renaissance. Later that day, before the market opened, defendants Tony Wile and his uncle Wayne Wile, along with the Lines Brothers, orchestrated a manipulative trade to help create an artificial market for Sedona's stock at over $9 per share, when Sedona stock had previously closed at only $0.03 per share. Between January 21 and January 29, 2003, the Complaint alleges the Lines Brothers sold or caused the sale of 159,300 shares of Sedona stock to investors at highly inflated prices (mostly, at above $9 per share), yielding approximately $1.45 million in illegal profits. On January 29, 2003, the Commission suspended trading in Sedona's stock due to concerns regarding the accuracy of public information regarding Renaissance and Sedona.

The Complaint also alleges that previously, from early 2002 through mid 2003, LOM participated in a similar manipulation scheme involving SHEP stock. In early 2002, the Complaint states that the Lines Brothers assisted two LOM customers, defendants Todd Peever and James Curtis, in secretly acquiring a publicly-traded shell company known as Inside Holdings, Inc. ("IHI") through the use of LOM nominees. Peever and Curtis then arranged for a reverse merger of IHI with SHEP Ltd., a private company that purportedly owned certain intellectual property. Peever and Curtis then paid Lawrence Isen and two other touters to publish a series of glowing reports about the newly-merged entity, SHEP Technologies, Inc.

By assisting Curtis and Peever in secretly gaining control over IHI's outstanding shares, the Lines Brothers and LOM played a critical role in this manipulation. Throughout

3

the first half of 2003, the Complaint alleges that Peever, Curtis, and the Lines Brothers collectively sold nearly three million shares of SHEP into the demand created by the paid touters, generating approximately $4.3 million in illegal profits. The Complaint also alleges that Peever, Curtis, and the Lines Brothers failed to make required filings with the Commission reporting their SHEP purchases and sales, and Brian Lines, after learning about this investigation, arranged for the filing of several false and misleading reports in an attempt to conceal that he, his brother, Peever, and Curtis owned and had been selling SHEP stock.

The Commission filed the present action against the defendants, alleging that they violated, inter alia, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5, and Section 17(a) of the Securities Act of 1933 ("Securities Act") by participating in these two fraudulent schemes. Among other violations, the Commission also alleged that: (1) they violated Section 5 of the Securities Act by selling or offering shares in unregistered transactions; (2) they violated, or aided and abetted violations, of the stock ownership reporting provisions; (3) the Lines Brothers and certain of the LOM Entities provided substantial assistance to the securities violations of other defendants or entities; and (4) Scott Lines and one of the LOM Entities violated Section 15(a) of the Exchange Act, by acting as unregistered brokers in the United States. The Commission seeks injunctive relief against all of the defendants, as well as disgorgement, plus prejudgment interest, civil monetary penalties pursuant to the Securities Act and the Exchange Act, officer and director bars and permanent penny stock bars.

The Lines Defendants have filed Answers in which they have denied the allegations of the Commission's Complaint and have denied any wrongdoing or violations of law. At issue in

4

the case is whether the Commission can establish its allegations of improper conduct by the defendants under the securities laws.

The Commission brought this action pursuant to authority conferred upon it by Sections 21(d), 21(e) and 21A of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1]. This Court has jurisdiction over this action pursuant to Sections 21(e),

II.    Assistance Required

Many of the acts and practices alleged in the Complaint took place in Bermuda. LOM is located in Bermuda and both of the Lines Brothers reside there. Similarly, there are a number of current or former LOM employees with factual knowledge about the case who reside in Bermuda. Substantial documentary evidence relevant to this action is also located in Bermuda, including business records from LOM, phone recordings of the Lines Brothers and others at LOM discussing matters addressed in the Complaint, as well as materials from an investigation of the Lines Defendants' role in Sedona trading that was conducted by the Bermuda Monetary Authority.

