```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
SECURITIES AND EXCHANGE COMMISSION,      :
                                         :
                    Plaintiff,           :   07 Civ. 11387 (DLC)
                                         :
          -v-                            :   OPINION & ORDER
                                         :
BRIAN N. LINES, SCOTT G.S. LINES, LOM    :
(HOLDINGS) LTD., LINES OVERSEAS          :
MANAGEMENT LTD., LOM CAPITAL LTD., LOM   :
SECURITIES (BERMUDA) LTD., LOM           :
SECURITIES (CAYMAN) LTD., LOM            :
SECURITIES (BAHAMAS) LTD., ANTHONY W.    :
WILE, WAYNE E. WILE, ROBERT J. CHAPMAN,  :
WILLIAM TODD PEEVER, PHILLIP JAMES       :
CURTIS, and RYAN G. LEEDS,               :
                                         :
                    Defendants.          :
-----------------------------------------X
```

Appearances:

For Plaintiff:
David Williams
Justin Chretien
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

For Defendant Wayne E. Wew:
Mario Aieta
Michael Delahanty
Jonathan Lawson
230 Park Ave., 11th Floor
New York, NY 10169

DENISE COTE, District Judge:

    Wayne E. Wew ("Wew"), formerly known as Wayne E. Wile, has moved to dismiss this action on the ground that the alternative service effected upon him pursuant to Court Order was improper

and that the Securities and Exchange Commission ("SEC") unreasonably delayed prosecuting its claims against him. The motion is denied.

Background

The events underlying this action occurred between mid-2002 and mid-2003. Between June 2003 and June 2005, Mario Aieta of Satterlee, Stephens, Burke & Burke LLP ("Mr. Aieta") contacted the SEC on Wew's behalf at least eighteen times. Wew appeared before the SEC for a deposition in December 2003. At that time he was using the name Wayne Wile.

On December 19, 2007, the SEC filed this action, bringing securities fraud claims against Wayne Wile and others. In May and June 2008, the SEC and Mr. Aieta corresponded by email; the SEC sought to learn whether Mr. Aieta was currently representing Wayne Wile, was authorized to accept service on his behalf, or could provide current contact information for him. As reflected in their email string, Mr. Aieta refused to say whether he or anyone else was currently representing Wayne Wile and refused to provide contact information for him. As Mr. Aieta explained, "If that means you do not know if Mr. Wile is represented by counsel, then you do not know." Mr. Aieta did answer the second question, however, indicating that he was "not authorized to accept service on behalf of Mr. Wile." It appears that at the time Mr. Aieta refused to say whether he was the defendant's

2

attorney, he was in fact representing Wew, may have known that Wayne Wile had legally changed his name to Wew, and certainly understood that the SEC still believed that the defendant's name was Wayne Wile. Mr. Aieta remains Wew's counsel in this action.

As described in the September 30, 2009 Opinion denying a motion to dismiss brought by a co-defendant, S.E.C. v. Lines, No. 07 Civ. 11387 (DLC), 2009 WL ---- (S.D.N.Y. Sept. 30, 2009), the SEC thereafter made two applications for alternative service. The first application was denied for failure to follow the Hague Service Convention in the Cayman Islands to serve the defendant. S.E.C. v. Lines, No. 07 Civ. 11387 (DLC), Order of July 21, 2008 [CM/ECF Doc. No. 25]. In its application, the SEC reported that the last known addresses for Wayne Wile were two Arizona addresses, but its efforts to serve him there led it to believe that he no longer resided there. Based on documentation "provided to the Commission by another governmental agency, the driver's license currently being used by Defendant Wayne Wile reflects a current address in the Cayman Islands" and the name "Wayne E. WEW." The SEC added that it understood that Wile "uses his initials 'WEW' as an alias last name."

The second application was granted on August 7, 2009. S.E.C. v. Lines, No. 07 Civ. 11387 (DLC), 2009 WL 2431976 (S.D.N.Y. Aug. 7, 2009) ("August 7 Order"). The SEC reported that the Central Authority in the Cayman Islands was not able to

3

locate Wayne Wile "at the address listed on the driver's license Mr. Wile provided to border agents in February 2007". Its application added that "[d]uring 2008, the Commission received several regulatory notices indicating that Wayne Wile was residing in the Cayman Islands."

