UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
SECURITIES AND EXCHANGE COMMISSION          :
                                            :
                        Plaintiff,          :
                                            :
            v.                              :   Case No: 07-CV-11387 (DC)
                                            :
BRIAN N. LINES, et al.,                     :
                                            :
                        Defendants.         :
------------------------------------------------------------------ x

DEFENDANT WAYNE E. WEW'S RULE 56.1 STATEMENT
OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT

Defendant Wayne E. Wew (who was sued in this action under his former name, Wayne E. Wile), submits this statement of undisputed material facts pursuant to Local Rule 56.1 in support of his motion for summary judgment on the claims asserted against him by the Securities and Exchange Commission ("SEC").

1. Wew incorporates herein by reference the Lines Defendants' Rule 56.1 Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment. See 56.1 Statement of Undisputed Material Facts submitted by the Lines Defendants and dated January 25, 2010.

2. Wew, formerly know as Wayne E. Wile, is a Canadian citizen and a resident of Swizerland. Wew Declaration ¶¶ 1-2.

3. Wew is day trader. He has pursued that occupation since the mid-1980s. Wew Declaration ¶ 6 and Exhibit A at p. 95, lines 14-25 and 96, lines 1-9.

793313_1

4. In 2003, Wew often traded through a company called Industrias Balmes, which he owned and used it for day trading since approximately 2001. Wew Declaration ¶ 4 and Exhibit A p. 67, lines 20-22.

5. Wew did not know where his orders for SSSI would be routed, how they would be filed, or who would be on the other side of those trades. See Wew Declaration ¶ 10 and Exhibit C attached thereto.

6. Wew used a trading technique sometimes referred to as "streaming." See Wew Declaration ¶ 6 and Exhibit A at p. 95, lines 14-25 and 96, lines 1-9. He watched the stream of orders for a particular security throughout the day and based on his experience and knowledge of trading patterns, attempted to buy low and sell high during the daily price fluctuations of that security. See id. Exhibit A at p. 96, lines 13-16. Wew did not intend to hold on to the securities he acquired past the end of the trading day. See id. Exhibit A p. 97, lines 12-13.

7. Wew purchased SSSI on January 21, 2003, because it was a new issue from a junior mining company. See Wew Declaration ¶ 7 and Exhibit A at p. 106, lines 18-22. He was not looking for a long term investment. See Wew Declaration Exhibit A p. 97, lines 15-18. He was only interested in day trading SSSI and making a profit on those trades. See id.

8. Wew placed a bid for SSSI on January 21, 2003 at a price of $8.25. See Wew Declaration Exhibit A at p. 99, line 25 to p. 100, lines 1-20; Wew Declaration Exhibit B. He determined to place a bid at that price based on his review of the "bid" and "ask" prices posted by market makers in SSSI prior to the opening of trading on January 21, 2003. See Wew Declaration Exhibit A (Wew's Deposition) at p. 101, lines 1-25. Wew was aware of the bid and ask prices posted by market makers because he saw those prices on his "Stockwatch"

1

screen prior to the opening of the market. See Wew Declaration Exhibit A at p. 100, lines 21-25.

9. Wew "topped" the bid, bidding $8.25 for SSSI when the posted bid for the stock was $8.00, so that he would be "first in line" and his order for SSSI would be filled that morning. Wew Declaration Exhibit A at p. 100, lines 6-20.

10. Wew sold his position later in the day of a profit of approximately $5400. Wew Declaration Exhibit A p. 97, lines 15-18; Wew Declaration Exhibit B.

11. On January 22, 2003, Wew again purchased SSSI as a day trade. He attempted to sell his position during the course of the day but his offer price was too high and his sell order was not filled. He sold his position the next day at a modest profit. Wew Declaration ¶ 9; Wew Declaration Exhibit B.

12. Wew never knew and had no control over the market maker to which his orders for SSSI were routed, how those orders would be filled, or who would be on the other side of the resulting trades. Wew Declaration ¶ 10 and Exhibit A at p. 101.

13. There was nothing unusual about the trades that Wew made on January 21, 2003, and nothing unusual about the type of trading he did that day, that week, or that month. Wew Declaration ¶ 11 and Exhibit A at p. 107, lines 12-13.

14. Wew was in the habit of speaking to his nephew Anthony Wile on a regular basis, often many times a day. On days when Anthony Wile was particularly excited about something he called his uncle Wayne Wew many times a day. Wew Declaration ¶ 12 and Exhibit A at p. 99, lines 2-10.

15. Wew never discussed with Anthony Wile his decision to purchase SSSI or the prices at which he would bid for or offer to sell SSSI. Wew Declaration ¶ 13 and Exhibit A at p. 80-82.

793313_1

16. Wew never spoke to or communicated with Brian Lines, Scott Lines, or any employee of the LOM companies about Renaissance, Sedona, or SSSI.  Wew Declaration ¶ 14 and Exhibit A at p. 78-80, 94-95.

17. Wew never participated in nor was he aware of any effort by anyone to "manipulate" the price of SSSI.  Wew Declaration ¶ 15 and Exhibit A at p. 107, lines 5-8.

Dated: January 25, 2010

                                                 Respectfully submitted,

                                                 _____/s/ Mario Aieta_____
                                                 Mario Aieta
                                                 Satterlee, Stephens, Burke & Burke LLP
                                                 230 Park Avenue, 11th Floor
                                                 New York, NY  10169
                                                 (212) 818-9200

                                                 *Attorneys for Defendant Wayne E. Wew*