UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>BRIAN N. LINES, ET AL.,<br><br>                            Defendants. | C.A. No. 07-CV-11387<br>(DLC) |

PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
STATEMENT OF DISPUTED FACTS IN RESPONSE TO DEFENDANT
WAYNE WEW'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS AND
STATEMENT OF ADDITIONAL MATERIAL FACTS IN DISPUTE

1. Wew incorporates by reference the Lines' Defendants' Rule 56.1 Statement of Undisputed Facts. The Commission incorporates by reference its response thereto.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. **Disputed** to the extent it is intended to apply to his purchase of Sedona (SSSI) on January 21, 2003. Wew did not employ a "streaming" technique for that purchase, as he did not buy SSSI after watching a "stream of orders for a particular security throughout the day." *Wew's Rule 56.1 Statement*, no. 6. SSSI, instead, was a "new issue" for a previously dormant company. Ex. A, *Wew Depo. Transcr.*. pp. 82:20-83:2; 98:2-7.

Further, Wew purchased SSSI *before* the market opened on January 21, 2003. Ex. A, pp. 77:25-78:3.

7. **Disputed.** Wew purchased SSSI as a participant in the scheme, not because it was "a new issue from a junior mining company." *Wew Rule 56.1 Statement*, no. 7. Wew learned of the scheme through "numerous" telephone calls with his nephew, Tony Wile, prior to the purchase, Ex. A, pp. 75:6-77:4, and indicated he wished to participate, as evidenced in a January 20, 2003 telephone call between Wile and Brian Lines, in which Wile tells Lines that Wew, his uncle, wished to participate:

> Mr. Lines: Well, at the beginning of the game, the game is to actually go to bid the stock, right?
> Mr. Wile: Is to what?
> Mr. Lines: Go ahead and bid some stock.
> Mr. Wile: Oh, I would think so.
> Mr. Lines: Yeah.
> Mr. Wile: Because, you know, who's going to combat it? I think there should be some good bids in there at, you know, eight, nine, ten. And these guys are going to reach over the top of that in a second. I mean, even my uncle called me and said, "Look. I'd like to buy 100 here at 10 or 12. Will you do it?" I said no.

Ex. B, *Transcr. of Telephone Recording BL_20030120c*, pp. 43-44. The recording indicates that Wile wanted to open bidding at $8, $9, or $10 a share and that he declined Wew's offer to bid at $10 or $12 a share. The next morning, before trading opened, and immediately after a telephone call with Wile, Wew placed his bid at $8.25 per share, Ex. A, p. 77:5-10, precisely within the range Wile had suggested to Lines, implying that Wew's bid price was made in collusion with Wile.

Further indicia of Wew's participation in the scheme include his use of a Costa Rican nominee account – Industrias Balmez – at Canaccord, which account he admits he controlled, to place his bid, Ex. A, pp. 44:5-45:8; 46:15-47:5; 62:15-18; 84:1-5; the sheer

2

size of his bid, at 5000 shares, *id.*, pp.; that he used a nominee account to do it; 79:25-80:3, and that he made the purchase without any information about SSSI other than what Wile told him. *Id.*, pp. 76:20-77:4.

8. **Disputed.** Wew placed his bid as a participant in the scheme in the price range Tony Wile had suggested, not simply because of the prices posted by market makers. See 7 above.

9. **Disputed.** Wew placed his bid as a participant in the scheme in the price range Tony Wile had suggested, not simply because of the prices posted by market makers. See 7 above.

10. Undisputed.

11. Undisputed.

12. Undisputed.

13. **Disputed.** On that day Wew placed his bid as a participant in the scheme in the price range Tony Wile had suggested. See 7 above.

14. Undisputed.

15. **Disputed.** Wew placed his bid as a participant in the scheme in the price range Tony Wile had suggested, not simply because of the prices posted by market makers. See 7 above.

16. Undisputed.

17. **Disputed.** See 7 above.

## **PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN DISPUTE**

1. **Disputed:** Wew knew of, and participated in, the scheme to manipulate the share price of SSSI. This inference is based upon the following undisputed evidence:

(a). Plaintiff's 56.1 Statement, incorporated herein by reference.

(b). Wew was very close to his nephew, Tony Wile, and spoke to him often: "We speak quite often on personal – personal things. I mean, we have had many conversations" (Ex. A, pp. 68:5-8);

(c). Wew admits he learned of the offering of SSSI from numerous telephone calls with Wile in the days prior to the January 21, 2003 offering (Ex. A, pp. 75:6-77:4);

(d). Wew does not dispute that the number of phone calls between him and Wile reached a peak the day of the offering (Ex. A, pp. 74:11-75:.1);

(e). The day before the offering, Wile and Brian Lines had the following recorded conversation, in which Wile indicates he wants to open bidding at $8, $9, or $10 a share, that Wew wanted to buy 100 shares at $10 to $12 a share, and that he declined Wew's offer:

> Mr. Lines: Well, at the beginning of the game, the game is to actually go to bid the stock, right?
> Mr. Wile: Is to what?
> Mr. Lines: Go ahead and bid some stock.
> Mr. Wile: Oh, I would think so.
> Mr. Lines: Yeah.
> Mr. Wile: Because, you know, who's going to combat it? I think there should be some good bids in there at, you know, eight, nine, ten. And these guys are going to reach over the top of that in a second. I mean, ***even my uncle called me and said, "Look. I'd like to buy 100 here at 10 or 12. Will you do it?" I said no.***

Ex. B, *Transcr. of Telephone Recording BL_20030120c*, pp. 43-44 (emphasis added).

4

(f). Wew submitted a bid just minutes before trading opened on January 21, 2003 to buy 5,000 shares at $8.25 a share immediately after receiving a telephone call from Wile, and precisely within the range Wile had suggested to Brian Lines. Ex. A, p. 77:5-78:11.

(g). Wew used a Costa Rican nominee account – Industrias Balmez – at Canaccord, which account he admits he controlled, to place his bid. Ex. A, pp. 44:5-45:8; 46:15-47:5; 62:15-18; 84:1-5.

(h). Wew's bid was for *5,000* shares. Ex. A, pp. 79:25-80:3.

(i). Wew made the bid without any information about SSSI other than what Wile told him. Ex. A, pp. 76:20-77:4.

(j) Wew changed his name from Wayne Wile to Wayne Wew after the investigation commenced to avoid being stopped at the border coming into the United States. Ex. A, pp. 8:22-9:3.

Dated: March 5, 2010

Respectfully submitted,

*/s/ Justin Chretien*
Justin Chretien (Pro hac vice)
Assistant Chief Litigation Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4010
(202) 551-4953
COUNSEL FOR PLAINTIFF