*Foreign Marathon News-Trak Fund.*

# RENAISSANCE MINING CORP.
## Subscription Agreement

I/We ("Subscriber") hereby subscribe for 300,000 shares of $.0001 par value common shares (the "Shares") of **RENAISSANCE MINING CORP.** (the "Company") at a cost of $.15 per share for a total cost of $45,000.

The purchase price is payable on or before October 25th, 2002 unless extended by the Company.

The undersigned understands that a subscription for the Shares may be rejected for any reason and that in the event that this subscription is rejected, the funds delivered herewith will be promptly returned without interest thereon or deduction. By executing below, the undersigned acknowledges that the Company is relying upon the accuracy and completeness of the representations contained herein in order to comply with their obligations under applicable securities law.

The undersigned acknowledges, represents and warrants as follows:

(a) The undersigned is: (i) an accredited investor (as defined in the Securities Act of 1933, as amended (the "Act")); (ii) in a financial position to hold the Shares for an indefinite period of time; and (iii) able to bear the economic risk and withstand a complete loss of the undersigned's investment in the securities;

(b) The undersigned, has such knowledge and experience in financial and business matters that the undersigned is capable of evaluating the merits and risks of an investment in the Shares and has the net worth to undertake such risks;

(c) The undersigned is a "U.S. Person" (as defined in Regulation S promulgated under the Securities Act), and has received and accepted the offer to purchase Shares in the U.S., and the undersigned maintains its residence as shown below and such residence is not merely a temporary or transient residence.

(d) The undersigned has obtained to the extent deemed necessary, the undersigned's own personal professional advice with respect to the risks inherent in an investment in the Company and the Shares, and the suitability of an investment in the Shares in light of the undersigned's financial condition and investment needs;

(e) The undersigned represents that the Shares were not offered or sold to the undersigned by means of any form of general solicitation or general advertising, and in connection therewith the undersigned did not (i) receive or review any advertisement, article, notice or other communication published in a newspaper, magazine or similar media or broadcast over television or radio, whether closed circuit or generally available, or (ii) attend any seminar meeting or industry investor conference whose attendees were invited by any general solicitation or general advertising.

(f)  The undersigned believes that an investment in the Shares is suitable for the undersigned based upon the undersigned's investment objectives and financial needs, and the undersigned has adequate means for providing for the undersigned's current financial needs and personal contingencies and has no need for liquidity of investments with respect to the Shares;

(g)  The undersigned has been given reasonable opportunity to ask questions of, and receive answers from, representatives of the Company concerning the terms and conditions of the offering of the Shares, the operations and financial condition of the Company, and to obtain any additional information to the extent reasonably available;

(h)  The undersigned recognizes that the Company is a newly formed, start up enterprise with no revenues to date, and that an investment in the Shares involves a high degree of risk for these and other reasons;

(i)  The undersigned understands that the Shares have not been registered under the Securities Act and that the undersigned will not be permitted to sell or otherwise transfer the Shares unless: (i) the Shares are registered under the Act; or (ii) the undersigned provides an opinion of counsel satisfactory to the Company that an exemption from such registration is available.

(j)  The undersigned realizes that there is presently no public market for the Shares, that no such market may ever develop and the undersigned may be unable to liquidate the undersigned's investment in the event of an emergency, or pledge the securities as collateral for a loan.

(k)  No federal or state agency has made any finding or determination as to the suitability of the Shares for public investment, and no such agency has made any recommendation or endorsement of the securities offered herein.

(l)  The undersigned is acquiring the Shares for the undersigned's own account and for investment purposes only, and not for the account of others or with a view to distribution. If contrary to the foregoing intentions, the undersigned should later desire to dispose of or transfer the Shares in any manner, the undersigned shall not do so without first obtaining the opinion of Company counsel that such disposition or transfer may be lawfully made without the registration of the Shares pursuant to the Act and applicable state securities laws.

(m)  The undersigned understands that the Company upon issuance of the Shares may place such appropriate restrictive legend on the share certificate as the Company deems necessary.

(n)  The undersigned recognizes that an investment in the Company involves certain risks, and the undersigned understands all of the risk factors related to the purchase of these Shares as described in the Private Placement Memorandum of the Company, dated as of October 2nd, 2002 (the "PPM").

