UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:07-CV-11387 |
| | ) |
| BRIAN N. LINES, et al., | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF ROBERT W. NESBITT IN SUPPORT OF
PLAINTIFF SEC'S MOTION FOR SUPPLEMENTAL ORDERS IMPOSING
DISGORGEMENT, PREJUDGMENT INTEREST AND CIVIL PENALTIES
AGAINST DEFENDANTS PHILIP JAMES CURTIS, WILLIAM TODD
PEEVER AND ROBERT J. CHAPMAN**

ROBERT W. NESBITT declares the following under penalty of perjury pursuant

to 28 U.S.C. § 1746:

### I.      Introduction

1.      I am a Market Surveillance Specialist in the Office of Market

Surveillance, Division of Enforcement, of the United States Securities and Exchange

Commission (the "SEC" or the "Commission"). I make this Declaration in Support of

Plaintiff SEC's Motion for Supplemental Orders Imposing Disgorgement, Prejudgment

Interest and Civil Penalties Against Defendants Philip James Curtis, William Todd

Peever and Robert J. Chapman.

### II.      Procedural History of This Action

2.      The Commission filed its Complaint in this action of December 19, 2007

(D.N. 1) alleging, *inter alia*, that Philip James Curtis ("Curtis") and William Todd Peever

("Peever") violated: (a) the antifraud provisions of Section 10(b) of the Securities

Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder,

17 C.F.R. § 240.10b-5; (b) the registration provisions of Section 5 of the Securities Act of

1933 ("Securities Act"), 15 U.S.C. § 77e; and the antifraud provisions of Section 17(a) of

the Securities Act, 15 U.S.C. 77q(a).  In the same Complaint, the Commission alleged

that Robert J. Chapman ("Chapman") also violated the antifraud provisions of Section

10(b) of the Exchange Act and Rule 10b-5 thereunder.

        3.      The Court entered a partial consent judgment against Curtis on August 25,

2008.  (D.N. 33).  The judgment enjoined Curtis from further violations of the federal

securities laws and barred him from participating in the offering of any penny stock.  The

judgment further provided that Curtis "shall pay disgorgement of ill-gotten gains,

prejudgment interest thereon, and a civil penalty..." and that "[t]he Court shall determine

the amounts of disgorgement and civil penalty upon motion of the Commission."  The

Commission's motion to have the Court determine these amounts as to Curtis is pending.

Curtis agreed in the judgment that: "(a) [he would] be precluded from arguing that he did

not violate the federal securities laws as alleged in the Complaint; (b) [he would] not

challenge the validity of this Judgment or the Consent; [and] c) solely for purposes of

[the pending motion regarding monetary relief], the allegations of the Complaint shall be

accepted as and deemed true by the Court...."

        4.      The Court also entered a partial consent judgment against Peever on

August 25, 2008.  (D.N. 34).  The judgment enjoined Peever from further violations of

the federal securities laws and barred him from participating in the offering of any penny

stock.  The judgment further provided that Peever "shall pay disgorgement of ill-gotten

gains, prejudgment interest thereon, and a civil penalty..." and that "[t]he Court shall

determine the amounts of disgorgement and civil penalty upon motion of the
Commission." The Commission's motion to have the Court determine these amounts as
to Peever also is pending. Peever agreed in the judgment that: "(a) [he would] be
precluded from arguing that he did not violate the federal securities laws as alleged in the
Complaint; (b) [he would] not challenge the validity of this Judgment or the Consent;
[and] c) solely for purposes of [the pending motion regarding monetary relief], the
allegations of the Complaint shall be accepted as and deemed true by the Court...."

     5.     The Court entered default judgment against Chapman on June 18, 2010.
(D.N. 193). The Chapman judgment granted the Commission injunctive relief and
provided that "[t]he Commission may seek leave to request a supplemental order: (i)
requiring Defendant to disgorge an amount equal to the funds and benefits he obtained
illegally as a result of the violations adjudged herein, plus prejudgment interest on that
amount; [and] (ii) requiring Defendant to pay civil monetary penalties...." To my
knowledge, there was no evidence adduced during the Commission's investigation that
Chapman received any proceeds from the sale of stock in the scheme he was involved in
here. As a result, the Commission is not seeking to recover disgorgement amounts and
prejudgment interest from Chapman in this motion. My declaration deals exclusively
with determining disgorgement and other monetary relief due from Curtis and Peever.

