# Exhibit 13

# ACQUISITION OF CONTROL OF INSIDE HOLDINGS INC.

## DATE OF CLOSING:  JANUARY 8, 2002

## CLOSING BOOK OF DOCUMENTS

**DuMoulin Black**
**Barristers and Solicitors**
**10th Floor, 595 Howe Street**
**Vancouver, British Columbia**
**V6C 2T5**
**Telephone:  (604) 687-1224**

CMD\361701\Inside Share Purchase\0024

SEC-CANGIANO-0000503

# ACQUISITION OF CONTROL OF INSIDE HOLDINGS INC.

## INDEX

| Tab No. | Description of Document |
|---|---|
| 1. | Closing Agenda |
| 2. | Share Purchase Agreement |
| 3. | Due Diligence Searches of Inside:<br>(a)  PPR<br>(b)  British Columbia Securities Commission<br>(c)  U.S. Securities Commission<br>(d)  Yukon Business Corporations Act<br>       Litigation |
| 4. | Indemnity with respect to obligations under the Office Lease |
| 5. | Documentation confirming termination of Royalty and Management Agreements |
| 6. | Liabilities List (certified by two directors) |
| 7. | Resignations as directors and officers as requested by the Purchasers |
| 8. | Assignment of Debt Agreement between Pemcorp and 569319 B.C. Ltd. |
| 9. | Assignment and Debt Settlement Agreement among Pemcorp, Inside and Gateway |
| 10. | Written Directions from LOM or its agent on behalf of the Purchasers as to the delivery and registration of the Shares |
| 11. | Written Instructions from LOM or its agent on behalf of the Purchasers to DB as to release of Canadian funds (equivalent of U.S.$204,000 (less U.S.$20 transfer fee)) |
| 12. | Share Certificate(s) representing 3,550,000 common shares of Inside transferred to the Purchasers |
| 13. | Confirmation from transfer agent that share certificates are properly endorsed for transfer |

CMD\361701\Inside Share Purchase\0025.DOC

SEC-CANGIANO-0000504

2

14.     Receipts for foregoing Share Certificate(s) and Share Certificate referred to in item 21

15.     Cheque from DB for Canadian Funds

16.     Payment of balance of funds for Purchase Price

17.     Receipts for purchase price of 3,550,000 common shares

18.     Payment of U.S.$66,500 to Pemcorp by Gateway for Insider Debt

19.     Directors Resolution of Inside to approve Shares for Debt Settlement and issue of 2,047,700 shares to Gateway

20.     Treasury order of Inside to authorize issue of 2,047,700 shares to Gateway for Shares for Debt Settlement

21.     Share Certificate representing 2,047,700 shares to Gateway for Shares for Debt Settlement

22.     Directors' Resolutions appointing Kevin Winter as a director and secretary of Inside and accepting the resignation of Paul Visosky

23.     Section 111 Report for Gateway

24.     Section 111 News Release for Gateway

25.     Initial Insider Report for Gateway

CMD\361701\Inside Share Purchase\0025.DOC

SEC-CANGIANO-0000505

# ACQUISITION OF CONTROL
## OF
## INSIDE HOLDINGS INC.

### CLOSING AGENDA

| | |
|---|---|
| **DATE:** | January 3, 2002 |
| **PLACE:** | 2200-609 Granville Street<br>Vancouver, British Columbia |
| **SCHEDULED TIME:** | 10:00 A..M. |

### PARTIES

| PARTY | Defined Term | Represented by |
|---|---|---|
| PEMCORP MANAGEMENT INC. | Pemcorp | |
| WMC EQUITIES INC. | WMI | |
| PETERSEN MANAGEMENT INC. | PMI | |
| MURRAY OLIVER | Oliver | |
| CASA STILTS LAW CORPORATION | Casa Stilts | |
| Pemcorp, WMC, PMI, Oliver and Casa Stilts collectively | Vendors | Bill McCartney |
| INSIDE HOLDINGS INC. | Inside | |
| NEXUS Venture Capital Lawyers | Nexus | Paul Visosky |
| GATEWAY RESEARCH MANAGEMENT GROUP LTD. | Gateway | |
| SKN HOLDINGS LIMITED | SKN | |
| WARWICK VENTURES LIMITED | Warwick | |
| CONSENSUS INVESTMENTS LIMITED | Consensus | |
| ABERDEEN HOLDINGS LIMITED | Aberdeen | |
| Gateway, SKN, Warwick, Consensus, and Aberdeen colletively | Purchasers | Brian Lines |
| LINES OVERSEAS MANAGEMENT | LOM | |
| DuMoulin Black | DB | Corey M. Dean |

**Definitions**

Unless otherwise defined, all other terms with initial capital letters will have the same meanings as ascribed to them in the agreement (the **"Share Purchase Agreement"**) dated for reference January 3, 2002 among the Vendors, the Purchasers and Inside.

**Closing Date Matters**

All documents and payments listed below shall be executed and/or delivered in the order set out below but shall be held in escrow until all such documents and payments have been delivered and all parties present at the Closing have agreed that this escrow is terminated. Termination of this escrow without protest that all deliveries and payments have not been completed shall be conclusive evidence that the same have been completed. Upon termination of this escrow the documents listed below will be released from escrow.