This Court has jurisdiction under the Federal Rules of Civil Procedure to order discovery, including depositions of witnesses within the United States upon oral examination and production of documents from any person regarding any matter which is relevant to the subject matter of the pending action.

The evidence sought from witnesses in this case who reside in Bermuda and the documents requested from these witnesses are relevant not only to discovery in this case, but are also necessary for use at the trial, and are not otherwise obtainable by this Court at the trial through this Court's compulsory process. Thus, the evidence so obtained will be used by the parties at the trial itself. The evidence sought in Bermuda by this Request is necessary in

order for this Court to do justice in this case. Therefore, this Court respectfully requests that, in the interest of justice, you issue appropriate orders, subpoenas or other compulsory process necessary to compel the attendance of witnesses listed below for oral depositions and for the production of the documents described below concerning any matter relevant to this case.

This Court further requests that the proper judicial authorities of Bermuda cause the depositions to be recorded in writing by a qualified court reporter, to cause the recordings of the depositions to be authenticated, to allow the depositions to be videotaped and to cause the authenticated records to be delivered to Plaintiff's and Defendant's counsel. It is hereby requested that Plaintiff's representatives be granted the option to have the testimony videotaped by a qualified videographer. The original transcripts of the testimony, and if the testimony is videotaped, the videotapes, should be returned to Plaintiff's representatives for retention and production at the time of trial.

Pursuant to 28 U.S.C. § 1782, this Court stands ready to extend similar assistance to the Courts of Bermuda in like cases.

## WITNESSES AND DOCUMENTS REQUESTED

III.   **DEFINITIONS AND INSTRUCTIONS**

A.   Instructions

This request calls for the production of documents in the possession, custody or control of the witness, but excludes documents that the witness has previously provided to the U.S. Securities and Exchange Commission.

A corporation, partnership, proprietorship or other business entity shall include the entity's directors, officers, employees, attorneys and agents.

6

B.    Definitions

The term "documents" means all records, materials, and other tangible forms of expression however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, work papers, papers, reports, files, correspondence, notes, memoranda (including notes and memoranda of communications or meetings), graphs, charts, research, analyses, ledger sheets, periodic account statements, confirmations, telegrams, telexes, facsimiles, telephone logs, checks (front and back), drafts for money, wire transfer receipts and requests, confirmations of wire or cash transfers, deposit slips, invoices, bills, bills of lading, records of billings, records of payment, summaries of interviews, transcripts, calendars, datebooks, worksheets, contracts, agreements, bank statements, videotapes, audiotapes, and other permanent voice and image recordings (including voice-mail), magnetic tapes, computer printouts, computer tapes, disks, diskettes, disk packs, and other electronic media (including electronic-mail and instant messaging), microfilm, microfiche, and other storage devices.  The term "documents" includes finished versions and drafts of documents; it also includes the original document (or copy thereof if the original is not available) and all copies that differ in any respect from the original.

The term "concerning" means relating to, referring to, pertaining to, reflecting, describing, evidencing, or constituting.

The terms "and" and "or" shall be construed as both disjunctive and conjunctive to bring within the scope of the attachment all responses that might otherwise be construed outside of its scope.

The term "all" shall be construed as any, all, each, and every.

7

The terms "you" or "your" shall mean, respectively, each of the individual witnesses identified below and his or her agents, representatives, employees and/or attorneys.

The term "Renaissance" refers to Renaissance Mining Corporation and any of its subsidiaries, predecessors, shareholders, consultants, employees, representatives, agents, successors, affiliated entities, and entities in which Renaissance Mining Corporation has or has had an interest.

The term "Sedona" refers to Sedona Software Solutions, Inc. and any of its subsidiaries, predecessors, successors, shareholders, consultants, employees, representatives, agents, affiliated entities, and entities in which Sedona Software Solutions, Inc. has or has had an interest.