At the time it made these applications, the SEC believed that Wayne Wile was the defendant's legal name and that he was a Canadian citizen who resided in the Cayman Islands. The August 7 Order permitted alternative service to be made on Wayne Wile by international certified mail to the Cayman Islands address and by email to two accounts: wilewm@yahoo.com and wilewm@aol.com. Wew's motion to dismiss recites that he received service at the Cayman Islands address and by email on August 13, 2009.[1]

Wew explains that he is a citizen of Canada and admits that he has legal status as a resident of the Cayman Islands, but explains that he sold his residence at 53 Nelson Quay WB in 2005. He asserts he stopped using the post office box for that address in March 2009. Wew changed his last name from Wile to Wew on January 12, 2005 in Nova Scotia, Canada, in order to avoid being stopped and questioned by border guards each time he attempted to enter the United States using the name Wayne Wile;

---

[1] In his reply, Wew describes this statement as a "typographical error", but does not explain what word or letter was typed in error.

4

Wew's wife is a United States citizen and Wew was frequently attempting to travel to the United States during this time frame. Despite his change of name, on February 17, 2007, border guards again denied him entry and took and inspected his personal address book. Wew speculates that the guards may also have copied it.² Wew obtained two residence permits from Switzerland on June 19, 2007, and June 26, 2009, for the Cantons of Appenzell-Ausserhoden and Ticino, respectively. He currently lives in Switzerland.

In September 2009, when it was served with this motion to dismiss, the SEC learned for the first time that Wile had formally changed his name to Wew and was living in Switzerland. Wew contends that a Google search for "Wayne Wile" after October 14, 2006, could have led the SEC to find Wew in Switzerland. It points to a September 19, 2009 search for "Wayne Wile," which found an October 14, 2006 news story from the Vancouver Sun, a Canadian newspaper, about a charity event. At the end of the article entitled "New doorman opened his own doors," Wayne Wile is described as bidding on fiberglass spirit bears, including a bid of $50,000 for one bear, because of a personal tragedy. It lists the beneficiaries of the event as the B.C. Lions Society's

---

² It appears that the border agents at the very least took Wew's information from his driver's license, since that appears to be the source from which the SEC learned that Wew had a Cayman Islands address.

Easter Seals operations and the Canucks For Kids Fund. Wew's counsel argues that a charitable organization obtaining "a substantial pledge from a donor must have information about the whereabouts of that donor," and that "an industrious plaintiff" could have used the information in this article to serve Wew in Switzerland.

Wew filed this motion to dismiss on September 2, 2009. It became fully briefed on September 25.

Discussion

Wew first moves to dismiss this action for the SEC's unreasonable failure to prosecute its claims against him. He largely relies on arguments made by co-defendant Anthony Wile that were recently rejected. See Lines, 07 Civ. 11387 (DLC), 2009 WL ---- (S.D.N.Y. Sept. 30, 2009). The additional arguments Wew makes do not suggest that his motion should fare any better.

Wew argues, for instance, that a web search for "Wayne Wile" should have led to the SEC locating Wew in Switzerland. Assuming that the 2006 article was posted on the web during the relevant time period, the reader would have learned that a man named Wayne Wile had attended a charity event in Canada. Since the SEC knew the defendant to be a Canadian citizen, there is nothing in that report about his appearance at that event that would have immediately alerted the SEC to the fact that Wayne

6

Wile had moved his residence from the Cayman Islands to Switzerland, or that he had legally changed his name to Wew and was now living in Switzerland under that new name.  Wew argues that the SEC was not "industrious" in searching for him because it did not contact "a charitable organization obtaining a substantial pledge from a donor" to obtain "information about the whereabouts of that donor."  The SEC had no burden to do as Wew suggests in order to demonstrate its diligence.[3]

    Wew also suggests that the SEC was not diligent because it did not contact any persons listed in Wew's address book, which border agents inspected and "may" have copied when he was denied entry into the United States on February 17, 2007.  This argument is no more persuasive than the last.  Wew does not assert that the border agents did copy and retain that address book.  Moreover, Wew has not submitted a copy of the address book and explained how contacting persons listed in it would have disclosed Wew's new residence in Switzerland.  The SEC had an obligation to use reasonable diligence to locate Wew, and Wew has not shown that it failed to do so.  In sum, none of Wew's

---

[3] Of course, the article identifies two charities benefited by the fund-raising event.  It is not clear that either of them, as opposed to some other event sponsor, would have information about donors.  The two listed charities are both foreign entities, and it is doubtful that they would disclose donor information without resort to court processes.  Wew does not assert that he in fact provided any identifying information to either charity, much less describe that information.