(o)  The Company has made available to the undersigned all documents relating to an investment in the Shares that have been requested and that the Company

HBC-781

SEC009229

has responded to all of the undersigned's questions in a satisfactory manner. In evaluating the suitability of this investment and in determining the merits and risks of such an investment, the undersigned has not relied on any representation or other information (whether oral or written) other than as set forth in the PPM provided by the Company.

(p)   The undersigned represents that it has full power and authority (corporate, statutory and otherwise) to execute and deliver this Agreement and to acquire the Shares. This Agreement constitutes the legal, valid and binding obligation of the undersigned, enforceable against the undersigned in accordance with its terms, subject to laws of general application relating to bankruptcy, insolvency and the relief of debtors.

(q)   No consent, approval, authorization, order, registration or qualification of or with any court or federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the undersigned or any of its properties is required for the purchase of the Shares.

This Subscription Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, other than such laws, rules, regulations and case law that would result in the application of the laws of a jurisdiction other than the State of Delaware. Jurisdiction for any disputes shall be in Denver County, State of Colorado. In the event of any litigation, the prevailing party shall be entitled to recover all costs, including reasonable attorneys' fees, including those that may be incurred on appeal. Faxed versions of this Subscription Agreement and photocopies hereof shall be deemed originals.

The representations and warranties herein are made with the intent that they be relied upon by the Company. The undersigned hereby agrees that such representations, warranties and any agreements, undertakings, and acknowledgments herein shall survive the purchase of the Shares, and shall indemnify the Company, its officers and directors and hold them harmless from any and all loss, damage, liability or expense that they may incur by reason of or in connection with: (i) any misrepresentation or breach of representation, warranty or covenant herein; (ii) any sale or distribution by the undersigned in violation of the Securities Act or any applicable state securities or blue sky laws; or (iii) any untrue statement of a material fact made by the undersigned and contained herein.

3

HBC-782

SEC009230

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement as of the 23rd day of September, 2002.

Printed Name of Subscriber(s):     Marathon Industrial Fund Inc.

Signature of Subscriber

*/s/ Wile/*

Names(s) in which securities
are to be registered:              Marathon Industrial Fund Inc.

Registered Address:                Suite 61 Grosvenor Close
                                   Shirley Street
                                   Nassau, Bahamas

Telephone Number:                  242-322-3997

Taxpayer Identification No.:       _____

Check if:            ____ Joint Tenants    ____ Tenants in Common

**ACCEPTANCE**

This Subscription Agreement, in the name(s) of Marathon Industrial Fund Inc. for 300,000 Shares at a cost of $45,000 is hereby accepted by the Company as of the 16 day of October, 2002.

RENAISSANCE MINING CORP.

By: _____
    Anthony W. Wile, Chairman

HBC-783

4

SEC009231

## Definition of Accredited Investor

An "accredited investor" includes a person or entity falling within any one of the following categories:

An individual having a net worth with spouse (excluding automobiles, principal residence and furnishings) at the time of purchase, individually or jointly, in excess of $1,000,000.

- An individual whose individual income was in excess of $200,000 in each of the two most recent years, or whose joint income with spouse was in excess of $300,000 in each of those years, and who reasonably expects his individual income to reach such level in the current year.

- A corporation, partnership, Massachusetts or similar business trust, or organization described in Section 501(c)(3) of the Internal Revenue Code (tax exempt organization), not formed for the specific purpose of acquiring the Shares, having total assets in excess of $5,000,000.

- A bank, savings and loan association or other similar institution (as defined in Sections 3(a)(2) and (3)(5)(A) of the Securities Act).

- An insurance partnership (as defined in Section 2(13) of the Securities Act).

- An investment company registered under the Investment Company Act of 1940.

- A business development partnership (as defined in Section 2(a)(48) of the Investment Advisors Act of 1940).

- A Small Business Investment Partnership licensed by the U.S. Small Business Administration under Sections 301(c) or (d) of the Small Business Investment Act of 1958.

- A broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended.

- A plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, which plan has total assets in excess of $5,000,000.

- An employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, if the investment decision is made by a "Plan Fiduciary", as defined in Section 3(21) of such Act, which is either a bank, savings and loan association, insurance company or registered investment adviser.

- An employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 having total assets in excess of $5,000,000.

HBC-784

SEC009232