### III.    Disgorgement Calculations

     6.     I have reviewed records obtained by the Commission in the course of its
investigation from various broker-dealers where Curtis and Peever maintained accounts
and conducted trading in Shep Technologies, Inc. f/k/a Inside Holdings, Inc. ("SHEP")
and from other third parties. These materials include:

A.      Account records and monthly statements from Canaccord Capital

Corporation ("Canaccord"), Haywood Securities, Inc. ("Haywood"), LOM

Securities (Bahamas) Ltd. ("LOM Bahamas"), and LOM Securities (Cayman)

Ltd. ("LOM Cayman");

B.      SHEP trade blotter provided by Lines Overseas Management Ltd.

("LOM") (Bates Nos. LOM 002090 through LOM 002096, attached as Exhibit 1);

C.      Audit Trail Report provided by NASD, for the period April 1,

2002 through December 31, 2002 (Bates Nos. SEC 211341 through SEC 211376,

attached as Exhibit 2);

D.      Trade Inquiry Report, provided electronically by FINRA for the

period 9/1/02 to 7/31/03.

Curtis Disgorgement Calculation

7.      I calculated the amount of illegal profits obtained by Defendant Curtis as a

result of his sales of SHEP common stock during the period August 29, 2002 through

June 10, 2003.  For this profit calculation, I reviewed the monthly statements from the

brokerage accounts listed above through which Curtis transacted in SHEP stock during

the above-referenced time period.

8.      Canaccord maintained account number ***-784 in the name of Curtis.

Attached hereto are the following documents relating to account number ***-784:

A.      Exhibit 3 (Bates Nos. SEC 045202 – SEC 045213): Account

opening forms dated January 17, 2003 for account no. ***-784;

4

      B.      Exhibit 4 (Bates Nos. SEC044471 through SEC044482):  Monthly statements for account number \*\*\*-784 for the period February 1, 2003 through February 29, 2004.

      9.      Haywood maintained account number \*\*\*-0902 in the name of the Curtis Family Trust.  Curtis was the authorized trustee for the Trust.  Attached hereto are the following documents relating to account number \*\*\*-0902:

      A.      Exhibit 5 (Bates Nos. SEC043867 through SEC043887): Account opening forms dated February 1, 2000 for account no. \*\*\*-0902;

      B.      Exhibit 6 (Bates Nos. SEC046131 through SEC046208):  Monthly statements for account number \*\*\*-0902 for the period January 1, 2002 through July 31, 2003.

      10.      LOM Cayman maintained account number \*\*\*-0045 in the name of Nomad Trading Ltd. ("Nomad").  Curtis was the authorized signatory for Nomad. Attached hereto are the following documents relating to account number \*\*\*-0045:

      A.      Exhibit 7 (Bates Nos. SEC050462 through SEC050469 ): Account opening forms dated November 9, 1999 for account no. \*\*\*-0045;

      B.      Exhibit 8 (Bates Nos. LOM-SDNY-004050 through LOM-SDNY-004062):  Monthly statements for account number \*\*\*-0045 for the period December 1, 2001 through August 31, 2009.

      11.      LOM Bahamas maintained account number \*\*\*-0015 in the name of Coral House Ltd "A" ("Coral House").  Curtis was the authorized signatory for Coral House.  Attached hereto are the following documents relating to account number \*\*\*-0015:

A.      Exhibit 9 (Bates Nos. SEC052869 through SEC052892): Account

opening forms dated November 14, 2002 for account no. ***-0015;

B.      Exhibit 10 (Bates Nos. LOM-SDNY-004122 through LOM-

SDNY-004141):  Monthly statements for account number ***-0015 for the period

December 1, 2001 through August 31, 2009.