CMD\361701\Inside Share Purchase\0011

SEC-CANGIANO-0000506

- 2 -

All documents listed below shall be delivered by Standard Delivery. For the purposes of this Closing Agenda the term "Standard Delivery" shall mean that one originally executed or certified true copy of each document listed below shall be delivered to the Vendors, the Purchasers, Nexus and DB except where otherwise indicated. The term **"Original"** where used in this Closing Agenda beside a party's name shall mean that one original of the document shown opposite that party's name shall be delivered to that party with a copy to each of the other parties.

### A.   MATTERS COMPLETED PRIOR TO CLOSING

| No. | Description of Document | To be Prepared or Arranged by | Tabled by or on Behalf of | Delivery |
|---|---|---|---|---|
| 1. | Share Purchase Agreement | DB/Nexus | All parties | Standard |
| 2. | Due Diligence Searches of Inside: <br> (a)   PPR <br> (b)   British Columbia Securities Commission <br> (c)   U.S. Securities Commission <br> (d)   Yukon Business Corporations Act <br> (e)   Litigation | DB/Pemcorp | Purchasers | Standard |
| 3. | Indemnity with respect to obligations under the Office Lease | Pemcorp | Vendors | Standard |
| 4. | Documentation confirming termination of Royalty and Management Agreements | Pemcorp | Vendors | Standard |
| 5. | Liabilities List (certified by two directors) | Pemcorp | Vendors | Standard |
| 6. | Resignations as directors and officers as requested by the Purchasers | Pemcorp | Vendors | Standard |
| 7. | Assignment of Debt Agreement between Pemcorp and 569319 B.C. Ltd. | Pemcorp | Vendors | Standard |
| 8. | Assignment and Debt Settlement Agreement among Pemcorp, Inside and Gateway | Pemcorp | Vendors | Standard |
| 9. | Written Directions from LOM or its agent on behalf of the Purchasers as to the delivery and registration of the Shares | LOM | Purchasers | Standard |

CMD\361701\Inside Share Purchase\0011

SEC-CANGIANO-0000507

- 3 -

| No. | Description of Document | To be Prepared or Arranged by | Tabled by or on Behalf of | Delivery |
|---|---|---|---|---|
| 10. | Written Instructions from LOM or its agent on behalf of the Purchasers to DB as to release of Canadian funds (equivalent of U.S.$204,000 (less U.S.$20 transfer fee)) | LOM | Purchasers | Standard |

### B.   DOCUMENTS TO BE DELIVERED ON THE CLOSING DATE

| No. | Description of Document | To be Prepared or Arranged by | Tabled by or on Behalf of | Delivery |
|---|---|---|---|---|
| 1. | Share Certificate(s) representing 3,550,000 common shares of Inside held by the Vendors (endorsed for transfer with signature guaranteed and including directors resolutions authorizing transfer) | Pemcorp | Vendors | Standard, originals to Purchasers |
| 2. | Confirmation from transfer agent that share certificates are properly endorsed for transfer | Pemcorp | Vendors | Standard |
| 3. | Receipts for foregoing Share Certificate(s) | Pemcorp | Purchasers | Standard |
| 4. | Cheque from DB for Canadian Funds | DB | Darch | Standard, original to Pemcorp |
| 5. | Payment of balance of funds for Purchase Price | Purchasers | Purchasers | Standard, original to Pemcorp |
| 6. | Receipts for purchase price of 3,550,000 common shares | Pemcorp | Purchasers | Standard |
| 7. | Payment of U.S.$66,500 to Pemcorp by Gateway for Insider Debt | Gateway | Gateway | Standard, original to Pemcorp |
| 8. | Directors Resolution of Inside to approve Shares for Debt Settlement and issue of 2,047,700 shares to Gateway | Pemcorp | Inside | Standard |

SEC-CANGIANO-0000508

- 4 -

| No. | Description of Document | To be Prepared or Arranged by | Tabled by or on Behalf of | Delivery |
|---|---|---|---|---|
| 9. | Treasury order of Inside to authorize issue of 2,047,700 shares to Gateway for Shares for Debt Settlement | Pemcorp | Inside | Standard |
| 10. | Share Certificate representing 2,047,700 shares to Gateway for Shares for Debt Settlement | Pemcorp | Inside | Standard, original to Gateway |
| 11. | Receipts for foregoing Share Certificate representing 2,047,700 shares | Pemcorp | Gateway | Standard |

## C.   POST CLOSING MATTERS

| No. | Description of Matter | To be Prepared or Arranged by |
|---|---|---|
| 1. | Filing of Press Releases and Reports under Section 111 *Securities Act* (British Columbia) | Purchasers & DB |
| 2. | Filing of Insider Reports under Section 87 *Securities Act* (British Columbia) | Purchasers & DB |
| 3. | Filing of U.S. *Securities Exchange Act* 13D or G Reports | Purchasers & US counsel |
| 4. | Filing of Insider Reports under U.S. *Securities Exchange Act* | Purchasers & US counsel |
| 5. | Directors Resolutions appointing Purchasers' nominees as directors of Inside | Purchasers |
| 6. | Consents to Act as Directors of Inside | Purchasers |
| 7. | Letter to Purchasers regarding Insider Reporting | DB |