The term "LOM" refers to Lines Overseas Management Ltd., and any of its subsidiaries, affiliates, predecessors, successors, officers (including Brian and Scott Lines), shareholders, consultants, employees, representatives, agents, affiliated entities, and entities in which Lines Overseas Management Ltd. has or has had an interest.

The term "Nominees" refers to Eric Collins, Michael Heslop, Richard King, Graham Redford, Stuart Smith and/or Kevin Winter, individually or collectively, and any of their agents, representatives, employees or attorneys.

The term "Nominee Accounts" refers to Aberdeen Holdings Ltd., Clyde Resources Ltd., Consensus Investments Ltd., Gateway Research Management Group Ltd., Iguana Investments Ltd., Nottinghill Resources Ltd., SKN Holdings Ltd., and/or Warwick Ventures Ltd., individually or collectively, and any of their officers, directors, employees, agents, representatives or attorneys.

The term "communications" shall have its general meaning, including oral conversations, written communications and electronic communications.

8

The term "securities" includes, but is not limited to, notes, bonds, options, warrants, calls, puts, common stock, preferred stock, debentures, or evidence of indebtedness, private placements, restricted stock or any combination thereof.

II.    WITNESSES AND DOCUMENTS

E.    Witness – Michael Heslop
            "Fidelwoods"
            12 Middle Road
            Devonshire DV 06
            Bermuda

Mr. Heslop is an acquaintance of the Lines Brothers and served as a director/nominee for Aberdeen Holdings Ltd. ("Aberdeen"), which was involved in the alleged SHEP manipulation. The Commission would like to question Mr. Heslop about whether Aberdeen was the actual owner of the SHEP shares and about how the nominee accounts were handled at LOM. In addition, the Commission would like to question Mr. Heslop about the Lines Brothers and LOM.

Documents Requested from Michael Heslop:

1.    All documents (including electronic mail messages) concerning LOM from January 1, 2002 to present;

2.    All documents (including electronic mail messages) concerning Renaissance from January 1, 2002 to present;

3.    All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

4.    All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

5.    All documents (including electronic mail messages) concerning Aberdeen Holdings Ltd.;

9

6.   All documents (including electronic mail messages) concerning any entity(ies) for which you serve (or served) as an officer, director, or controlling shareholder on behalf of LOM, Brian Lines, and/or Scott Lines;

7.   Documents sufficient to identify all securities brokerage accounts in your name (jointly or otherwise), or in which you have or had a direct or indirect beneficial interest or over which you exercise or exercised control from January 1, 2002 to present;

8.   All documents concerning the accounts identified pursuant to Item 7 above, including account statements, account opening documents, confirmations for all transactions in the securities of SHEP from January 1, 2002 to present;

9.   All documents concerning your trading in the securities of SHEP, including trading in the securities of SHEP by any entity or person on your behalf, or by any entity over which you exercise or exercised authority or control;

10.  All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

11.  All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.

F.   Witness – Kevin Gunther
            "Scupentania"
            5 Shaw Wood Road
            Pembroke HM 01
            Bermuda

Mr. Gunther is an employee of an LOM affiliate who was involved in opening and approving new customer accounts. Mr. Gunther had numerous communications with the Lines Brothers and others regarding trading in the Sedona and SHEP securities. The Commission would like to question Mr. Gunther about the manner and procedures that LOM uses regarding opening and reviewing new customer accounts, trading on behalf of LOM customers, the SHEP and Sedona transactions, and whether any modifications or changes to LOM's standard business procedures for

10

new customers were requested by or completed for Brian Lines or Scott Lines. The Commission would also like to question Mr. Gunther about the nominee accounts used by LOM to complete trading in Sedona and SHEP, including his own actions as a nominee director of Iguana Investments Ltd. Finally, the Commission would like to question Mr. Gunther about his communications with Brian Lines and Scott Lines regarding the Sedona and SHEP securities.