7

arguments suggest that the claims in this action should be dismissed for the SEC's failure to prosecute them.

Wew next argues that the SEC was required to pursue the Hague Convention processes and serve him in Switzerland. He contends that the alternative service allowed by Court Order was ineffective since Switzerland has specifically objected to Article 10 service by mail, and since the service of process in the Cayman Islands was left at an address that "had not been [his] for months."

Wew's argument that the SEC was required to serve him in Switzerland through resort to the Hague Convention processes can be swiftly rejected. First, the SEC did not know Wew was residing in Switzerland. This Court required the SEC to exhaust Convention processes for each defendant in this action based on its best current understanding of the country of residence. It did so. No more is required. As Article I of the Hague Convention quite understandably recognizes, it "shall not apply where the address of the person to be served with the document is not known." Convention done at the Hague, November 15 1965, 20 U.S.T. 361 (U.S.T. 1969); see also U.S. Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd., No. 07 Civ. 3598 (BMM), 2008 WL 4299771, *4 (N.D. Ill. Sept. 17, 2008); Bortolus v. Magical Cruise Co., Ltd., No. 07 Civ. 1864 (GKS), 2008 WL 2595105, *3 (M.D. Fla. 2008) ("If a plaintiff does not

8

know the address or location of the foreign defendant he or she wishes to serve, then the Hague Convention does not apply."); BP Prods. N. Am., Inc. v. Dagra, 232 F.R.D. 263, 264 (E.D. Va. 2005) ("[T]he Hague Convention contains an explicit exemption where the address of the foreign party to be served is unknown."); Popular Enters., LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 562 (E.D. Tenn. 2004) ("Since defendant's address is not known, the Hague Convention does not apply.").

Wew protests that, despite the Convention's exemption for instances when the address of the person to be served is unknown, the Convention still applies where plaintiffs "simply do not bother to make diligent efforts to learn of a defendant's address."  Here, however, the SEC did "bother to make diligent efforts."  Despite its diligence, it is undisputed that the SEC did not know that Wew had legally changed his name or that he resided in Switzerland.  Finally, Wew makes the curious argument that the Hague Convention exemption for unknown addresses does not apply since the SEC did "know" Wew's address because it knew of his two email addresses.[4]  As Wew acknowledges in the course of other arguments that he presses, a person may access their email account from any location in the world that provides them

---

[4] This argument conflicts with Wew's separate contention that those email addresses belonged to his wife and not to him.

9

access to the web. Having a defendant's email address does not disclose that person's current residence.

In sum, this Court required the SEC to respect fully the mandates of the Hague Convention. Based on the best available information in the SEC's possession, obtained after a diligent search of Wayne Wile, this resulted in an effort to serve the defendant through Hague Convention procedures in the Cayman Islands, which had in fact once been Wew's residence and was an address through which he continued to receive mail into 2009. No more is required to give full recognition to the international service convention. Moreover, having chosen not to inform the SEC when it inquired that the defendant had legally changed his name and moved to Switzerland, it ill behooves Wew and his counsel to suggest that the SEC invoked the Hague Convention procedures in the wrong country.

Finally, Wew contends that service solely by email violates his due process rights, at least where the SEC did not represent to this Court in its application for alternative service that Wew was known to respond to email sent to those email addresses. The SEC did not violate Wew's due process rights. "[I]n the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." Mullane v. Cent. Hanover Bank

10

& Trust Co., 339 U.S. 306, 317 (1950); accord S.E.C. v. Tome, 833 F.2d 1086, 1094 (2d Cir. 1987). Moreover, Wew received actual notice of this lawsuit. The SEC diligently pursued the information it could reasonably obtain to locate Wayne Wile and to provide him "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. 306, 314 (1950); accord Miner v. Clinton County, N.Y., 541 F.3d 464, 471 (2d Cir. 2008). No more is required. After all, service is not intended to be a cat and mouse game. Wew knew from at least May 2008 that the SEC was trying to serve him. He chose to stonewall those efforts. Despite that stonewalling, the SEC succeeded in serving him in full compliance with the dictates of the law. Wew has no valid ground to complain now that that service was not lawfully effected.

Conclusion

Defendant Wayne E. Wew's September 2, 2009 motion to dismiss this case is denied.

SO ORDERED:

Dated:   New York, New York
         October 2, 2009

_____
DENISE COTE
United States District Judge

11