12.     From my review of the above documents, I prepared the spreadsheet

attached as Exhibit 11.  As detailed on the Curtis disgorgement schedule in that exhibit,

accounts controlled by Curtis at Canaccord, Haywood, and LOM sold a total of

1,638,450 shares of SHEP and obtained proceeds of $1,636,503.28 during the period of

August 29, 2002 and June 10, 2003, as follows:

| Account | Shares Sold | Proceeds Received |
|---|---|---|
| **3784 - Canaccord | 71,000 | $109,111.07 |
| ***0902 - Haywood | 355,000 | $306,036.21 |
| ***0045 - LOM | 170,000 | $185,475.00 |
| ***0015 - LOM | 1,042,450 | $1,035,881.00 |
| Total | 1,638,450 | $1,636,503.28 |
| Less cost basis of 1,638,450 shares at $0.048 per share | | $78,645.60 |
| Pre-Interest Disgorgement | | $1,557,857.68 |

Calculation of Cost Basis for Curtis SHEP Shares

13.     I also calculated the cost basis for the SHEP shares that Curtis traded in

the above-referenced accounts.

14.     From my review of the above documents, I prepared a spreadsheet

detailing the cost basis for each of the Curtis accounts, which is attached as Exhibit 12.

15.     I determined the cost basis for the SHEP shares Curtis held in his

Canaccord account by reviewing the purchases of SHEP that were made in his Canaccord

account between January 1, 2002 and June 10, 2003.  There were 21,000 shares

6

purchased in the account for a total of $28,562. There also were 50,000 shares deposited in the account on February 5, 2003, but there is no evidence that Curtis paid any monies for those shares. As a result, I have assigned a $0 cost basis to those shares.

16.     I determined the cost basis for the SHEP shares Curtis held in the Haywood account for the Curtis Family Trust by reviewing the purchases of SHEP that were made in the Canaccord Family Trust account between January 1, 2002 and June 10, 2003. There were 5,000 shares purchased for $4,666. There also were 350,000 shares deposited in the account between May 6, 2002 and January 17, 2003, but there is no evidence that Curtis paid any monies for those shares. As a result, I have assigned a $0 cost basis to those shares.

17.     I determined the cost basis for the SHEP shares Curtis held in the LOM Cayman account for Nomad by reviewing the purchases of SHEP that were made in the account between January 1, 2002 and June 10, 2003. There were 7,700 shares purchased for $8,344.

18.     Additionally, the Nomad account at LOM Cayman had net deposits totaling 2,798,850 shares of SHEP between January 31, 2002 and February 12, 2002.

19.     These shares were purchased as part of a January 8, 2002 agreement involving LOM nominees for both Curtis and Peever (Exhibit 13 -- Bates Nos. SEC-Cangiano-0000503 through SEC-Cangiano-0000528) for a total of 5,597,700 shares of SHEP (then known as Inside Holdings, Inc.). As set forth in the Complaint, the nominees were acting for Curtis and Peever, who provided the monies for the transaction, rather than the nominees. Complaint, ¶¶ 145-153.

7

20.     As described in a January 7, 2002 letter from Dumoulin Black, Barristers & Solicitors (Exhibit 14 – Bates Nos. SEC-Cangiano-0000565 – SEC-Cangiano-0000566), LOM nominees initially purchased these shares for $204,000 pursuant to the January 2002 agreement and 5,197,700 shares were deposited into the Nomad accounts at LOM controlled by Curtis, as well as accounts in the name of Golden Accumulator Ltd. at LOM controlled by Peever. Of that 5,197,700 share total, Curtis received 2,798,850 SHEP shares in his Nomad accounts at LOM. I calculated that $109,849.63 of the SHEP shares' purchase cost was attributable to Curtis based on the 2,798,850 shares that were deposited into Curtis' Nomad account at LOM by dividing the 2,798,850 SHEP shares by the 5,197,700 shares that were deposited in the LOM account and then multiplying by the $204,000 that was paid in the agreement.