CMD\361701\Inside Share Purchase\0011

SEC-CANGIANO-0000509

## SHARE PURCHASE AGREEMENT

**THIS AGREEMENT** is dated for reference the 3rd day of January, 2002.

**BETWEEN:**

> **PEMCORP MANAGEMENT INC.**
> Suite 1260, 609 Granville Street
> Vancouver, BC  V7Y 1G5
>
> (hereinafter called "**Pemcorp**")

**AND:**

> **WMC EQUITIES INC.**
> Suite 1260, 609 Granville Street
> Vancouver, BC  V7Y 1G5
>
> (hereinafter called "**WMI**")

**AND:**

> **PETERSEN MANAGEMENT INC.**
> Suite 1260, 609 Granville Street
> Vancouver, BC  V7Y 1G5
>
> (hereinafter called "**PMI**")

**AND:**

> **MURRAY OLIVER**
> 102 - 668 West 16th Avenue
> Vancouver, BC  V5Z 1S6
>
> (hereinafter called "**Oliver**")

**AND:**

> **CASA STILTS LAW CORPORATION**
> Suite 3400 - 666 Burrard Street
> Vancouver, BC  V6C 2X8
>
> (hereinafter called "**Casa Stilts**")
>
> (Pemcorp, WMC, PMI, Oliver and Casa Stilts hereinafter collectively called the "**Vendors**")

**AND:**

> **GATEWAY RESEARCH MANAGEMENT GROUP LTD.**
> P.O. Box N3937

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000510

- 2 -

Mereva House. 4 George Street
Nassau, Bahamas

(hereinafter called "**Gateway**")

AND:

**SKN HOLDINGS LIMITED**
Trustnet (BVI).
Trust Net Chambers
PO Box 3444, Road Town, Tortola
BVI

(hereinafter called "**SKN**")

AND:

**WARWICK VENTURES LIMITED**
Buckingham Square, Penthouse.
Seven Mile Beach, West Bay Road
Grand Cayman, BVI

(hereinafter called "**Warwick**")

AND:

**CONSENSUS INVESTMENTS LIMITED**
Ansbacher House.
2nd Floor, Shirley and East Street North
PO Box N-4244 Nassau, Bahamas

(hereinafter called "**Consensus**")

AND:

**ABERDEEN HOLDINGS LIMITED**
60 Market Square.
Belize City, Belize

(hereinafter called "**ABERDEEN**")

(Gateway, SKN, Warwick, Consensus, and Aberdeen  hereinafter collectively called the
"**Purchasers**")

AND:

**INSIDE HOLDINGS INC.**
Suite 1206 - 609 Granville Street
Vancouver, BC  V7Y 1G5

(hereinafter called the "**Company**")

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000511

- 3 -

**WHEREAS:**

A.   The Vendors are the beneficial owners of three million five hundred and fifty shares (3,550,000) (collectively, the "**Shares**") of the Company held as set forth in Schedule "A";

B.   The Vendors have agreed to sell the Shares and the Purchasers have agreed to buy the Shares, subject to the terms and conditions hereof;

C.   Contemporaneously with the purchase of the Shares by the Purchasers from the Vendors, Pemcorp has agreed to assign to Gateway a certain debt (the "**Inside Debt**") in the amount of U.S. $66,500 owed to Pemcorp by the Company in consideration for the payment of U.S.$66,500 in cash to Pemcorp and Gateway and the Company have agreed that the Inside Debt will be settled by the Company by the issue of 2,047,700 shares of the Company to Gateway at a deemed price per share of Cdn.$0.05 per share (U.S. $0.03247).

**NOW THEREFORE THIS AGREEMENT WITNESSETH** that in consideration of the sum of $1.00 and other good and valuable consideration and the mutual premises and mutual covenants and agreements contained herein, the parties covenant and agree each with the other as follows:

**1.**   **Purchase and Sale**

1.01   <u>Purchase of 3,550,000 Shares by the Purchasers from the Vendors</u> - Subject to the terms and conditions hereof and on the basis of the representations and warranties of the parties set forth herein, the Vendors hereby agree to sell and the Purchasers in the proportions as set out in Schedule "B" hereby agree to purchase 3,550,000 Shares in consideration of the sum of U.S.$0.09577 (Cdn. $0.14743) per Share for a total of U.S.$340,000, such amount to be payable to Pemcorp on behalf of the Vendors on the Closing Date against delivery of share certificates representing the Shares in street form or registered in the name, and delivered in the manner, as directed by each of the Purchasers through Lines Overseas Management as its attorney in fact as provided herein.