Documents Requested from Kevin Gunther

1. All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

2. All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

3. All documents (including electronic mail messages) concerning any of the Nominees or the Nominee Accounts, including Iguana Investments Ltd.;

4. All documents concerning trading in the securities of Sedona;

5. All documents concerning trading in the securities of SHEP;

6. All documents (including electronic mail messages) concerning LOM's policies and procedures for handling new customer accounts;

7. All documents (including electronic mail messages) regarding communications with Scott Hill or any other person responsible for compliance issues at LOM regarding the Sedona, SHEP or Renaissance securities;

8. All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

9. All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.

11

G.      Witness – Cueva Holder
                        22 Wilderness Lane
                        Smith's FL 06
                        Bermuda

Mr. Holder is a former LOM employee who was involved in the handling and processing of the Sedona and SHEP securities at LOM. Mr. Holder had numerous communications with the Lines Brothers and others regarding trading in the Sedona and SHEP securities. The Commission would like to question Mr. Holder about the manner and procedures that LOM uses regarding securities in its accounts, trading on behalf of LOM customers, the SHEP and Sedona transactions, and whether any modifications or changes to LOM's standard business procedures were requested by or completed for Brian Lines or Scott Lines. The Commission would also like to question Mr. Holder about the nominee accounts used by LOM to complete trading in Sedona and SHEP, as well as his communications with Brian Lines and Scott Lines regarding the Sedona and SHEP securities.

Documents Requested from Cueva Holder

1.      All documents (including electronic mail messages) concerning Renaissance from January 1, 2002 to present;

2.      All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

3.      All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

4.      All documents (including electronic mail messages) concerning any of the Nominees or the Nominee Accounts;

5.      All documents concerning trading in the securities of Sedona;

6.      All documents concerning trading in the securities of SHEP;

12

7.    All documents (including electronic mail messages) concerning LOM's policies and procedures for handling and controlling securities for its customer accounts;

8.    All documents (including electronic mail messages) regarding communications with Scott Hill or any other person responsible for compliance issues at LOM regarding the Sedona, SHEP or Renaissance securities;

9.    All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

10.    All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.

11.    All documents (including electronic mail messages) concerning Dave McNay from January 1, 2002 to present;

H.    Witness – Richard King
                13 Pine Tree Lane
                Somerset MA 02
                Bermuda

Mr. King is an acquaintance of the Lines Brothers and served as a director/nominee for both: (1) Nottinghill Resources Ltd. ("Nottinghill"), which was involved in the alleged SHEP manipulation; and (2) Iguana Investments Ltd. ("Iguana"), which was involved in the alleged Sedona manipulation.  The Commission would like to question Mr. King about whether Nottinghill and Iguana were the actual owners of the SHEP and Sedona shares and about how the nominee accounts were handled at LOM.  In addition, the Commission would like to question Mr. King about the Lines Brothers and LOM.

Documents Requested from Richard King:

1.    All documents (including electronic mail messages) concerning LOM from January 1, 2002 to present;

2.    All documents (including electronic mail messages) concerning Renaissance from January 1, 2002 to present;

13

3.      All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

4.      All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

5.      All documents (including electronic mail messages) concerning Nottinghill Resources Ltd. and Iguana Investments Ltd.;

6.      All documents (including electronic mail messages) concerning any entity(ies) for which you serve (or served) as an officer, director, or controlling shareholder on behalf of LOM, Brian Lines, and/or Scott Lines;

7.      Documents sufficient to identify all securities brokerage accounts in your name (jointly or otherwise), or in which you have or had a direct or indirect beneficial interest or over which you exercise or exercised control from January 1, 2002 to present;

8.      All documents concerning the accounts identified pursuant to Item 7 above, including account statements, account opening documents, confirmations for all transactions in the securities of SHEP or Sedona from January 1, 2002 to present;

9.      All documents concerning your trading in the securities of SHEP or Sedona, including trading in the securities of SHEP or Sedona by any entity or person on your behalf, or by any entity over which you exercise or exercised authority or control;