21.     An additional 1,500,000 shares of SHEP were deposited in Curtis' Nomad LOM account on April 29, 2002. I calculated a cost basis of $75,000 for those 1,500,000 shares of SHEP by reviewing a Computershare Trust Company of Canada Treasury Order (Exhibit 15 -- Bates Nos. SEC028800 through SEC028804) and a LOM vault enquiry report (Exhibit 16 -- Bates No. SEC051606). The Computershare Trust Company document details a private placement of 3,000,000 SHEP shares that generated $150,000 in proceeds or $0.05 per share. The LOM vault entry shows that the 1.5 million SHEP shares were deposited into the Nomad account controlled by Curtis.

22.     Finally, I reviewed trading in the Coral House Ltd "A" account controlled by Curtis and determined that that account purchased 2,500 shares for $2,625.

23.     As shown in Exhibit 12, accounts controlled by Curtis purchased or deposited 4,735,050 shares of SHEP. Based on my calculations and review above, I

8

determined that the total cost basis for these SHEP shares was $0.048 per share or $229,046.63.

24.    In summary, Curtis sold a total of 1,638,450 shares of SHEP and generated $1,636,503.28 in total proceeds (Exhibit 11). The cost basis for those 1,638,450 shares of SHEP is $78,645.60 based on my cost calculations outlined in Exhibit 12. I calculated that basis by multiplying the 1,638,450 shares by Curtis' cost basis per share of $0.048. As a result, Curtis' total disgorgement would be $1,557,857.68, which was determined by subtracting his cost basis of $78,645.60 from his total sales of $1,636,503.28.

Peever Disgorgement Calculation

25.    I calculated the amount of profits obtained by Defendant Peever as a result of his sales of SHEP common stock during the period September 3, 2002 through June 18, 2003. For this profit calculation, I reviewed the monthly statements for brokerage accounts through which Peever transacted in SHEP stock during the above-referenced time period.

26.    Canaccord maintained account number ***-592 in the name of Peever. Attached hereto are the following documents relating to account number ***-592:

A.    Exhibit 17 (Bates Nos. SEC 045214 – SEC 045221): Account opening forms dated September 28, 2002 for account no. ***-592;

B.    Exhibit 18 (Bates Nos. SEC044513 through SEC044534): Monthly statements for account number ***-592 for the period October 1, 2002 through March 31, 2003.

9

27.     LOM Cayman maintained account number ***-0058 in the name of Golden Accumulator, Ltd. ("Golden Accumulator").  Peever was the authorized signatory for Golden Accumulator.  Attached hereto are the following documents relating to account number ***-0058:

A.     Exhibit 19 (Bates Nos. SEC051073 through SEC051077 ):

Account forms, including Declaration of Trust for Golden Accumulator,

indemnification agreement, and related documents dated December 2, 1999 for

account no. ***-0058;

B.     Exhibit 20 (Bates Nos. LOM-SDNY-004031 through LOM-

SDNY-004045):  Monthly statements for account number ***-0058 for the period

December 1, 2001 through August 31, 2009.

28.     From my review of the above documents, I prepared the spreadsheet attached as Exhibit 21.  As detailed on the Peever disgorgement schedule in that exhibit, accounts controlled by Peever at Canaccord and LOM sold a total of 1,327,350 shares of SHEP and obtained proceeds of $1,490,652.40 during the period of September 3, 2002 through June 18, 2003, as follows:

| Account | Shares Sold | Proceeds Received |
|---|---|---|
| **592 - Canaccord | 188,800 | $268,083.40 |
| ***0058- LOM | 1,138,550 | $1,222,569.00 |
| Total | 1,327,350 | $1,490,652.40 |
| Less cost basis of 1,638,450 shares at $0.048 per share | | $153,972.60 |
| Pre-Interest Disgorgement | | $1,336,679.80 |

Calculation of Cost Basis for Peever SHEP Shares

29.     I also calculated the cost basis for the SHEP shares that Peever traded in the above-referenced accounts.

10

30.     From my review of the above documents, I prepared a spreadsheet detailing the cost basis for each of the Peever accounts, which is attached as Exhibit 22.