1.02   <u>Acknowledgments</u> – The parties acknowledge that:

(a)   each of the sales and purchases of the Shares pursuant to Section 1.01 is conditional upon each of the other sales and purchases of the Shares taking place on the Closing Date as well as the Shares for Debt Settlement (as defined in and provided for in Section 1.03) taking place contemporaneously on the Closing Date;

(b)   the Purchasers constitute a group which is making an offer to acquire more than 20% of the issued voting equity shares of the Company;

(c)   accordingly such offer constitutes a takeover bid under the *Securities Act* (British Columbia) which is exempt from Sections 105 to 110 of the *Securities Act* (British Columbia) by virtue of Section 98(1)(c) of the *Securities Act* (British Columbia);

(d)   since the transfer of the Shares pursuant to this Agreement is a trade as contemplated by Sections 45(2)(24) and 74(2)(21), any such trade that is a distribution is exempt from the registration and prospectus requirements of the *Securities Act* (British Columbia) by virtue of such Sections; and

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000512

- 4 -

(e)    each of the Purchasers represents that it is not a person in a combination of persons, acting in concert by virtue of any agreement, arrangement, commitment or understanding, with respect to the Shares to be purchased hereunder and accordingly each of the Purchasers other than Gateway will not become a "control person" as defined in the *Securities Act* (British Columbia) nor an "affiliate" under applicable United States securities legislation by virtue of the acquisition of the Shares hereunder.

1.03    Shares for Debt Settlement - Contemporaneously with the purchase of the Shares by the Purchasers from the Vendors pursuant to Section 1.01,

(a)    Pemcorp will assign to Gateway debt (the "**Inside Debt**") in the amount of U.S.$66,500 owed to Pemcorp by the Company in consideration for the payment on the Closing Date (as hereinafter defined) in cash of U.S.$66,500 to Pemcorp; and

(b)    the Company and Gateway will settle ("**Shares for Debt Settlement**") the Inside Debt by the Company issuing, and Gateway accepting the issue of 2,047,700 shares of the Company at a deemed price per share of Cdn.$0.05 (U.S. $0.03247) per share.

## 2.   Closing Date

2.01    Closing Date - The "**Closing Date**" will be at 10:00 a.m. on January 3, 2002 at the offices of Canaccord Capital Corporation, Suite 2200, 609 Granville Street, Vancouver, British Columbia, or such other time, date or place as the parties may agree.

## 3.   Representations and Warranties of the Vendors and the Company

3.01    Representations and Warranties of the Vendors – Each of the Vendors for himself or itself warrants and represents to the Purchasers that:

(a)    the Vendor has full power, capacity and authority to enter into and perform the terms of this Agreement;

(b)    the performance of this Agreement will not conflict with or result in breach of any covenants or agreements contained in, or constitute a default under or result in the creation of any encumbrance pursuant to the provisions of, any agreement to which the Vendor is a party or by which the Vendor may be bound or to which the Vendor may be subject or any judgment, decree, order, rule or regulation of any court or administrative body by which the Vendor is bound or, to the knowledge of the Vendor, any statute or regulation applicable to the Vendor;

(c)    the Vendor is a resident of Canada and the beneficial owner of the Shares set out in Schedule "A", free and clear of all liens, charges, encumbrances and restrictions of any kind whatsoever except as set out in Schedule "A" and restrictions on resale imposed in respect of "control persons" and "affiliates" as defined in and under applicable securities laws, rules, regulations and policies; and

(d)    the Vendor has not acquired any of the Shares to be purchased by the Purchasers from any other person for the purposes of reducing the number of Vendors to enable the Purchasers to rely on the exemption from takeover requirements contained in Section 98(1)(c) of the *Securities Act* (British Columbia).

SEC-CANGIANO-0000513

- 5 -

3.02    Representations and Warranties of Pemcorp and the Company– Each of Pemcorp and the Company warrants and represents to the Purchasers that:

(a)     the Shares are validly issued and outstanding as fully paid and non-assessable;

(b)     there are no options, warrants, rights or agreements outstanding with respect to the purchase, acquisition or subscription for the Shares or any other shares in the capital of the Company and no outstanding securities convertible into or exchangeable for shares of the Company;

(c)     to the best of the knowledge, information and belief of Pemcorp and the Company, the Company is a company duly incorporated, validly existing and in good standing under the laws of the Yukon Territory;

(d)     to the best of the knowledge, information and belief of Pemcorp and the Company, the Company is a reporting issuer under the *Securities Act* (British Columbia), as amended and is registered under Section 12(g) of the United States *Securities Exchange Act of 1934*, as amended, and in compliance with all of its obligations under the *Securities Act* (British Columbia), as amended, and the United States *Securities Exchange Act of 1934*, as amended;

(e)     to the best of the knowledge, information and belief of Pemcorp and the Company, the following disclosure documents of the Company:

    (i)     the audited annual financial statements for the fiscal year ended April 30, 2001 and the quarterly reports for the quarters ended July 31, 2001 and October 31, 2001;

    (ii)    the management information circular for the Company's 2001 annual general meeting held October 17, 2001;

    (iii)   all press releases and material change reports issued by the Company after September 20, 2001;

    (iv)    Form 20-F (the **"Form 20-F"**) dated September 20, 2001 for the fiscal year ended April 30, 2001;

    (v)     Forms 6-K dated September 20, 2001 in respect of the management information circular and the quarterly report for the three months ended July 31, 2001;

were, at their respective dates of issue or publication, true and correct in all material respects, contained no misrepresentations and were prepared in accordance with and complied with the laws, regulations, policy statements and rules applicable thereto;