10.     All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

11.     All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.

14

I.    Witness – Graham Redford
                "Moytura"
                10 Manor Hill
                Cobbs Hill Rd.
                Warwick PG 01
                Bermuda

Mr. Redford is an acquaintance of the Lines Brothers and served as a director/nominee for

Clyde Resources Ltd. ("Clyde"), which was involved in the alleged Sedona manipulation.  The

Commission would like to question Mr. Redford about whether Clyde was the actual owner of the

Sedona shares and about how the nominee accounts were handled at LOM.  In addition, the

Commission would like to question Mr. Redford about the Lines Brothers and LOM.

Documents Requested from Graham Redford:

1.     All documents (including electronic mail messages) concerning LOM
       from December 1, 2002 to present;

2.     All documents (including electronic mail messages) concerning
       Renaissance from December 1, 2002 to present;

3.     All documents (including electronic mail messages) concerning Sedona
       from December 1, 2002 to present;

4.     All documents (including electronic mail messages) concerning SHEP
       from January 1, 2002 to present

5.     All documents (including electronic mail messages) concerning Clyde
       Resources Ltd.;

6.     All documents (including electronic mail messages) concerning any
       entity(ies) for which you serve (or served) as an officer, director, or
       controlling shareholder on behalf of LOM, Brian Lines, and/or Scott
       Lines;

7.     Documents sufficient to identify all securities brokerage accounts in
       your name (jointly or otherwise), or in which you have or had a direct
       or indirect beneficial interest or over which you exercise or exercised
       control from December 1, 2002 to present;

15

8. All documents concerning the accounts identified pursuant to Item 7 above, including account statements, account opening documents, confirmations for all transactions in the securities of Sedona from December 1, 2002 to present;

9. All documents concerning your trading in the securities of Sedona, including trading in the securities of Sedona by any entity or person on your behalf, or by any entity over which you exercise or exercised authority or control;

10. All documents (including electronic mail messages) concerning Brian Lines from December 1, 2002 to present;

11. All documents (including electronic mail messages) concerning Scott Lines from December 1, 2002 to present.

J.    Witness – Stuart Smith
         145 Middle Road
         South Hampton SN 01
         Bermuda

Mr. Smith is an acquaintance of the Lines Brothers and served as a director/nominee for

Warwick Ventures Ltd. ("Warwick"), which was involved in the alleged Sedona and SHEP

manipulations. The Commission would like to question Mr. Smith about whether Warwick was the

actual owner of the Sedona shares and about how the nominee accounts were handled at LOM. In

addition, the Commission would like to question Mr. Smith about the Lines Brothers and LOM.

K.    Witness – Kenneth Taves
         South Apartment
         33 Cottage Hill
         Hamilton
         Bermuda

Mr. Taves is a Canadian lawyer residing in Bermuda. He was involved in the transfer of

funds when the Sedona shell company was sold to the Lines Brothers by Jack Cooper. In addition,

Mr. Taves handled a number of business matters for defendant James Curtis, many of which involve

Nomad Trading – one of the nominee entities involved in the alleged SHEP manipulation. The

16

Commission would like to question Mr. Taves about his business dealings with Mr. Curtis and Nomad Trading. In addition, the Commission would like to question Mr. Taves about his dealings with the Lines Brothers and LOM.

      L.    Witness – Susan Wilson
                       Bulls Head
                       Dundonald St.
                       Hamilton
                       Bermuda

Ms. Wilson is a former board director at LOM, the sister of its chairman, Donald Lines, and the aunt of the Lines Brothers. The Commission would like to question Ms. Wilson about her knowledge of LOM's trading in the SHEP and Sedona securities, the subsequent investigation by the Bermuda Monetary Authority, and the reasons why she and Brian Lines subsequently resigned from LOM. The Commission would also like to question Ms. Wilson about her own trading in Sedona and SHEP, as well as her participation in the Renaissance private placement. In addition, the Commission would like to question Ms. Wilson about her communications with Donald Lines, Brian Lines, Scott Lines, and/or Scott Hill regarding the Sedona/Renaissance/SHEP securities and trading. Finally, the Commission would like to question Ms. Wilson about the nature of LOM's business and types of customers it solicits and deals with.