31.     I determined the cost basis for the SHEP shares Peever held in his Canaccord account using the following analysis. There was a deposit of 100,000 shares of SHEP on October 8, 2002 into Peever's account at Canaccord. However, there is no indication or evidence that any monies were exchanged for these shares by Peever. As a result, I assigned a $0 cost basis to those SHEP shares.

32.     I determined the cost basis for the SHEP shares Peever held in the LOM Cayman Golden Accumulator account through the following analysis. Peever's Golden Accumulator account at LOM Cayman had net deposits totaling 2,398,850 shares of SHEP between January 31, 2002 and February 12, 2002.

33.     As described above, these shares were part of a January 8, 2002 agreement involving Curtis and Peever using LOM nominees as purchasers, in which they paid $204,000 for 5,197,700 SHEP shares that subsequently were deposited into the Nomad and Golden Accumulator accounts at LOM they respectively controlled. I calculated that $94,150.37 of the SHEP purchase cost would be attributable to Peever by dividing the 2,398,850 SHEP shares deposited in Peever's Golden Accumulator account by the total 5,197,700 shares Curtis and Peever received and then multiplying by the $204,000 they had collectively paid.

34.     Subsequently, an additional 400,000 shares of SHEP was purchased pursuant to the January 8, 2002 agreement by LOM from Pemcorp Management, Inc., as shown on their respective account statements at Canaccord Capital for the period ended January 31, 2002 (Exhibit 23 -- Bates Nos. SEC051942 and SEC043035). Based on

11

prices obtained from the LOM blotter, Golden Accumulator paid $216,664 for the 400,000 SHEP shares. Golden Accumulator purchased 9,400 shares between May 3, 2002 and June 6, 2002.

35.     Subsequently, 1,500,000 shares of SHEP were deposited in the Golden Accumulator account at LOM controlled by Peever on April 29, 2002. I calculated a cost basis of $75,000 for those 1.5 million shares of SHEP by reviewing the Computershare Trust Company of Canada Treasury Order and LOM vault enquiry report described above.

36.     As detailed on the Peever cost basis schedule in Exhibit 22, between September 27, 2002 and March 4, 2003, Peever's Canaccord account purchased 88,800 shares for $105,368.39. During the same period, the Golden Accumulator account purchased 27,700 shares for $31,274.50.

37.     As shown in Exhibit 22, accounts controlled by Peever either purchased or deposited 4,524,750 shares of SHEP. Based on my calculations and review above, I determined that the total cost basis for these shares was $0.116 per share or $522,457.26.

38.     In summary, Peever sold a total of 1,327,350 shares of SHEP and generated $1,490,652.40 in total proceeds. (Exhibit 21). The cost basis for those 1,327,350 shares is $153,972.60 based on my cost calculations outlined in Exhibit 22. I calculated that basis by multiplying the 1,327,350 shares by Peever's cost basis per share of $0.116. As a result, Peever's total disgorgement would be $1,336,679.80, which was determined by subtracting his cost basis of $153,972.60 from his total sales of $1,490,652.40.

## IV.  Prejudgment Interest Calculations

39.  I also calculated prejudgment interest for the two disgorgement amounts regarding Curtis and Peever.  See Exhibit 24 (Curtis) and Exhibit 25 (Peever).  Those calculations are summarized as follows:

| Curtis Total Proceeds | $1,636,503.28 |
|---|---|
| Less cost basis of 1,638,450 shares at $0.048 per share | $78,645.60 |
| Pre-Interest Disgorgement | $1,557,857.68 |
| Interest | $817,421.03 |
| Total Disgorgement | $2,375,278.71 |

| Peever Total Proceeds | $1,490,652.40 |
|---|---|
| Less cost basis of 1,327,350 shares at $0.116 per share | $153,972.60 |
| Pre-Interest Disgorgement | $1,336,679.80 |
| Interest | $701,367.14 |
| Total Disgorgement | $2,038,046.94 |

40.  Assuming that the disgorgement amount ordered by the Court is for the total amount of Curtis' and Peever's illegal trading, on a joint and several basis, then the combined prejudgment interest would be $1,518,788.17.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

*R. W. Nesbitt*

Robert W. Nesbitt

Executed on January 13, 2011
Washington, D.C.

13