(f)     the Company has or will have paid all taxes (if any) and other government charges (if any) required to be paid by the Company up to the Closing Date;

(g)     the authorized capital of the Company consists of 100,000,000 common shares without par value, of which 4,687,600 shares are validly issued and outstanding as fully paid and non-assessable;

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000514

- 6 -

(h)    the financial statements of the Company referred to in Section 3.02 (e)(i) (the **"Financial Statements"**) provided to the Purchasers have been prepared in accordance with generally accepted accounting principles, applied on a consistent basis and fairly and accurately represent the financial condition of the Company as at the date thereof or for the periods covered;

(i)    to the best of the knowledge, information and belief of Pemcorp and the Company, the corporate records of the Company, the share certificate books, register of directors and shareholders and minute book of the Company contain complete and accurate minutes of all meetings of the directors and shareholders of the Company which were duly called and held since incorporation of the Company;

(j)    the Company has good title to and possession of all the assets, equipment, property and undertaking used by the Company in the ordinary course of its business, all free and clear of all liens, charges and encumbrances except for the payment of the balance of the purchase price for the purchase of the Company's rights to the "inside" domain names as set out in the Form 20-F which is to be settled in connection with the Shares for Debt Settlement as provided herein;

(k)    other than the Inside Debt and other than the obligations to pay amounts (currently estimated to be U.S. $15 to U.S. $35 per name per year) to maintain the rights to the Company's rights to the "inside" domain names which are set out in the Form 20-F, there are and there will be as at the Closing Date no outstanding debts or financial obligations or liabilities (contingent or otherwise) of the Company exceeding $2,000 nor is there any undisclosed material litigation, proceedings or investigations pending or threatened against the Company nor does Pemcorp or the Company know, or have any grounds to know of any basis for any material litigation, proceeding or investigation against the Company any of which would materially affect the Company;

(l)    the Company has not declared any dividends or other distribution of any kind whatsoever in respect of its outstanding share capital and that of its outstanding share capital carrying right of redemption;

(m)    to the best of the knowledge, information and belief of Pemcorp and the Company, the Company has complied with any and all rules, regulations and policies and any and all regulatory authorities, agencies and commissions having jurisdiction over the Company or to which the Company may be subject;

(n)    the Company has not guaranteed nor agreed to guarantee any debt, liability or other obligation of any person, firm or corporation;

(o)    the Company has not paid nor agreed to pay any benefits under a pension, profit sharing, bonus or other similar plan;

(p)    the Company is not a party to any written or oral agreement or employment, service or pension agreement except for this Agreement and the Management Agreements to be terminated as herein provided;

(q)    the Company is not subject to any agreement under which its obligations cannot be terminated without penalty to the Company on 60 days notice save and except agreements which have been disclosed and will be terminated as herein provided; and

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000515

- 7 -

(r)   Pemcorp and the Company are not aware of any occurrence or event not previously disclosed which has had, or might reasonably be expected to have, a materially adverse effect on the Company's business or the results of its operations.

3.03   <u>Survival</u> - All representations, warranties, covenants and agreements of the Vendors and the Company herein will survive the closing of this Agreement and will continue in full force and effect for a period of one year following the Closing Date.

**4.   Representations and Warranties of the Purchasers**

4.01   <u>Purchasers' Representations and Warranties</u> – Each of the Purchasers for itself hereby warrants and represents to the Vendors that:

(a)   each of the Purchasers has full power, capacity and authority to enter into and perform the terms of this Agreement;

(b)   the performance of this Agreement will not conflict with or result in breach of any covenants or agreements contained in, or constitute a default under or result in the creation of any encumbrance pursuant to the provisions of, any agreement to which the Purchasers are a party or by which the Purchasers may be bound or to which the Purchasers may be subject or any judgment, decree, order, rule or regulation of any court or administrative body by which the Purchasers are bound or, to the knowledge of the Purchasers, any statute or regulation applicable to the Purchasers; and

(c)   each of the Purchasers and the beneficial owners of the issued shares of each of the Purchasers is not a resident or citizen of the United States.

4.02   <u>Survival</u> - All representations, warranties, covenants and agreements of the Purchasers herein will survive the closing of this Agreement and will continue in full force and effect for a period of one year following the Closing Date.

**5.   Covenants of the Vendors**

5.01   <u>Vendors' Covenants</u> - The Vendors covenant and agree with the Purchasers that forthwith after the execution of this Agreement the Vendors will take such steps and proceedings as may be reasonably required to comply with all applicable statutes and regulations with respect to the transactions contemplated hereunder by the Closing Date.

5.02   <u>List of Liabilities</u> – On or before the Closing Date, the Vendors will deliver to the Purchasers a list (the "**Liabilities List**") of all liabilities (contingent or otherwise) as at the Closing Date certified by two directors of the Company to be a complete and accurate of all liabilities of the Company which shall not exceed $2,000 in the aggregate except for the Inside Debt, the obligations to pay amounts (currently estimated to be U.S. $15 to U.S. $35 per name per year) to maintain the rights to the Company's rights to the "inside" domain names which are set out in the Form 20-F and liabilities in the normal course of business.