          Documents Requested from Susan Wilson

      1.     All documents (including electronic mail messages) concerning LOM from January 1, 2002 to present;

      2.     All documents (including electronic mail messages) concerning Renaissance from January 1, 2002 to present;

      3.     All documents (including electronic mail messages) concerning Sedona from January 1, 2002 to present;

17

4.     All documents (including electronic mail messages) concerning SHEP from January 1, 2002 to present

5.     All documents (including electronic mail messages) concerning any of the Nominees or the Nominee Accounts;

6.     All documents concerning trading in the securities of Sedona;

7.     All documents concerning the Renaissance private placement;

8.     All documents concerning trading in the securities of SHEP;

9.     All documents (including electronic mail messages) concerning LOM's policies and procedures for handling and controlling securities for its customer accounts;

10.    All documents (including electronic mail messages) regarding communications with Scott Hill or any other person responsible for compliance issues at LOM regarding the Sedona, SHEP or Renaissance securities;

11.    All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

12.    All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present;

13.    All documents (including electronic mail messages) concerning Donald Lines from January 1, 2002 to present;

14.    All documents (including electronic mail messages) concerning the Bermuda Monetary Authority's investigation of LOM;

15.    All documents (including electronic mail messages) concerning audits of LOM and/or communications with the accounting firm of Marcum and Kliegman.

M.    Witness – Kevin Winter
                      38 Jubilee Rd
                      Devonshire DV 06
                      Bermuda


Mr. Winter is an acquaintance of the Lines Brothers and served as a director/nominee for

Gateway Research Management Group Ltd. ("Gateway"), which was involved in the alleged SHEP

and Sedona manipulations.  The Commission would like to question Mr. Winter about whether

Gateway was the actual owner of the SHEP and Sedona shares and about how the nominee accounts

were handled at LOM.  In addition, the Commission would like to question Mr. Winter about the

Lines Brothers and LOM.

       Documents Requested from Kevin Winter:

       1.     All documents (including electronic mail messages) concerning LOM
              from January 1, 2002 to present;

       2.     All documents (including electronic mail messages) concerning
              Renaissance from January 1, 2002 to present;

       3.     All documents (including electronic mail messages) concerning Sedona
              from January 1, 2002 to present;

       4.     All documents (including electronic mail messages) concerning SHEP
              from January 1, 2002 to present

       5.     All documents (including electronic mail messages) concerning
              Gateway Research Management Group Ltd.;

       6.     All documents (including electronic mail messages) concerning any
              entity(ies) for which you serve (or served) as an officer, director, or
              controlling shareholder on behalf of LOM, Brian Lines, and/or Scott
              Lines;

       7.     Documents sufficient to identify all securities brokerage accounts in
              your name (jointly or otherwise), or in which you have or had a direct

19

or indirect beneficial interest or over which you exercise or exercised control from January 1, 2002 to present;

8.      All documents concerning the accounts identified pursuant to Item 7 above, including account statements, account opening documents, confirmations for all transactions in the securities of SHEP or Sedona from January 1, 2002 to present;

9.      All documents concerning your trading in the securities of SHEP or Sedona, including trading in the securities of SHEP or Sedona by any entity or person on your behalf, or by any entity over which you exercise or exercised authority or control;

10.     All documents (including electronic mail messages) concerning Brian Lines from January 1, 2002 to present;

11.     All documents (including electronic mail messages) concerning Scott Lines from January 1, 2002 to present.


                        _____ __
                        THE HONORABLE DENISE COTE
                        UNITED STATES DISTRICT JUDGE


DATE:_____

20