5.03   <u>Office Lease</u> – Pemcorp will obtain a release for the Company in form satisfactory to the Purchasers and will indemnify the Company as to its obligations as sublessee under the office lease (the "**Office Lease**") for the premises at Suite 1260, 609 Granville Street, Vancouver, British Columbia by the Closing Date.

SEC-CANGIANO-0000516

- 8 -

5.04    Royalty - On or before the Closing Date, the royalty (the **"Royalty"**) in respect of the Company's rights to the "inside" domain names as set out in the Form 20-F will be terminated.

5.05    Management Agreements - On or before the Closing Date, all existing management agreements to which the Company is a party (the **"Management Agreements"**) will be terminated.

5.06    Tax Returns and Reports – Following the Closing Date, Pemcorp will, at the Purchasers' reasonable request, take all reasonable steps to assist the Company to, file all necessary federal, provincial and state tax returns and reports including all reports affecting worker's compensation, in respect of all matters prior to the Closing Date.

**6.      Covenants of the Purchasers**

6.01    Purchasers' Covenants - The Purchasers covenant and agree with the Vendors that forthwith after the execution of this Agreement the Purchasers will take all such steps and proceedings as may be reasonably required to comply with all applicable statutes and regulations with respect to the transactions contemplated hereunder by the Closing Date.

6.02    Resale of Shares – Each of the Purchasers for itself covenants and agrees with the Vendors that each of the Purchasers will resell the Shares purchased hereunder by each such Purchaser and, in respect of Gateway, the shares of the Company issued to Gateway pursuant to the Shares for Debt Settlement, in compliance with applicable securities laws, rules, regulations and policies.

**7.      Conditions Precedent to the Closing**

7.01    Conditions Precedent for the Benefit of the Purchasers - The Purchasers' obligations to carry out the terms of this Agreement and to complete the purchase referred to in Section 1 is subject to the following conditions:

    (a)    on the Closing Date, the warranties and representations of the Vendors as set forth in Section 3 hereof will be true in every respect as if such warranties and representations have been made by the Vendors on the Closing Date;

    (b)    all covenants and agreements to be performed by the Vendors hereunder shall have been performed; and

    (c)    the Vendors will have delivered to the Purchasers:

        (i)    share certificates representing the Shares in street form or in the name as directed by the Purchasers in accordance with Section 1;

        (ii)    the resignations of the directors and officers of the Company as requested by the Purchasers;

        (iii)    the Liabilities List certified by two directors of the Company;

        (iv)    documentation in form and with content satisfactory to the Purchasers acting reasonably confirming the release of, and an indemnity from Pemcorp as to the Company's obligations as sublessee under the Office Lease;

        (v)    documentation in form and with content satisfactory to the Purchasers acting reasonably confirming the termination of the Royalty and Management Agreements; and

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000517

- 9 -

> (vi)    such other documents as the Purchasers may reasonably request.

7.02  <u>Conditions Precedent for the Benefit of the Vendors</u> - The Vendors' obligation to carry out the terms of this Agreement and to complete the sale referred to in Section 1 is subject to the following conditions:

> (a)    on the Closing Date, the warranties and representations of the Purchaser as set forth in Sections 1.02(e) and 4 hereof will be true in every respect as if such warranties and representations have been made by the Purchasers on the Closing Date;

> (b)    on the Closing Date, the Purchasers will have performed all of the terms of this Agreement to be performed by them; and

> (c)    each of the Purchasers through Lines Overseas Management as its attorney in fact will have delivered to the Vendors:

>> (i)    certified cheques, bank draft or other form of funds (acceptable to the Purchasers, acting reasonably) representing the amounts payable to Pemcorp on behalf of all of the Vendors in accordance with Sections 1.01 and 1.03 on the Closing Date;

>> (ii)    written directions from Lines Overseas Management or its agent on behalf of the Purchasers as to the delivery and registration of the share certificates representing the Shares being purchased hereunder; and

>> (ii)    such other documents as the Vendors may reasonably request.

7.03  <u>Purchasers' Conditions</u> - The terms and conditions set forth in Section 7.01 are for the exclusive benefit of the Purchasers and may be waived by the Purchasers in writing, in whole or in part, on or before the Closing Date but, except as so waived, the completion of the purchase referred to in Section 1 by the Purchasers will not prejudice or affect any of the rights of the Purchasers in respect of the warranties and representations of the Vendors set forth in Sections 3.01 and 3.02 and such representations and warranties shall survive the Closing Date.

7.04  <u>Vendors' Conditions</u> - The terms and conditions set forth in Section 7.02 are for the exclusive benefit of the Vendors and may be waived by the Vendors in writing, in whole or in part, on or before the Closing Date but, except as so waived, the completion of the purchase referred to in Section 1 by the Vendors will not prejudice or affect any of the rights of the Vendors in respect of the warranties and representations of the Purchasers set forth in Section 4.01 and such representations and warranties shall survive the Closing Date.

## 8.    <u>Indemnity</u>

8.01  <u>Indemnification by the Vendors</u> - The Vendors will severally indemnify the Purchasers for a period of one year against any loss or damage sustained by the Purchasers, directly or indirectly, by reason of a breach of any of the covenants, warranties or representations set forth in Sections 3.01 and 5.01. The Vendors acknowledge that each of the Purchasers has entered into this Agreement relying on these warranties and representations.

8.02  <u>Indemnification by Pemcorp and the Company</u> – Pemcorp and the Company will jointly and severally indemnify the Purchasers for a period of one year against any loss or damage sustained

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000518

by the Purchasers, directly or indirectly, by reason of a breach of any of the covenants, warranties or representations set forth in Sections 3.02 and 5. Pemcorp and the Company acknowledge that each of the Purchasers has entered into this Agreement relying on these warranties and representations.

8.03    Indemnification by the Purchasers - The Purchasers will severally indemnify the Vendors for a period of one year against any loss or damage sustained by the Vendors, directly or indirectly, by reason of a breach of any of the covenants, warranties or representations set forth in Sections 1.02(e), 4.01 and 6. The Purchasers acknowledges that each of the Vendors have entered into this Agreement relying on these warranties and representations.

9.      **Further Assurances and Attorneys**

9.01    Further Assurances - The parties hereto agree to execute such further and other assurances and/or documents as may be necessary to complete the true intent and meaning of this Agreement.

9.02    Each of the Vendors hereby appoints Pemcorp as an irrevocable attorney in fact of the Vendor with full power of substitution from time to time to execute and deliver in the name of the Vendor all documents, instruments and agreements on behalf of the Vendor required to carry out the obligations of the Vendor under this Agreement and to effect the transactions contemplated hereby, including but not limited to any amendment to this Agreement, if not materially adverse to the Vendor's interest herein, and to act as the Vendor's representative at the Closing, to distribute share certificates on behalf of each of the Vendors to Lines Overseas Management, to receive funds on behalf of each of the Vendors and to distribute such funds to each of the Vendors, to waive, in whole or in part, any representations, covenants and conditions for the benefit of the Vendor herein contained or in any other document ancillary or related thereto, and to correct any minor errors in, or complete any information missing from, any part of this Agreement or in any agreement or document ancillary or related to this Agreement.

9.03    Each of the Purchasers hereby appoints Lines Overseas Management as an irrevocable attorney in fact of the Purchaser with full power of substitution from time to time to execute and deliver in the name of the Purchaser all documents, instruments and agreements on behalf of the Purchaser required to carry out the obligations of the Purchaser under this Agreement and to effect the transactions contemplated hereby, including but not limited to any amendment to this Agreement, if not materially adverse to the Purchaser's interest herein, and to act as the Purchaser's representative at the Closing, to pay out funds on behalf of each of the Purchasers to Pemcorp, to receive share certificates on behalf of each of the Purchasers and to distribute such share certificates to each of the Purchasers in the amounts set out in Schedule "B", to waive, in whole or in part, any representations, covenants and conditions for the benefit of the Purchaser herein contained or in any other document ancillary or related thereto, and to correct any minor errors in, or complete any information missing from, any part of this Agreement or in any agreement or document ancillary or related to this Agreement.

10.     **Notice**

10.01   Notice - All notices, requests, demands and other communications required or permitted hereunder, or desired to be given with respect to rights or interests herein, will be in writing and must be mailed, telegraphed, delivered or sent by telex or telecopier to the parties at their respective addresses as set out on the first page hereof. The telecopier number of the Vendors is (604) 685-7485 and of the Purchasers is (604)685-6940. Any such notice will be deemed to have been given, if mailed, three business days following the date of posting; provided that if there is,

SEC-CANGIANO-0000519

- 11 -

between the time of mailing and the actual receipt of the notice, a mail strike, slow down or other labour dispute which might affect delivery of such notice by mail, then such notice will be effective only if delivered; and, if given by personal delivery, when delivered.

**11.   Governing Law and Currency**

11.01   Governing Law - This Agreement will be construed and enforced in accordance with the laws of the Province of British Columbia.

11.02   Currency - Unless otherwise provided, all references herein to $ or Dollars will be to United States dollars.

**12.   Entire Agreement**

12.01   Entire Agreement - This Agreement contains the entire agreement by and between the Vendors and the Purchasers and no oral agreement, promise, statement or representation which is not contained herein will be binding on the Vendors or the Purchasers. No amendment or modification of this Agreement will become effective unless and until the same will have been reduced in writing and duly signed, executed and sealed by the Vendors and the Purchasers.

12.02   Supercedes - This Agreement supercedes all previous agreements, written or oral, in respect of the subject matter hereof.

**13.   Counterparts**

13.01   Counterparts and Facsimile Copies - This Agreement may be executed in several counterparts, each of which when so executed shall be deemed to be an original and such counterparts shall constitute one and the same instrument and notwithstanding the date of execution shall be deemed to bear date as of the date of this Agreement. A facsimile transcribed copy of this Agreement signed by a party in counterpart or otherwise, shall be deemed to be and to constitute a properly executed, delivered and binding document of the party so signing, notwithstanding any variation in the dates of execution.

**14.   Headings**

14.01   Headings - The headings are for convenience only and do not form a part of this Agreement and are not intended to interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

**15.   Time of Essence**

15.01   Time of Essence - Time will be of the essence of this Agreement.

**16.   Enurement**

16.01   Enurement - This Agreement will enure to the benefit of and be binding upon the parties hereto, their respective heirs, executors, administrators, successors and assigns.

**17.   Legal and Tax Advice**

17.01   Legal and Tax Advice - Each of the parties hereto covenants, agrees and acknowledges that each of them was fully and plainly instructed to seek and obtain independent legal and tax advice regarding the terms and conditions and execution of this Agreement and each of them has sought

SEC-CANGIANO-0000520

- 12 -

and obtained such legal and tax advice and acknowledges that each has executed this Agreement voluntarily understanding the nature and effect of this Agreement after receiving such advice.

**IN WITNESS WHEREOF** the parties hereto have executed this Agreement as of the day and year first above written.

PEMCORP MANAGEMENT INC.

Per: _____

WMC EQUITIES INC.

Per: _____

PETERSEN MANAGEMENT INC.

Per: _____

SIGNED, SEALED AND DELIVERED          )
BY MURRAY OLIVER                      )
in the presence of:                   )
                                      )
_____       )
Signature                             )                    _____
BILL MCCARTNEY                        )                    MURRAY OLIVER
_____       )
Name                                  )
1260-609 Grenville st                 )
_____       )
Address                               )
Vancouver . B.C .                     )

CASA STILTS LAW CORPORATION

Per: _____

GATEWAY RESEARCH MANAGEMENT GROUP LTD.

Per: _____

SKN HOLDINGS LIMITED

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000521

- 13 -

**CASA STILTS LAW CORPORATION**

Per: _____

**GATEWAY RESEARCH MANAGEMENT GROUP LTD.**

Per: _____
     Kevin Winter
**SKN HOLDINGS LIMITED**

Per:_____

**WARWICK VENTURES LIMITED**

Per:_____

**CONSENSUS INVESTMENTS LIMITED**

Per:_____

**ABERDEEN HOLDINGS LIMITED**

Per:_____

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000522

- 13 -

**CASA STILTS LAW CORPORATION**

Per: _____

**GATEWAY RESEARCH MANAGEMENT GROUP LTD.**

Per: _____

**SKN HOLDINGS LIMITED**

Per: _____
Kevin Way
**WARWICK VENTURES LIMITED**

Per: _____

**CONSENSUS INVESTMENTS LIMITED**

Per: _____

**ABERDEEN HOLDINGS LIMITED**

Per: _____

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000523

- 13 -

**CASA STILTS LAW CORPORATION**

Per: _____

**GATEWAY RESEARCH MANAGEMENT GROUP LTD.**

Per: _____

**SKN HOLDINGS LIMITED**

Per: _____

**WARWICK VENTURES LIMITED**

Per: _____
     Stuart Smith

**CONSENSUS INVESTMENTS LIMITED**

Per: _____

**ABERDEEN HOLDINGS LIMITED**

Per: _____

CMD\361701\Inside Share Purchase\0010

- 13 -

CASA STILTS LAW CORPORATION

Per: _____

GATEWAY RESEARCH MANAGEMENT GROUP LTD.

Per: _____

SKN HOLDINGS LIMITED

Per:_____

WARWICK VENTURES LIMITED

Per:_____

CONSENSUS INVESTMENTS LIMITED

Per: _____
      Eric Collins.
ABERDEEN HOLDINGS LIMITED

Per:_____

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000525

- 13 -

**CASA STILTS LAW CORPORATION**

Per: _____

**GATEWAY RESEARCH MANAGEMENT GROUP LTD.**

Per: _____

**SKN HOLDINGS LIMITED**

Per: _____

**WARWICK VENTURES LIMITED**

Per: _____

**CONSENSUS INVESTMENTS LIMITED**

Per: _____

**ABERDEEN HOLDINGS LIMITED**

Per: _Michael Heslop_____
Michael Heslop.

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000526

## SCHEDULE "A"

| Name of Vendor | No. of Shares to be Sold by Each Vendor |
|---|---|
| Pemcorp Management Inc. | 2,500,000 |
| WMC Management Inc. | 400,000 |
| Peterson Management Inc. | 400,000 |
| Murray Oliver | 150,000 |
| Casa Stilts Law Corporation | 100,000 |
| **Total:** | 3,550,000 |

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000527

### SCHEDULE "B"

| Name of Purchaser | No. of Shares to be Purchased by Each Purchaser | Dollar Amount to be Paid by Each Purchaser |
|---|---|---|
| Gateway Research Management Group Ltd. | 1,675,000 | U.S $160,422.44 |
| SKN Holdings Limited | 650,000 | 62,253.49 |
| Warwick Ventures Limited | 600,000 | 57,464.75 |
| Consensus Investments Limited | 325,000 | 31,126.74 |
| Aberdeen Holdings Limited | 300,000 | 28,732.38 |
| Total: | 3,550,000 | U.S.  $340,000 |

CMD\361701\Inside Share Purchase\0010

SEC-CANGIANO-0000528